UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIHAD A. HACHEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>- v. –<br><br>GENERAL ELECTRIC, INC., JEFFREY R. IMMELT, JEFFREY S. BORNSTEIN, and JOHN L. FLANNERY,<br><br>Defendants. | No. 1:17-cv-08457-JMF<br><br>Consolidated<br><br>**CLASS ACTION** |
| GOPAL MIRANI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>- v. –<br><br>GENERAL ELECTRIC COMPANY, JEFFREY R. IMMELT, and JEFFREY S. BORNSTEIN,<br><br>Defendants. | No. 1:17-cv-08473-JMF |
| TAMPA MARITIME ASSOCIATION INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>- v. –<br><br>GENERAL ELECTRIC COMPANY, JEFFREY R. IMMELT, JEFFREY S. BORNSTEIN, JOHN L. FLANNERY, and JAMIE MILLER,<br><br>Defendants. | No. 1:17-cv-09888-JMF |

**CITY OF BOCA RATON POLICE AND FIREFIGHTERS' RETIREMENT SYSTEM'S MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.   PRELIMINARY STATEMENT ....................................................................................... 1

II.  ARGUMENT ...................................................................................................................... 2

    A. Arkansas Teachers (i) Is a Professional Plaintiff Under the PSLRA and (ii) May be Subject to Unique Defenses Because Defendants May Argue That It Is Inadequate Due to Political Contributions Made By Its Proposed Counsel ....... 2

        1. Arkansas Teachers Is a Professional Plaintiff ............................................ 2

        2. There is a "Colorable Risk" that Arkansas Teachers May be Subject To Unique Defenses Because It Has Been Attacked by Defendants in the Past Based On Political Donations By Proposed Lead Counsel ........... 5

    B. Operating Engineers (i) Is A Professional Plaintiff and (ii) Potentially Inadequate Because It Is in Critical Financial Condition ....................................... 7

        1. Operating Engineers Is a Professional Plaintiff ......................................... 7

        2. Operating Engineers Also Presents a "Colorable Risk" of Inadequacy Because It Is In Critical Financial Condition .............................................. 9

    C. The Court Should Appoint Boca Raton as Lead Plaintiff and Approve Its Selection of Lead Counsel ..................................................................................... 11

III. CONCLUSION ................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**CASES**

*Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146 (N.D. Cal. 1999) ............................... 4, 9

*Cunha v. Hansen Natural Corp.*, 2009 WL 2029797 (C.D. Cal. July 13, 2009) ........................ 5, 8

*Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184 (S.D.N.Y. 2006) ............................. 2

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002) ...................................................... 4

*In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563 (S.D.N.Y. 2015) ............................. 11

*In re Sunbeam Corp. Sec. Litig.*, 2004 WL 5159061 (S.D. Cal. Jan. 5, 2014) ............................... 7

*In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 3d 803 (N.D. Ohio 1999) ....................................... 3, 4

*Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653 (E.D. Va. 2016) ........................................ passim

*Newman v. Eagle Building Technologies*, 209 F.R.D. 499 (S.D. Fla. 2002) ................................. 7

*Schaffer v. Horizon Pharma PLC*, 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ....................... 11

*Thompson v. Shaw Group, Inc.*, 2004 WL 2988503 (E.D. La. Dec. 14, 2004) ...................... 2, 4, 9

**STATUTES**

15 U.S.C. §78u-4 ..................................................................................................................... passim

26 U.S.C. §432 ............................................................................................................................... 10

I.     **PRELIMINARY STATEMENT**

The City of Boca Raton Police and Firefighters' Retirement System ("Boca Raton") filed one of seven lead plaintiff motions in the above consolidated securities class actions (ECF Nos. 17, 20, 22, 25, 28, 30 and 34), four of which have been effectively withdrawn.[1]  Two movants remain with a larger stated financial interest than Boca Raton: the Arkansas Teachers Retirement System ("Arkansas Teachers") and Pension Trust Fund for Operating Engineers ("Operating Engineers").  However, they should not be appointed lead plaintiff and Boca Raton should be appointed instead.  As set forth below, both competing movants suffer significant infirmities which render them inadequate under the Private Securities Litigation Reform Act ("PSLRA").  15 U.S.C. §78u-4 *et seq*.  In contrast, Boca Raton's application is unblemished and should be granted.

Arkansas Teachers claims the largest loss, but is currently serving as lead plaintiff in 14 securities class actions and is therefore barred as a "professional plaintiff" pursuant to the PSLRA. §78u-4(a)(3)(B)(vi).  A similar motion filed by Arkansas Teachers was denied precisely for this reason in *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 662-63 (E.D. Va. 2016) ("*Orbital*"). Arkansas Teachers also may be subject to unique defenses because, as the defendants in *Orbital* argued, its adequacy may be called into question due to campaign contributions from its selected counsel, which is also its counsel here.  *Id.* at 659 n.1.

Operating Engineers incurred the next largest stated loss, but is also a professional plaintiff. In addition, the Operating Engineers' financial condition has been certified to be in "Critical Status" as of March 31, 2017 to the United States Department of the Treasury.  Accordingly, Operating Engineers also may be subject to unique defenses and similarly inadequate.

---

[1] The following movants have filed a notice of withdrawal or non-opposition to the competing lead plaintiff motions: (i) David Tannenbaum, ECF No. 37; (ii) the GE Investor Group, ECF No. 38; (iii) Jeffrey Klotz, ECF No. 39; and (iv) Michael Somma, ECF No. 41.

Boca Raton on the other hand is an institutional investor of the kind Congress sought to encourage to lead securities class actions through the passage of the PSLRA. *See Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed ... to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.")  Boca Raton is not a professional plaintiff and does not suffer from any deficiencies that would render it inadequate.  Accordingly, Boca Raton's motion should be granted.

**II.    ARGUMENT**

**A.    Arkansas Teachers (i) Is a Professional Plaintiff Under the PSLRA and (ii) May be Subject to Unique Defenses Because Defendants May Argue That It Is Inadequate Due to Political Contributions Made By Its Proposed Counsel**

**1.    Arkansas Teachers Is a Professional Plaintiff**

The PSLRA subsection on "Restrictions on professional plaintiffs" states that, "a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions…during any 3-year period," except as otherwise permitted and "consistent with the purposes of this section." §78u-4(a)(3)(B)(vi) (the "Professional Plaintiff Provision").

"[T]he applicability of the [professional plaintiff] statutory bar to [Arkansas Teachers] obviates the relevance of the amount of its financial interest." *Thompson v. Shaw Group, Inc.*, 2004 WL 2988503, at *7 (E.D. La. Dec. 14, 2004).  In other words, while the most adequate plaintiff presumption needs to be rebutted upon "proof," this "proof" requirement does not apply to the Professional Plaintiff Provision.  That requirement is found in §78u-4(a)(3)(B)(iii)(II) and only applies to the most adequate plaintiff presumption under §78u-4(a)(3)(B)(iii)(I).  "Proof" has no bearing on the separate limit that no entity may serve as lead plaintiff in more than five securities class action in three years, which is in a different subsection of the PSLRA, § 78u-4(a)(3)(B)(vi),

2

not subsection (B)(iii). "The face of the statute thus appears to impose a *presumptive* bar against [Arkansas Teachers'] appointment as lead plaintiff in this action and places the burden on [Arkansas Teachers] to demonstrate why the bar should not be applied in this instance." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 3d 803, 820 (N.D. Ohio 1999).

Arkansas Teachers has already been found to be a professional plaintiff. Barely over a year ago, its lead plaintiff motion in *Orbital* was denied on this basis. *Orbital*, 220 F. Supp. 3d 653. *Orbital* found that Arkansas Teachers had served in at least 16 securities class actions in the prior three years. *Orbital*, 653 F. Supp. 3d at 658. The Court then rejected Arkansas Teachers' argument that the Professional Plaintiff Provision does not apply to institutional investors after a thorough analysis of the statutory language. *Id.* at 661. And the Court also declined to exercise its discretion to waive that provision given that another institutional investor had also made a proper motion, *albeit* with a smaller loss. *Id.* at 662.

Arkansas Teachers is the paradigmatic professional plaintiff. It is currently serving as lead plaintiff in 14 securities class actions filed in the last 3 years.[2] And since 2010, it has filed 48 motions to be appointed lead plaintiff.[3]

A primary tenet of the PSLRA is to protect a class from representation by repeat plaintiffs, who may not adequately monitor numerous litigations and counsels simultaneously. "An institutional investor that is *simultaneously* involved in one or more other securities class actions would have fewer resources available and be less able to police its attorney's conduct." *Telxon*, 67 F. Supp. 3d at 822 (emphasis in original). *See also*, *In re Enron Corp. Sec. Litig.*, 206 F.R.D.

---

[2] Second Declaration of Javier Bleichmar In Support of the City of Boca Raton Police And Firefighters' Retirement System's Motion For Appointment As Lead Plaintiff And Approval Of Its Selection Of Lead Counsel ("Bleichmar Second Decl.") (Exhibit A).

[3] Bleichmar Second Decl. (Exhibit B).

427, 457 (S.D. Tex. 2002) ("involvement in numerous other securities fraud [cases] … means fractured attention and resources with respect to this suit;" disqualifying pension fund that served as lead plaintiff in nine cases).  For this reason, the "[Professional Plaintiff] provision gives the Court considerable discretion to bar repeat litigants…." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999).

Arkansas Teachers will likely respond that some courts have held that the Professional Plaintiff Provision does not apply to institutional investors, only to individuals.  The better reasoned analyses and decisions align with *Orbital*. *Orbital* concluded that there is no exception for institutions because the statutory text does not contain such an exception.  *Orbital*, 220 F. Supp. 3d at 659-62.  The courts that have found otherwise seek to surmise legislative intent based on conference reports, but "[t]hat argument fails for the simple reason that Congress enacts, and the President signs, statutes – not conference reports." *Id*.  *See also Telxon*, 67 F. Supp. 3d at 820 ("The statue itself contains no express blanket exception for institutional investors"); *Aronson*, 79 F. Supp. 2d at 1156 ("The text of the [Professional Plaintiff Provision] contains no flat exemption for institutional investors").

Moreover, the argument that institutions are exempted when the competing movant is also an institutional investor is illogical.  That argument is predicated on the view that the PSLRA favors institutional investors over individuals because institutions are better qualified to control the litigation and not be controlled by counsel.  But, between two institutions, a preference for institutions is a non sequitur.  Indeed, while "the legislative history appears to favor institutional investors, a policy of equal force is the general prevention of over-representation regardless of the plaintiff status." *Thompson*, 2004 WL 2988503, at *7 (denying institution's lead plaintiff motion because it was a professional plaintiff and appointing another institution); *Cunha v. Hansen*

*Natural Corp.*, 2009 WL 2029797, at *4 (C.D. Cal. July 13, 2009) (same).  Accordingly, it would be inconsistent with the purpose of the PSLRA to appoint Arkansas Teachers when it falls squarely within the bar of the Professional Plaintiff Provision and there are competing and well-qualified institutional investor movants.

Arkansas Teachers is also likely to argue that the Court should exercise its discretion under the Professional Plaintiff Provision and still be appointed lead plaintiff.  But there is no reason to make an exception here; indeed, there is every reason not to make the exception.  Arkansas Teachers is a serial lead plaintiff filer with 48 lead plaintiff motions (5 in 2017 alone), and 14 lead plaintiff appointments in the last three years.  The sheer magnitude by which it has blown past the limit of five cases in three years strongly counsels against granting Arkansas Teachers a discretionary appointment.  *Cunha*, 2009 WL 2029797, at *4 (declining to exercise discretion when institutional movant had been lead plaintiff in eight cases in the last three years, but had been "involved" in 21).  While the Professional Plaintiff Provision grants the Court discretion, that discretion is to be exercised "consistent with the purposes of this section" under the PSLRA.  §78u-4(a)(3)(B)(vi).  It would be wholly inconsistent with the purposes of the provision to grant a waiver to a serial filer that blatantly disregards the five in three prohibition.

    **2.**    **There is a "Colorable Risk" that Arkansas Teachers May be Subject To Unique Defenses Because It Has Been Attacked by Defendants in the Past Based On Political Donations By Proposed Lead Counsel**

Arkansas Teachers' selection of proposed Lead Counsel, Labaton Sucharow LLP ("Labaton"), may subject it to unique defenses and challenges to adequacy that could be a focus and distraction as the litigation moves forward.  Specifically, in *Orbital*, the defendants advised the Court during the lead plaintiff process that "they believe that pay-to-play allegations against [Arkansas Teachers' counsel] Labaton will be a significant issue throughout discovery and class

5

certification," and counseled against the appointment of Arkansas Teachers. *Defendants' Notice of Authority and Information With Respect to Pending Motions for Lead Plaintiff Appointment*, 16-cv-1031-TSE-MSN, E.D. Va. Oct. 27, 2016, ECF 25 at 2-3 (Bleichmar Second Decl. (Exhibit C)) ("*Orbital Defendants' Notice of Authority*"). The Court in *Orbital* did not reach this issue, however, because, as discussed above, it denied Arkansas Teachers' lead plaintiff motion on the grounds that it was a professional plaintiff.[4] *Orbital*, 220 F. Supp. 3d at 659 n.1.

The *Orbital* defendants presented the following facts in their submission:

- "In 2009, five different Labaton attorneys made contributions to the reelection campaign of Martha Shoffner, the state treasurer of Arkansas, and by virtue of her position, a member of ATRS [Arkansas Teachers'] board (none of the Labaton attorneys actually resided in Arkansas; rather they all lived in New York). ATRS's board manages the fund. Each of those [Labaton] individuals donated between $500 and $1,000, for a total of $4,000." *Orbital Defendants' Notice of Authority* at 3.

- "Shortly after Ms. Shoffner received these donations, she was arrested on bribery charges and eventually was tried, convicted, and sentenced to thirty months in prison. The conviction was based on evidence that Ms. Shoffner received $36,000 in 'kickbacks' in return for funneling approximately $2 billion worth of bond business to a single individual." *Id.* at 4.

- "The government also suggested that Ms. Shoffner received contributions to her 2010 election campaign and 'used contributors' campaign funds to pay for her personal items on her credit card.' The donations from the Labaton attorneys were to Ms. Shoffner's 2010 campaign." *Id.*

- "The sheer number of the cases in which ATRS appointed Labaton as lead plaintiff [sic] [counsel] lends further credence to the possibility of a play-to-play relationship (whether through Ms. Shoffner or other individuals). ***In the thirty-two cases in which ATRS has served as lead plaintiff, Labaton Sucharow has been appointed class counsel or co-counsel in sixteen cases***." *Id.* (emphasis supplied).

---

[4] Defendants in this action have not made this pay-to-play argument, but they have an incentive to remain silent because they obviously prefer a weak lead plaintiff that is subject to attack and disqualification at class certification. The defendants in *Orbital* were in a different position. The Court in *Orbital* had suggested, as construed by defendants, that a defendant's failure to raise concerns about the lead plaintiff during the selection process could constitute waiver. *Orbital Defendants' Notice of Authority* at 1-2.

6

The potential alone that Arkansas Teachers will be subject to this unique defense concerning play-to-play and will not fairly and adequately protect the interests of the class is sufficient to render it inadequate. As this Court has stated, "[s]ignificantly, the proof needed to rebut the presumption need not establish a plaintiff's inadequacy with absolute certainty; instead, it is enough that it presents a ***colorable risk*** of inadequacy." Hr'g Tr., at 5, *Schaffer v. Horizon Pharma PLC*, No. 16-cv-1763 (S.D.N.Y. June 3, 2016), ECF No. 62 (citing *In re Sunbeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2014) ("This court finds that there is at least a ***potential*** that the presumptively most adequate lead plaintiff will be subject to unique defenses and will not fairly and adequately protect the interests of the class"); *Newman v. Eagle Building Technologies*, 209 F.R.D. 499, 504 (S.D. Fla. 2002) (disqualifying the movant because he "***may*** be subject to unique defenses that might imperil certification of a class in this case")).[5]

Finally, Arkansas Teachers' vulnerability to attacks by defendants also counsels against making an exception under the Professional Plaintiff Provision discussed above. There is no reason to waive the statutory limit of that provision, especially when Arkansas Teachers suffers from additional infirmities that can prejudice the prosecution of the Action to the detriment of the Class. Boca Raton is not subject to any such challenges.

### B. Operating Engineers (i) Is A Professional Plaintiff and (ii) Potentially Inadequate Because It Is in Critical Financial Condition

#### 1. Operating Engineers Is a Professional Plaintiff

While not a recidivist infringer of the Professional Plaintiff Provision like Arkansas Teachers, Operating Engineers also cannot be appointed lead plaintiff because the instant case would be the sixth action in which it would serve as lead plaintiff in the last three years. Since

---

[5] Second Bleichmar Decl. (Exhibit E).

2010, Operating Engineers has been appointed lead plaintiff in 11 cases,[6] and the following chart lists the five cases in which Operating Engineers continues to have lead plaintiff responsibilities.

| Date Appointed | Company Name | Court | Docket |
| --- | --- | --- | --- |
| 08/10/2015 | Rayonier Advanced Materials, Inc. | M.D. FL | 3:15cv00546 |
| 02/25/2015 | Rayonier, Inc. | M.D. FL | 3:14cv01395 |
| 06/10/2014 | NII Holdings, Inc. | E.D. VA | 1:14cv00227 |
| 01/09/2014 | Ariad Pharmaceuticals, Inc. | D. MA | 1:13cv12544 |
| 11/25/2013 | Kohl's Corporation | E.D. WI | 2:13cv01159 |

Operating Engineers will undoubtedly contend that many of these cases are not in active litigation. But the "[Professional Plaintiff] rule is **not** confined to simply the number of **presently** active cases a party is serving as a lead plaintiff in, but applies to **all** cases (active or otherwise) the party in questions has served as a lead plaintiff in the past three years." *Cunha*, 2009 WL 2029797 at *4 (emphasis added). "Nowhere in the statute suggest, much less does its language provide, that it is limited [to active cases], and with good reason." *Id*. "Even once a case has been settled or finally adjudicated the lead plaintiff still remains tasked with a host of administrative duties." *Id*. "In short, the ending of the formal case does not end the lead plaintiff's responsibilities to or for the class he, she or it was appointed to represent." *Id*. This is exactly the Operating Engineers' situation: (i) *Kohl* is on appeal,[7] (ii) in *Ariad* a joint motion for settlement was entered on November 29, 2017,[8] (iii) in *NII Holdings* the settlement was approved but not yet distributed,[9]

---

[6] Second Bleichmar Decl. (Exhibit F).

[7] *See Pension Trust Fund for Operating Engineers & Fire Retirement System et al v. Kohl's Corporation et al.*, 13-cv-1159, E.D. Wisc., ECF 99.

[8] *See In re Ariad Pharm., Inc. Sec. Litig.*, 13-cv-12544, D. Mass., ECF 231.

[9] *See In re NII Holdings, Inc. Sec. Litig.*, 14-cv-227, E.D. Va., ECF 268.

and (iv) & (v) the two different *Rayonier* cases are less than three years old as Operating Engineers admits in its certification. *See* ECF No. 27-2.

One of the main reasons for imposing a limitation on the number of cases is to ensure that the lead plaintiff can dedicate the necessary attention, focus, and diligence a class action requires. Accordingly, "[i]f a court determines that an institutional investor's participation in five or more litigations poses a risk of overstretch, the institutional investor may be disqualified under the statutory bar." *Thompson*, 2004 WL 2988503, at *6.

Here, there is objective indicia that Operating Engineers is overstretched.  It was not able to provide an accurate certification as required by the PSLRA, §78u-4(a)(2), listing a securities class action against the Frontier Communications Corporation in which it supposedly is seeking to serve as a representative capacity.[10]  Yet, it never filed a lead plaintiff motion or appear in any capacity in that action as reflected in the docket.[11]  While omitting a case can be an oversight, adding a case in which it was not involved strongly suggests that Operating Engineers did not read (or at least not closely enough) the certification it signed.  One of the main purposes of the PSLRA was "to increase client control over plaintiff's counsel, and allowing simultaneous prosecution of six securities class actions is inconsistent with that goal." *McKesson*, 79 F. Supp. 2d at 1156.

### 2.   Operating Engineers Also Presents a "Colorable Risk" of Inadequacy Because It Is In Critical Financial Condition

Concerns about the Operating Engineers' ability to properly oversee lead counsel and vigorously prosecute this action because it is stretched too thin are exacerbated because it is in

---

[10] *See* Operating Engineers Certification (ECF No. 27-2), at 2, listing *Bray v. Frontier Communications Corp.*, No. 3:17-cv-01617 (D. Conn.).

[11] Second Bleichmar Decl., Docket, *Bray v. Frontier Communications Corp.*, No. 3:17-cv-01617 (D. Conn.) (Last visited January 15, 2018). (Exhibit G).

critical financial condition. As discussed below, the Operating Engineers' precarious finances evidence its inability to "fairly and adequately protect the interests of the class." § 78u-4(a)(3)(B)(iii)(aa). The Operating Engineers' motion must therefore be denied because it may be subject to "unique defenses" under the PSLRA. §78u-4(a)(3)(B)(iii)(II)(bb).

Specifically, in 2017, Operating Engineers fell within the "Critical Status" designation under federal pension law, 26 U.S.C. §432(b)(2), which is the most serious underfunded category under that provision. *Id.* Operating Engineers was thus required to issue a "Notice of Critical Status" to "participants, beneficiaries, the bargaining parties, the Pension Benefit Guaranty Corporation, and the Department of Labor."[12] The Notice stated as follows:

> The plan is considered to be in critical status because it has funding or liquidity problems, or both. More specifically, the plan's actuary determined that the plan was in critical status last year and over the next 9 years, the plan is projected to have an "accumulated funding deficiency" (the funding standard account credit balance will be negative) for the 2019 plan year.[13]

The gravity of this condition is illustrated by the fact that out of thousands of public and union pension funds, Operating Engineers is one of only 67 funds in 2017 that are in Critical Status pursuant to the Department of Labor.[14]

Accordingly, the Operating Engineers' critical financial condition raises serious questions about whether it will be able to adequately protect the interests of the class. Put simply, it has more immediate and important concerns to which it needs to attend. Expressing similar concerns,

---

[12] *See* Department of Labor website at, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/critical-status-notices (last visited January 15, 2018).

[13] Bleichmar Second Decl. (Exhibit D).

[14] *See* Department of Labor website at, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/public-disclosure/critical-status-notices; clicking on 2017 "Critical Status Notices" (last visited January 15, 2018).

this Court rejected the lead plaintiff motion of the Employees' Retirement System of the Puerto Rico Electric Power Authority ("ERS-PREPA") because of the fiscal crisis in Puerto Rico. *Schaffer v. Horizon Pharma PLC*, 2016 WL 3566238, at *1 (S.D.N.Y. June 27, 2016). While the situation in Puerto Rico is more acute, the point is the same: a critical financial situation concerning the lead plaintiff movant can become a material and substantial distraction that could prejudice the Class.

Accordingly, Operating Engineers is inadequate because "the proof needed to rebut the presumption need not establish a plaintiff's inadequacy with absolute certainty; instead, it is enough that it presents a colorable risk of inadequacy." Hr'g Tr., at 5, *Schaffer v. Horizon Pharma PLC*, No. 16-cv-1763 (S.D.N.Y. June 3, 2016), ECF No. 62 (Second Bleichmar Decl. Exhibit E). Coupled with the fact that Operating Engineers is overstretched in securities class actions as evidenced by the fact that appointment as lead plaintiff in this case would run afoul of the Professional Plaintiff Provision, Operating Engineers should not be appointed lead plaintiff.

### C. The Court Should Appoint Boca Raton as Lead Plaintiff and Approve Its Selection of Lead Counsel

Because Arkansas Teachers' and the Operating Engineers' motions should be denied for the reasons discussed above, Boca Raton has the next largest loss and is the only remaining movant. More importantly, Boca Raton is well-suited to lead this litigation. It is an institutional investor with approximately $350 million in assets under management. "[I]nstitutional investors [are] the type of investors Congress prefers as lead plaintiffs." *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015). Accordingly, in a large, complex case like this one, the Court should appoint as Lead Plaintiff an institutional investor like Boca Raton with the resources and sophistication to effectively manage the vigorous and efficient prosecution of the case for the benefit of the Class.

11

Finally, the PSLRA gives the Lead Plaintiff the authority to "select and retain counsel to represent the class," subject to Court approval. 15 U.S.C. § 78u–4(a)(3)(B)(v). For the reasons set forth in Boca Raton's opening submission (ECF No. 31, at 7-8), the Court should approve its selection of Bleichmar Fonti & Auld LLP.

### III.     CONCLUSION

For the foregoing reasons, Boca Raton respectfully requests that the Court: (1) appoint Boca Raton as Lead Plaintiff; (2) approve Boca Raton's selection of BFA as Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: January 15, 2018                          Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

 /s/ Javier Bleichmar
Javier Bleichmar (JB-0435)
Joseph A. Fonti (JF-3201)
Wilson Meeks (WM-1066)
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com
jfonti@bfalaw.com
wmeeks@bfalaw.com

*Counsel for the City of Boca Raton Police and Firefighters' Retirement System and Proposed Lead Counsel for the Class*

13

## CERTIFICATE OF SERVICE

      I hereby certify that on January 15, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the registered participants.

                                          */s/ Javier Bleichmar*
                                          Javier Bleichmar