**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JIHAD A. HACHEM, Individually and on
Behalf of All Others Similarly Situated,

Plaintiff,

-v-

GENERAL ELECTRIC CO., *et al.*,

Defendants.

17-CV-8457 (JMF)

The Honorable Jesse M. Furman

(Consolidated)

<u>CLASS ACTION</u>

*(Oral Argument Requested)*

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE CLEVELAND
BAKERS AND TEAMSTERS PENSION FUND TO INTERVENE AND TO VACATE
THE OPINION AND ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 4

ARGUMENT ............................................................................................................................ 8

I.   THE LEAD PLAINTIFF ORDER SHOULD BE VACATED,
     AND NEW NOTICE SHOULD BE ISSUED, BECAUSE THE
     PREVIOUS NOTICES WERE DEFECTIVE ................................................................ 8

II.  CLEVELAND B&T FULFILLS THE REQUIREMENTS TO
     INTERVENE .............................................................................................................. 14

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cyberonics Inc. Sec. Litig.*,
   468 F. Supp. 2d 936 (S.D. Tex. 2006) ...............................................................8, 9

*Dube v. Signet Jewelers Ltd.*,
   No. 16-cv-6728, 2017 WL 1379385 (S.D.N.Y. April 14, 2017) ...................9, 12, 13

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   947 F. Supp. 2d 366 (S.D.N.Y. 2013) ...................................................................13

*In re Leapfrog Enters., Inc. Sec. Litig.*,
   No. 03-cv-5421, 2005 WL 5327775 (N.D. Cal. July 5, 2005) ...............................13

*In re Select Comfort Corp. Sec. Litig.*,
   No. 99-cv-884, 2000 WL 35529101 (D. Minn. Jan 27, 2000) ...............................12

*Teamsters Local 455 Freight Division Pension Fund v. Bombardier, Inc.*,
   No. 05-cv-1898, 2005 WL 1322721 (S.D.N.Y. June 1, 2005) ...........................8, 12

*Vanleeuwen v. Keyuan Pharms, Inc.*,
   No. 11-cv-9495, 2013 WL 2247394 (C.D. Cal. May 9, 2013) ..........................9, 12

*Waldman v. Wachovia Corp.*,
   No. 08-cv-2913, 2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009) ...........................13

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i)-(ii) ...............................................................1, 8, 10

15 U.S.C. § 78u-4(b)(3)(B) ...............................................................................14

Fed. R. Civ. P. 24(a) .........................................................................................14

**Other Authorities**

H.R. CONF. REP. NO. 104-369 (1995) ...................................................................8

The Cleveland Bakers and Teamsters Pension Fund ("Cleveland B&T") hereby respectfully moves pursuant to Fed. R. Civ. P. 24 to intervene in the above-captioned case for the purpose of seeking to vacate the January 19, 2018 Opinion and Order issued therein, and to declare operative the notice caused to be published by Grant & Eisenhofer, P.A. in *PR Newswire* on February 16, 2018 under 15 U.S.C. §78u-4(a)(3)(A)(i), so that the time period for members of the class to move the Court to serve as lead plaintiff and will close on April 17, 2018, for the reasons set forth below.

## PRELIMINARY STATEMENT

Cleveland B&T seeks to intervene in this action to obtain an order vacating this Court's appointment of lead plaintiff and lead counsel. *See Hachem v. Gen. Electric, Inc.*, 1:17-cv-08457-JMF (S.D.N.Y.) (Docket No. 52). The Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires private parties instituting federal securities class actions to provide notice to other investors impacted by the alleged fraud so that the most adequate lead plaintiff may be selected by the Court pursuant to a fair and open process. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i)-(ii). Among other things, the PSLRA notice provisions mandate that an accurate description of the fraud be published, and provide investors with a sixty-day window within which to decide whether to participate in the action directly by seeking to be appointed lead plaintiff. *Id.* Here, the notices that were issued concerning securities fraud claims against General Electric Company ("GE" or the "Company") failed to meet the requirements of the PSLRA, and as a result, vast numbers of GE investors with actionable securities claims were left out of the process altogether.

On November 1, 2017, a stockholder filed a federal securities class action against GE and certain key executives, alleging that during a short, three-month class period (from July 21, 2017 through October 20, 2017), GE knowingly made false and misleading statements concerning the

1

operational results and trends in its Power division.  *See Hachem v. Gen. Electric, Inc.*, No. 1:17-cv-08457 (S.D.N.Y. November 1, 2017), Docket No. 1 (the "*Hachem* Complaint").  That same day, the statutory notice required by the PSLRA was duly published, alerting GE investors of the right to move to become lead plaintiff in sixty days, or on January 2, 2018.  *See Hachem*, Docket No. 6, Ex. A. (the "*Hachem* Notice").

More than a month and a half later, on December 18, 2017, another federal securities class action was filed in this Court against GE, asserting an expanded class period from December 15, 2016 through November 10, 2017 (almost four times the length of the class period in the *Hachem* Complaint) and alleging that GE made fraudulent statements and omissions regarding GE's Power business ***and its long-term care ("LTC") insurance business***.  *See Tampa Maritime Ass'n-Int'l Longshoremen's Ass'n Pension Plan v. Gen. Electric, Co.*, No. 1:17-cv-09888 (S.D.N.Y. December 18, 2017), Docket No. 1 ("*Tampa* Complaint").  Despite the addition of different substantive claims for violations of the securities laws, the addition of a separate defendant, and the increase in the Class Period, the notice issued by Tampa and its counsel ***did not allow investors the PSLRA-mandated sixty days*** in which to move for lead plaintiff; instead, Tampa's defective notice informed investors that they had only two weeks (until the January 2, 2018 date set forth in the *Hachem* Notice) to seek appointment as lead plaintiff.  *See Hachem*, Docket No. 32, Ex. D ("*Tampa* Notice").

Following the filing of lead plaintiff motions, GE made additional disclosures concerning its LTC insurance business which demonstrated that its false statements extended back for at least several years (the "LTC Fraud").  Specifically, on January 16, 2018, GE informed investors that it was required to take a charge of over $9 billion for 2018 and over $15 billion total over the next several years due to its insufficient LTC insurance reserves.  Further, on January 24, 2018,

GE disclosed that the SEC had commenced an investigation concerning the Company's past accounting that led to such a huge charge. The magnitude of these problems supports an inference that GE knew about its problematic LTC business, yet published false financial statements, for years. These disclosures alone, which now will extend the class period even further on both the front end and the back end, bookended a brief period in which GE lost market capitalization of approximately $22 billion – dwarfing the maximum recoverable damages in the *Hachem* Complaint and adding substantially to the damages asserted in the *Tampa* Complaint.[1]

GE's January 2018 disclosures led Cleveland B&T to file its own action against GE on February 20, 2018, asserting the full range of misconduct that occurred with regard to GE's LTC and Power businesses, and providing a class period of February 26, 2013 through January 24, 2018. *See The Cleveland Bakers and Teamsters Pension Fund v. Gen. Electric Co.*, No. 18-cv-01404 (S.D.N.Y.), Docket No. 1 ("*Cleveland B&T* Complaint"), ¶1. Cleveland B&T also filed notice of the class action providing that lead plaintiff motions must be filed by no later than April 17, 2018. *See* Declaration of Daniel L. Berger ("Berger Decl."), Exhibit 1.

Prior to publication of Cleveland B&T's Notice, investors had not been provided with adequate notice of the fraud at GE or a fair opportunity to move for lead plaintiff. The *Hachem* Notice is defective because it fails to apprise investors of claims concerning GE's LTC Fraud and expanded class period, and the *Tampa* Notice is defective because it does not give investors

---

[1] The *Hachem* Complaint alleges just one stock price drop, on October 23, 2017, a decline of $1.51 per share as a result of an alleged corrective disclosure on October 20. The *Tampa* Complaint alleges 4 corrective disclosure dates and attendant stock price drops totaling $4.88: $0.78 (for a corrective disclosure on July 21); $1.51 (for a corrective disclosure October 20, 2017); $2.59 (over two days for corrective disclosures on November 13 and 14). Maximum damages alleged in the *Tampa* Complaint are therefore more than triple those in the *Hachem* Complaint. Furthermore, neither action (and no notice) addresses the losses suffered by stockholders in January 2018, when the true scope of the LTC Fraud was revealed. These January disclosures caused an additional $2.14 of investor losses. *Cleveland B&T* Complaint at ¶¶ 23, 25, 90, 92.

the statutorily mandated sixty days within which to move for lead plaintiff in the case involving GE's LTC Fraud and a substantially longer class period.  These unquestionably deficient notices warrant a "do over" of the lead plaintiff selection process.  Vast numbers of potential lead plaintiffs have been excluded from the opportunity to participate in the lead plaintiff appointment process, including potentially thousands of investors who purchased GE securities outside the truncated class periods announced in the *Hachem* and *Tampa* Notices.  The Court should therefore grant the relief requested.

## FACTUAL BACKGROUND

On November 1, 2017, Jihad A. Hachem filed a class action complaint for violation of the federal securities laws against GE, Jeffery R. Immelt, Jeffrey S. Bornstein, and John L. Flannery.  *See Hachem* Complaint ¶1.  The *Hachem* Complaint asserted a class period of July 21, 2017 through October 20, 2017 (the "*Hachem* Class Period").  *Id*.  Hachem's primary grievance was that GE failed to disclose during the *Hachem* Class Period that various operating segments, including its Power segment, were underperforming, and that the Company deliberately overstated its full year 2017 guidance, falsely touting the strong performance of these same business segments shortly before the truth about its poor performance was disclosed.  *Id.* ¶¶6, 21.

On the same day the *Hachem* Complaint was filed, the *Hachem* Notice was issued across *Business Wire* announcing the filing of the *Hachem* Complaint on behalf of investors that purchased GE securities, and stating, in relevant part:  "Glancy Prongay & Murray LLP ('GPM') files a class action lawsuit on behalf of investors that purchased General Electric Company ('General Electric' or the 'Company') (NYSE: GE) securities between **July 21, 2017, and October 20, 2017**, inclusive (the 'Class Period')."  *See Hachem*, Docket No. 6, Ex. A (emphasis in original).  The *Hachem* Notice described the claims, consistent with the *Hachem* Complaint,

4

as being limited to false statements concerning the underperformance of GE's operating segments, as follows:

> The complaint filed in this class action alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company's various operating segments, including its Power segment, were underperforming Company projections, with order drops, excess inventories and increased costs; (2) as a result the Company overstated GE's full year 2017 guidance; and (3) that, as a result of the foregoing, Defendants' statements about General Electric's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis. *Id.*

On November 2, 2017, an additional class action complaint was filed alleging substantially similar claims, and an identical class period, as those in the *Hachem* Complaint. *Mirani v. Gen. Electric Co.*, No. 17-cv-8473 (S.D.N.Y.) (Docket No. 1 at ¶¶1, 4).

On December 18, 2017, a third class action complaint was filed against GE by Tampa with Labaton Sucharow LLP ("Labaton") as its counsel. *See generally Tampa* Complaint. The *Tampa* Complaint asserted claims against GE, Immelt, Bornstein and Flannery, and included for the first time an additional individual defendant, Jamie Miller.

On December 18, 2017, Labaton also caused the *Tampa* Notice to be published, indicating a new class period of **December 15, 2016 through November 10, 2017** (the "*Tampa* Class Period"), and alluding to a new category of misconduct surrounding GE's "legacy insurance business." *Hachem*, Docket No. 32, Ex. D. Notably, however, the *Tampa* Notice called for lead plaintiff motions to be filed on January 2, 2018, just fifteen calendar days later (which included only nine business days as a result of the Christmas and New Year's holidays). There is no indication on the record that the Court ever determined the adequacy of the *Tampa* Notice, and no explanation for why the *Tampa* Notice failed to allow the statutorily-required sixty days for proposed class members to file lead plaintiff motions.

The *Tampa* case was marked as "related" to the *Hachem* case, and Tampa did not object to consolidation of its action with the *Hachem* case.  *See Hachem* Docket No. 15.  The Court agreed that the cases were related, and allowed parties one week to object to consolidation.  *Id.* The Court issued an Order consolidating all cases on December 29, 2017.  *See Hachem*, Docket No. 16 (Order dated December 29, 2017, consolidating cases).

Per the *Hachem* and *Tampa* Notice provisions, a number of parties seeking lead plaintiff status filed their motions in this court on January 2, 2018.  *See Hachem* Docket Nos. 17-36.

On January 16, 2018, just three days before the Court appointed ATRS as lead plaintiff, GE made additional disclosures concerning extensive and pervasive problems in its LTC insurance business.  In particular, GE announced that it would be required to assess an "after-tax GAAP charge of $6.2 billion for the fourth quarter of 2017," and that it would be required to make "statutory reserve contributions of ~$15 billion over seven years."  *See Cleveland B&T* Complaint ¶21.  On January 24, 2018, GE announced that the SEC had launched an investigation in GE's accounting practices.  *Id.* ¶24.

On January 18, 2018, a complaint for violation of the federal securities laws was filed against GE and certain top executives in the United States District Court for the District of Connecticut, alleging a class period of February 23, 2013 through January 12, 2018.  *See Salazar v. Gen. Electric Co.*, No. 3:18-cv-00106 (D. Conn.) (Docket No. 1) (the "*Salazar* Complaint").  The *Salazar* Complaint included allegations concerning both the Power division and the LTC Fraud.  The expansion of the class period to nearly five years accounted for the fact that GE had just disclosed a massive charge of over $15 billion to account for its underreporting of loss reserves on its LTC insurance business.  The *Salazar* plaintiff also provided a fresh notice to stockholders, as required by the PSLRA, giving GE investors impacted by the fraud sixty days

within which to move to become lead plaintiff, i.e., until March 19, 2018.  On January 24, *Salazar* withdrew his complaint.  No new notice was issued informing investors that the deadline for lead plaintiff motions was revoked.

On January 19, 2018, the Court appointed Arkansas Teacher Retirement System ("ATRS") to serve as lead plaintiff and appointed Labaton as lead counsel.  *Hachem* Docket No. 52 (Memorandum and Order Dated January 19, 2018); *see also Hachem* Docket No. 29 (ATRS Lead Plaintiff motion).  The ATRS appointment was based on the *Tampa* Class Period, which is nearly four times longer than the class period announced in the *Hachem* Notice, despite that the *Tampa* Notice did not provide a fresh sixty-day period in which to move for lead plaintiff. Further, this appointment does not take into account the potentially longer class period that had been asserted by *Salazar* based on GE's January 2018 disclosures.

On February 16, 2018, Cleveland B&T filed its Complaint against GE alleging securities fraud violations concerning both the Power division and the LTC Fraud over a proper class period reaching back for several years, until February 26, 2013, and extending through the January 2018 disclosures of the depth of the problems in GE's LTC business and the related SEC investigation.  *Cleveland B&T* Complaint, ¶¶1, 43-48, 94-101.  Cleveland B&T also alleged additional stock price drops that had not been included in either the *Hachem* or *Tampa* Complaints; specifically stock price drops on July 21, 2017, *id.* ¶¶ 73-74, on January 17, 2018, *id.* ¶¶89-90, and on January 24, 208, *id.* ¶¶91-92.  Also on February 16, 2018, Cleveland B&T published the statutorily required notice alerting interested investors that they may move for lead plaintiff within sixty days.  *See* Berger Decl. Ex. 1.

## ARGUMENT

**I.   THE LEAD PLAINTIFF ORDER SHOULD BE VACATED, AND NEW NOTICE SHOULD BE ISSUED, BECAUSE THE PREVIOUS NOTICES WERE DEFECTIVE**

The PSLRA requires a plaintiff to publish "not later than 20 days after the date on which the complaint is filed . . . a notice advising members of the purported plaintiff class . . . of the pendency of the action, the claims asserted therein, and the purported class period." 15 U.S.C. § 78u4(a)(3)(A).  The notice must also inform members of the proposed class that they "may move the court to serve as lead plaintiff" within sixty days after publication of the notice.  *Id.* The purpose of these requirements is to "encourage the most capable representatives of the plaintiff class to participate in the class action litigation[,] parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders."  H.R. CONF. REP. NO. 104-369, at 32 (1995).

"[I]n deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice comports with the objectives of the PSLRA."  *Teamsters Local 455 Freight Division Pension Fund v. Bombardier, Inc.*, No. 05-cv-1898, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005) ("*Bombardier*") (citation omitted) (finding the PSLRA required republication of notice because amended complaint significantly expanded the potential class from that identified in the notice).

Courts will require a new notice to be issued, and a new lead plaintiff process to commence, where the appointment of the lead plaintiff was based on factual allegations, legal theories, or a class period that differs from those described in the notice, or where an amended complaint is subsequently filed that alters the litigation landscape such that the published notice failed to put significant numbers of investors on notice of their membership in the proposed class

and eligibility to seek appointment as lead plaintiff.  *See, e.g.*, *In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 940 (S.D. Tex. 2006) (ordering republication of notice where amended complaint included additional claims); *Vanleeuwen v. Keyuan Pharms, Inc.*, No. 11-cv-9495, 2013 WL 2247394, at *5 (C.D. Cal. May 9, 2013) (requiring publication of new notice where the allegations in the new complaint "greatly expand[ed] the scope of the action, requiring new notice and lead plaintiff selection").  There is no magic set of factors that will lead a court to require republication of notice.  By contrast, "the inquiry is more qualitative, turning on a comparison of the two complaints and an assessment of whether, in light of the amendments, 'entire classes of potential lead plaintiffs [were] left out of the notice procedure.'"  *Dube v. Signet Jewelers Ltd.*, No. 16-cv-6728, 2017 WL 1379385, at *1 (S.D.N.Y. April 14, 2017) (Furman, J.) (quoting *Bombardier*).

Both the *Hachem* and *Tampa* Notices failed to meet the PSLRA's requirements.  The *Hachem* Notice disclosed the brief three-month *Hachem* Class Period and contained no allegations regarding GE's LTC insurance business, whereas ATRS successfully moved for lead plaintiff status based on the four-fold longer *Tampa* Class Period featured in the *Tampa* Complaint, which also included some allegations regarding the LTC Fraud.  *See Hachem*, Memorandum of Law in Support of the Motion of Ark. Teacher Ret. Sys. for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, Docket No. 29 at 5-6 (defining *Tampa* Class Period as relevant class period for appointment purposes and identifying Tampa's purported losses for that period).  Because the significant expansion of a class period changes the universe of investors who are eligible to be lead plaintiff, courts have found such a development to compel publication of a new notice and new lead plaintiff selection process.  *See, e.g.*, *In re Cyberonics Inc. Sec. Litig.*, 468 F. Supp. 2d 936, 940 (S.D. Tex. 2006) (ordering republication of

notice where amended complaint included an expanded class period because the original complaint and notice "excluded . . . participation in the class" of certain investors).  The expansion of the class period here from three months to eleven months, a nearly four-fold increase, renders the *Hachem* Notice defective.

In addition to providing a truncated class period, the *Hachem* Notice suffers because it fails to inform investors of an entire category of fraud: the false statements concerning GE's LTC business.  As GE disclosed on January 26, 2018, this is a problem requiring a set-aside of $15 billion over the next seven years.  The depth and magnitude of the problems in GE's LTC business create an inference that GE was aware of these problems, yet had been falsely reporting its financial statements, for years.  The *Hachem* Notice and Complaint do nothing to alert investors of these problems at GE, which dwarf the Power division problems, which are the focus of *Hachem*.

The *Tampa* Notice is also deficient, for two reasons.  First, it provided only fifteen days—including the Christmas and New Year's holidays—for investors to consider seeking lead plaintiff appointment.  By adding substantive claims that were not present in the original *Hachem* Complaint or *Hachem* Notice (and adding a new defendant), a fresh notice and reset of the sixty-day clock were required to allow investors sufficient time to consider whether to take an active role in the litigation and move for lead plaintiff.  Thus, the *Tampa* Notice was facially deficient because it did not allow investors the PSLRA-mandated sixty-day period in which to move for lead plaintiff status.  *See* 15 U.S.C. § 78u4(a)(3)(A).

Second, like the *Hachem* Notice, the *Tampa* Notice was insufficient because it, as well as the *Tampa* Complaint, barely scratch the surface of the misconduct that occurred at GE for many years concerning the LTC Fraud.  The *Tampa* Complaint makes a few cursory allegations

concerning problems in GE's LTC business, *Tampa* Complaint, ¶¶3, 6, 7, 28, but does not take into account GE's January 16, 2018 disclosures revealing severity of the LTC Fraud, or the SEC's investigation thereof.  ATRS cannot dispute the significance of these revelations; indeed, its own counsel saw fit to file a new complaint (for Tampa) based on GE's October 20, 2017 limited disclosure that it had "observed elevated claims experience for a portion of [its] long-term care book at GE's legacy insurance business."  *Tampa* Complaint ¶¶ 3, 7, 28.  If that vague disclosure warranted filing a new complaint and new notice, then *a fortiori*, the disclosure that GE's LTC business faced a $15 billion charge and an SEC investigation so too warrant new notice.  *See Cleveland B&T* Complaint, ¶¶ 21-25, 43-47, 93-101.

Furthermore, these later disclosures now strongly support beginning the class period much earlier than the *Tampa* Complaint class period and ending it later.  Indeed, it is likely that the class period that will eventually attach to the LTC Fraud claims against GE will begin as early as the applicable limitations period permit in early 2013.  *Id.* ¶¶ 93-101.  As alleged in the *Cleveland B&T* Complaint, problems in the LTC business were rampant, and many other LTC insurers had to take drastic measures to honor their policies, or even shutter their businesses.  *Id.* ¶94.  GE likely knew about these problems in its own business, in particular because it had owned Genworth, an LTC insurance provider, which faced its own class action in 2014 for failing to maintain adequate reserves.  *Id.* ¶96.  In fact, the LTC business at GE that is the subject of Cleveland B&T's complaint is comprised of the remnants of the Genworth business that GE was unable to divest years earlier.  *Id.* ¶46.  The action that ultimately proceeds is likely to include these allegations and a class period that extends well beyond that asserted in *Hachem* and *Tampa.*

Because of the expansion of class action allegations, as well as a class period, differences between the *Hachem* Complaint and the *Tampa* Complaint, and those between the *Tampa* Complaint and the anticipated amended complaint, are "by no means a slight variation."  *In re Select Comfort Corp. Sec. Litig.*, No. 99-cv-884, 2000 WL 35529101, at *7 (D. Minn. Jan 27, 2000) (requiring republication of notice where new complaint "assert[ed] entirely new factual and legal allegations"); *see also Keyuan Pharms*, 2013 WL 2247344, at *6 (requiring notice where the previously published notice did not provide adequate notice to the entire realm of potential investors because any other result would be "contrary to the letter and intent of the notice requirements" provided in the PSLRA).  Rather, those differences "dramatically alter the contours of the lawsuit."  *Dube v. Signet Jewelers Ltd.*, 16-cv-6728-JMF, 2017 WL 1379385, at *2 (S.D.N.Y. April 4, 2017) (Furman, J.) (quoting *In re Leapfrog Enters., Inc. Sec. Litig.*, 03-cv-5421, 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005)).

In *Signet*, this Court found that republication was appropriate in light of amended pleadings that "add[ed] more than three years" to the proposed class period and alleged new theories of liability.  Id. at *1-2.  Similarly, this case is almost certain to feature a class period *several years longer* than that set forth in either the *Hachem* Complaint (3-month class period) or the *Tampa* Complaint (eleven-month class period), such that investors will be included in the class having received no notice of their right to seek appointment as lead plaintiff.  For instance, Cleveland B&T purchased 11,000 shares of GE common stock on October 10, 2016, *see Cleveland B&T* Complaint, Ex. A, a date that was not included in either the *Hachem* or the *Tampa* Class Periods, and thus Cleveland B&T had no warning of its eligibility to seek to serve as lead plaintiff.  Because Cleveland B&T and other eligible investors did not receive the PSLRA-mandated notice and thus "ha[d] no idea that [they] had the opportunity to move for

appointment as lead plaintiff," *see Bombardier*, 2005 WL 1322721, at *2, there is "a very real possibility that—based on the criteria set forth in the PSLRA—[Tampa is] not the best suited to represent the interests of the class." *See Signet*, 2017 WL 1379385, at *2.

Appointment of a lead plaintiff based on a notice that does not accurately reflect the lawsuit that will go forward can "give rise to the possibility that a more appropriate lead plaintiff exists, a party which was not apprised of its inclusion in the lawsuits by the original notice." *Id. See also Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013) (ordering republication of notice of class action where the amended complaint added new claims and expanded the class period by two years, so that "individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice"); *Waldman v. Wachovia Corp.*, 08-cv-2913, 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009) (requiring new publication of notice where amended complaint asserted claims that extended "far beyond the class and claims proposed in the original Complaint," and noting that "new class members are entitled to notice regarding their claims and potential lead plaintiffs are entitled to a reasonable opportunity to identify themselves and present themselves for the Court's consideration"); *Leapfrog*, 2005 WL 5327775, at *2-3 (requiring republication where the amended complaint "vastly expand[ed]" plaintiffs' original complaint and included a new category of false statements, and distinguishing cases that stood "only for the sensible proposition that minor amendments to complaints or differences between complaints in related cases do not warrant republication or revisiting the lead plaintiff contest").  Here, the *Hachem* and *Tampa* Notices did not put the entire class of potential lead plaintiffs on notice, and there is a real risk that ATRS is not the most adequate plaintiff to lead the case that will ultimately proceed against GE.

Judicial efficiency would not be undermined by granting the requested relief. Defendants are not obligated to respond to either of the *Hachem* or *Tampa* Complaints, and will have sixty days to respond to the amended complaint that is currently due on March 20, 2018. *See Hachem*, Docket No. 14. Discovery is stayed during the pendency of any motion to dismiss. 15 U.S.C. § 78u-4(b)(3)(B). A properly appointed lead plaintiff can pick up and file an amended complaint after a fair process run in accordance with the PSLRA's notice requirements with only minor adjustments to the schedule.

## II.   CLEVELAND B&T FULFILLS THE REQUIREMENTS TO INTERVENE

The Court should grant Cleveland B&T's motion to intervene in this case because Cleveland B&T has met its burden with respect to all elements of intervention as-of-right as well as of permissive intervention under Rule 24 of the Federal Rules of Civil Procedure. Permitting ATRS to serve as lead plaintiff without complying with the PSLRA's notice requirements would "impair or impede [Cleveland B&T's] ability to protect its interest" in its securities fraud claims against GE, which arise from its ownership of shares of GE common stock, securities that form the "subject of the [consolidated *Hachem*] action." *See* Fed. R. Civ. P. 24(a). Thus, Cleveland B&T may intervene as of right.

Moreover, Cleveland B&T satisfies the requirements for permissive intervention. Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. Fed. R. Civ. P. 24(b)(1). Cleveland B&T has a "claim . . . that shares with the [consolidated *Hachem* action] a common question of law or fact," *see* Fed. R. Civ. P. 24(b)(1)(B), as shown by the *Cleveland B&T* Complaint. In addition, the "court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P.

14

24(b)(3).  Allowing Cleveland B&T to intervene to seek the limited relief discussed herein will not unduly delay or prejudice other parties in light of the schedule discussed above, and there is no basis to find that Cleveland B&T's motion is untimely.

## **CONCLUSION**

For the foregoing reasons, Movant respectfully requests that the Court grant the relief requested herein.

Dated: New York, New York
February 20, 2018

Respectfully submitted,

 /s/ Daniel L. Berger
Jay W. Eisenhofer
Daniel L. Berger
Caitlin M. Moyna
Jonathan D. Park
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: jeisenhofer@gelaw.com
Email: dberger@gelaw.com
Email: cmoyna@gelaw.com
Email: jpark@gelaw.com

*Counsel for Intervenor-Plaintiff The Cleveland Bakers and Teamsters Pension Fund*