UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIHAD A. HACHEM, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　-v-<br><br>GENERAL ELECTRIC CO., *et al.*,<br><br>　　　　　　　　　　Defendants. | 1:17-cv-8457 (JMF)<br><br>The Honorable Jesse M. Furman<br><br>(Consolidated)<br><br><u>CLASS ACTION</u><br><br>*(Oral Argument Requested)* |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF THE CLEVELAND BAKERS AND TEAMSTERS PENSION FUND TO INTERVENE AND TO VACATE THE OPINION AND ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**

The Cleveland Bakers and Teamsters Pension Fund ("Cleveland B&T") respectfully submits this reply memorandum of law in accordance with the Court's Order dated February 21, 2018, Docket No. 59, in support of its motion to intervene in the above-captioned case for the purpose of seeking to vacate the January 19, 2018 Opinion and Order and to declare operative the notice caused to be published by Grant & Eisenhofer, P.A. ("G&E") in *PR Newswire* on February 16, 2018 under 15 U.S.C. §78u-4(a)(3)(A)(i).

## PRELIMINARY STATEMENT

Cleveland B&T's Motion to vacate the Court's order appointing ATRS[1] as lead plaintiff seeks to further the goals of the PSLRA by opening up the lead plaintiff appointment opportunity to **all** interested investors after a full and fair lead plaintiff process. The prior PSLRA notice, published on November 2, 2017 and based on the *Hachem* complaint, was issued before GE made any disclosures concerning systemic fraud in its LTC insurance business. The notice published by the Labaton firm in mid-December 2017 was also inadequate because it was published before the startling new revelations of fraud in GE's LTC business and provided investors inadequate time to consider a lead plaintiff motion.

*Hachem* filed the first complaint and published the first notice on November 2, 2017, informing investors that any motion for appointment as Lead Plaintiff had to be filed by January 2, 2018. ECF No. 6, Ex. A. The *Hachem* complaint brought claims for GE investors who purchased GE securities during a three month period. Neither the *Hachem* notice nor complaint included any allegations concerning GE's LTC business. Then, on December 18, 2017, with the lead plaintiff motion deadline due to expire in fifteen days, Tampa filed a complaint and issued a new notice that added some, but vastly insufficient, allegations about GE's LTC business, and extended the class period from three to eleven months. ECF No. 32-4. Even though Tampa's

---

[1] Unless otherwise indicated, terms are defined in the same way as in Cleveland B&T's opening brief, ECF No. 57.

1

complaint contained new, completely different allegations of wrongdoing at GE, the Tampa notice did not provide the 60 day notice period required by the PSLRA, but instead told investors that they still only had until January 2, 2018, to move for Lead Plaintiff. *Id.*

The *Tampa* Notice predated GE's disclosures on January 16, 2018, which changed the nature of this case: only then, for the first time, GE disclosed that its LTC business required a $6.2 billion charge and a set-aside of $15 billion in reserves. GE's revelations made clear the scope and time period of wrongdoing extended far earlier than that even alleged in the Tampa complaint. GE then followed up on January 24, 2018, by announcing that the SEC had commenced an investigation into its LTC business (collectively, the "January Disclosures").

These developments require a new PSLRA lead plaintiff process so that all affected investors may consider whether to seek appointment. First, the Court's Lead Plaintiff order considered losses during the class period contained in the Tampa complaint in assessing the "largest financial interest" criteria, yet at most, investors had two weeks from the Tampa notice to the January 2 deadline (which spanned the Christmas and New Years' holidays) to evaluate whether to seek appointment. This does not comply with the PSLRA's requirements, and warrants a new lead plaintiff selection process.

Second, ATRS ignores the crux of Cleveland B&T's motion, which is that the entire litigation landscape changed with the January Disclosures, which triggered the interest of institutional investors who had previously disregarded the prior notices that were based on weaker evidence of a fraudulent scheme at GE, or who were excluded by the truncated class periods. Indeed, the January Disclosures led another investor to file a lawsuit on January 18, 2018, and at least two large pension funds, with prior lead plaintiff experience and large losses in

GE, are now considering whether to move for lead plaintiff should the Court allow the new lead plaintiff selection process to proceed. Declaration of Daniel L. Berger ("Berger Decl.") ¶¶3-4.

ATRS's arguments that Cleveland B&T's motion is based on a simple expansion of the class period fail. Substantial changes in class periods have warranted a new lead plaintiff selection processes. ATRS admits that the class period should be extended to at least three years, Opp'n at 16, rendering the prior notices, with class periods of three months and eleven months, defective. Whether the three-year period endorsed by ATRS or the five-year period in Cleveland B&T's notice are ultimately used, both encompass scores of qualified institutional investors who were previously omitted in the three-month *Hachem* period.

Finally, while ATRS's opposition points liberally to the PSLRA's policies, it is ATRS and its counsel Labaton, who have subverted those policies. ATRS, a relatively small pension fund with modest resources, is currently serving as lead plaintiff in fourteen securities fraud actions across the United States. It is highly doubtful, if not impossible, for ATRS capably to oversee its counsel's prosecution of claims against GE when it is busy supervising counsel in federal courts in Georgia, North Carolina, California, Texas, Illinois, Massachusetts and New York. This guarantees the very "lawyer-driven" litigation that ATRS purports to condemn. The PSLRA was designed to enable the "most capable" investor to serve as lead plaintiff. The process which resulted in ATRS's appointment was riddled with ineffective notices and fell short of that goal. Allowing a fair opportunity for all investors at this stage will remedy that.

## ARGUMENT

### I. THE LITIGATION LANDSCAPE HAS CHANGED SINCE THE PRIOR NOTICES WERE PUBLISHED

Cleveland B&T's motion, while premised partially on a significantly expanded class period, also focuses on the fact that the January Disclosures altered the mix of previously

3

available information concerning fraud at GE considerably enough that an entirely new cast of institutional investors would likely be interested to move for lead plaintiff.  *See* ECF No. 57 at 2-3.  Thus, ATRS's argument that new notice was not required fails.  ECF No. 63 at 9-10.  Cleveland B&T's PSLRA notice is the first *ever* to provide GE stockholders with the entire PSLRA-mandated 60-day notice period to consider all claims at issue in light of stunning, unique revelations regarding GE's LTC business that post-date the *Hachem* and *Tampa* notice periods.

The full story of the accounting charges taken by GE in connection with its LTC business was not made public until January 16, 2018, two weeks after the expiration of the January 2, 2018, filing deadline indicated in the *Hachem* and *Tampa* notices.  GE's game-changing revelations of a $6.5 billion accounting charge to be taken by its LTC division, along with an estimated $15 billion in reserve contributions over seven years, have given GE shareholders a materially different set of facts to consider, a materially different basis for recovery, and a materially different motivation to pursue lead-plaintiff status than were available during the *Hachem* and *Tampa* notice periods.  Indeed, a *Chicago Tribune* article published after the January 2 deadline had passed, titled "GE's surprise $15 billion shortfall was 14 years in the making," illuminates that the January Disclosures not only provided new information to the market, but also provided a basis to believe that the class period should be extended back as far as the limitations periods allow.  Berger Decl. Ex. 1.  Similarly, a MarketWatch article published on February 10, 2018, noted that GE's "huge" accounting charges had given rise to an SEC investigation, and that based on the new disclosures concerning GE's LTC business, the "magnitude of the $6.2 billion charge is far more staggering that [sic] the market anticipated."  Berger Decl. Ex. 2.   At least one news agency acknowledged at the time of the announcements that the accounting charges "shine[d] [a] spotlight" on GE's "previously obscure…long-term

care [business]." Berger Decl. Ex. 3. In contrast, when Hachem was filed, there was nothing public about GE's LTC problems, and the Hachem notice and complaint said nothing about LTC. While Tampa's December complaint and Notice did raise claims about GE's LTC business, these were completely different from the January Disclosures. Information available during the *Hachem* and *Tampa* notice period reflected only that GE was investigating its LTC business in the second half of 2018. The new revelations are "by no means a slight variation" from allegations in the earlier complaints, *In re Select Comfort Corp. Sec. Litig.*, No. 99-cv-884, 2000 WL 35529101, at *7 (D. Minn. Jan. 27, 2000) (ordering publication of new notice); rather, they have substantially increased the motivation for qualified investors to seek lead-plaintiff status.[2] Cases ATRS relied upon are distinguishable because, unlike the complaints here, they involved earlier complaints with a common nucleus of operative facts.[3]

*Dube v. Signet Jewelers Ltd.*, 2017 WL 1379385 (S.D.N.Y. April 14, 2017) is instructive. There, an initial complaint asserted securities fraud claims against an issuer based on allegations concerning the defendant company's decreased customer confidence resulting from employee theft and increased competitive pressure. *Id*. at *2. A later-filed complaint, that also asserted

---

[2] ATRS's reliance on cases in which parties sought to reopen the PSLRA notice period based solely on the expansion of a class period are therefore inapposite. *See*, *e.g.*, *Hom v. Vale, S.A.*, No. 15-cv-9539-GHW, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (both complaints alleged misleading statements and omissions to the SEC regarding the same accident that resulted in environmental damage); *Thomas v. Magnachip Semiconductor Corp.*, 14-cv-01160, 2015 WL 3749784, at *4 (N.D. Cal. June 15, 2015) (newly filed complaint "still center[ed] on the same factual scenario concerning…financial statements that was presented in [the] original complaint" and new claims asserted in the newly filed complaint "relate[d] to the same misrepresentations); *Turner v. ShengdaTech, Inc.*, No. 11 Civ. 1918 (TPG), 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011) (rejecting request for new notice where plaintiffs had asserted "substantially the same claim"); *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997) (all claims in the later-filed complaint were based on the same disclosure of financial record irregularities).

[3] *See In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F.Supp.2d 1233, 1241 (D.N.M. 2009) (declining to order a new notice period where both the original and added claims were based on "the alleged non-disclosure and misrepresentation of key financial information involving [defendant's] exposure to the sub-prime mortgage market"); *Chung v. Tyson Foods, Inc.*, 2017 WL 368506, at *3 (W.D. Ark. Jan. 25, 2017) (according to ATRS, finding an original PSLRA notice adequate where both complaints were "premised on much the same statements made in annual and quarterly SEC filings, as well as other public comments").

5

securities fraud claims, but added allegations including damage to brand reputation due to pervasive "blatant sexual harassment of female employees" and omissions concerning declining quality in its credit portfolio.'" This Court held that "these amendments 'dramatically alter[ed] the contours of the lawsuit' and '[made] it likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice'" such that "'allowing plaintiffs…to proceed without publishing a new notice reflecting their additional claims would potentially exclude qualified movants from the lead plaintiff selection process.'" *Id*. Thus, the Court held that asserting a unique factual basis for recovery – even asserted in furtherance of the same cause of action as the initial complaint – "alter[ed] dramatically the gravamen of the claims alleged against defendants," and "tilt[ed] the balance" in favor of republication. *Id*. In *Dube v. Signet,* the Court was also persuaded by the expansion of the class period by several years, *id.*; here, ATRS agrees that the Tampa class period must be expanded by at least two years, *see* ECF No. 63 at 16. Accordingly, republication should be ordered. *See also Vanleeuwen v. Keyuan Petrochemicals, Inc.*, 2013 WL 2247349, at *5 (C.D. Cal. May 9, 2013) (requiring republication of notice where allegations were based on new facts); *In re Leapfrog Enters., Inc. Sec. Litig.*, 03-cv-05421, 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005) (requiring new notice where allegations were expanded to include a new category of fraudulent conduct).

This last point is perhaps most important. The information newly disclosed in January *requires* an expansion of the class period, and affects thousands more investors. ATRS itself admits, in its opposition, that it intends to expand the class period by ***two years***. Thus, ATRS has conceded that the Tampa notice, which gave only 2 weeks for investors in the then-one-year class period to consider whether to move, itself was inadequate, because now, after the January disclosures, the fraud impacts investors going back to approximately January 2015. But even

6

this is not enough, as indicated in the Cleveland and Salazar complaints, which both allege GE's fraud going back to February 2013 (*see infra* at 8; ECF No. 58-1).  The PSLRA requires that all investors affected by the fraud at GE have the opportunity to come forward and seek Lead Plaintiff appointment.[4]

## II.   THE INTEGRITY OF THE PLSRA PROCESS REQUIRES A NEW LEAD PLAINITFF SELECTION PROCESS

### A. The Previous Notices Did Not Provide All Qualified Institutional Investors a Fair Chance to Move for Lead Plaintiff After Appropriate Consideration

The selection process leading to ATRS's appointment undermined "[t]he fundamental purpose of the [PSLRA] notice requirement" which is to "provide class members with sufficient information about the suit and inform class members of their right to move to be appointed lead plaintiff so they can make an ***informed and reasoned judgment about whether they should seek lead plaintiff status.***"  *Cal. Public Empl. Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 576 (D.N.J. 2001) (emphasis added); *see also* H.R. Conf. Rep. 104-369, at \*\*731 (the goal of the PSLRA is to "encourage the most capable representatives of the plaintiff class to participate in class action litigation"); *see also In re Cyberonics*, 468 F. Supp. 2d 936, 938 (S.D. Tex. 2006). Notice must be sufficient to ensure that it is not "disregarded." *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013); *Signet*, at \*2.  The *Hachem* and *Tampa* notices fell short of these goals.  Neither notice adequately informed investors of the problems with GE's LTC insurance business, as the *Hachem* Notice failed to mention GE's LTC business altogether, and the *Tampa* Notice pre-dated the January Disclosures.  Cleveland Br. at 9-10.  The *Tampa* Notice fails for the additional reason that – although alluding to some issues in GE's LTC business and expanding the class period to eleven months – it only provided investors

---

[4] ATRS argues that Cleveland B&T has smaller losses in the five-year Class Period than ATRS.  ECF No. 63 at 9. However, analyses of potential lead plaintiff losses must be deferred until a proper selection process is conducted.

7

fifteen days (nine business days), to move for lead plaintiff. *Id.* at 10. Yet, in assessing the largest financial interest, the Court applied *Tampa* Notice's eleven month class period, despite that investors did not have the full sixty-days to assess the viability of moving for lead plaintiff.

Had the *Tampa* Notice provided the requisite sixty-day period for lead plaintiff motions, it is likely that major institutional investors would have participated in the process, consistent with the goals of the PSLRA. Proper notice would have yielded a deadline of February 16, 2018, which would have afforded investors, who had disregarded the *Hachem* and *Tampa* notices, one full month to digest the January Disclosures and evaluate a lead plaintiff motion. Subsequent events support the conclusion that the January Disclosures increased the appetite among investors to pursue securities fraud claims against GE. On January 18, 2018, a GE investor filed *Salazar v. Gen. Electric Co.*, No. 3:18-cv-00106 (D. Conn.), and published a new notice in the *GlobalNewswire*. Berger Decl. Ex. 4. Salazar included new claims based on the January Disclosures, and notified investors of a March 19, 2018 lead plaintiff motion deadline. While the *Salazar* action was voluntarily (inexplicably) dismissed, the notice was never revoked.[5]

Furthermore, the two-week, year-end period in the *Tampa* Notice made it impossible for institutional investors to conduct the rigorous, comprehensive review of their losses and claims, which the PSLRA's sixty-day period is designed to allow. Many public pension funds require board approval prior to making a lead plaintiff motion, a step favored and sometimes also required by courts, *Kuriakose v. Fed. Home Loan Mortg. Co.*, 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008) (refusing to appoint lead plaintiff where board was not advised of the motion), but made impossible for many by the *Tampa* Notice's 15-day, year-end, notice period.

---

[5] It is noteworthy – peculiar, even – that ATRS did not formally resist or object to the filing of the *Salazar* complaint or the publication of the *Salazar* Notice; nor did it seek to have that notice withdrawn.

The *Tampa* Notice had the effect of preventing meaningful competition for ATRS in the lead plaintiff selection process. At least one large state pension fund and one large national pension fund, which both suffered significant losses in GE common stock as a result of the fraudulent conduct, did not previously move for lead plaintiff, but have now confirmed that they are evaluating whether to seek lead plaintiff status should the selection process be reopened here. Berger Decl. ¶¶3-4. These funds have prior lead plaintiff experience and follow a thorough process to determine whether it will seek lead plaintiff appointment. *Id.* They are likely not the only large pension funds that will consider coming forward if a process faithful to the PSRA is conducted. Indeed, it bears noting that only two other small institutional investors, one with losses of well under $1 million in the *Tampa* Class Period, moved for lead plaintiff,[6] a fact which belies ATRS's claim that notice was well-publicized, or that the "most capable" institutional investors had sufficient information to consider moving for lead plaintiff, ECF No. 63 at 14-15.

### B. ATRS's Actions Render It an Inappropriate Lead Plaintiff

In addition, ATRS's appointment violates the PSLRA's ban on "professional plaintiffs," which limits an investor's lead plaintiff appointments to five in three years. 15 U.S.C. § 78u-4(a)(2)(B)(vi). Although the Court considered this argument in connection with appointing ATRS, s*ee* ECF No. 42, at 2-5; ECF 52 No. at 3-4, we respectfully urge the Court to reconsider excluding ATRS in light of these unique circumstances. While Congress allowed for some exceptions to the five-in-three limit with regard to institutional investors (ECF No. 52 at 3), that caveat contemplated that the institutional investor at issue would be able to devote adequate resources to managing its counsel, so that it would be an active participant in the litigation. ATRS's ability to fulfill its responsibility here is highly questionable. ATRS currently is serving

---

[6] City of Boca Raton Police and Firefighters' Retirement System had LIFO losses of $212,835 (ECF No. 33-2).

9

as lead plaintiff in fourteen other actions across the country. It would be difficult for even a large pension fund to manage all these cases; ATRS is a relatively small fund with limited resources, casting doubt upon its ability to manage lead counsel in fourteen complex federal litigations, increasing the likelihood that this case will be "lawyer-driven."

Furthermore, in the lead plaintiff motions that the Court considered, no party raised the fact that Labaton was ARTS's counsel in 25 of the 48 actions in which ATRS moved for lead plaintiff appointment during the past eight years. *See* Berger Decl. Ex. 5. And of the fourteen pending actions in which ATRS currently serves as lead plaintiff, Labaton is lead counsel in eight. *Id.* Courts must "scrutinize[e] potential lead plaintiffs **and their counsel**." *City of Pontiac Gen. Empl. Ret. Sys. v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 503 (S.D.N.Y. 2012). Thus, while courts are allowed some discretion in considering whether to apply the five-in-three rule to institutional investors, ATRS's allegiance to Labaton casts doubt on its ability to "act like a 'real' client," to ensure "adequate representation" at a "reasonable price." *Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *4 (S.D.N.Y. March 19, 2012).

### III. CLEVELAND B&T'S MOTION TO INTERVENE SHOULD BE GRANTED

ATRS's primary argument against intervention is that it is unnecessary because Cleveland B&T's request to reopen the lead plaintiff process should be denied. ECF No. 63 at 20-22. However, for the reasons discussed above, the PSLRA's notice provisions require a new notice period, and intervention should therefore be granted. Moreover, for the reasons set forth in Cleveland B&T's opening brief, it satisfies the requirements for intervention under Fed. R. Civ. P. 24. ECF No. 57 at 15. Intervention should therefore be granted.

### CONCLUSION

For the foregoing reasons, as well as those set forth in Cleveland B&T's Opening Brief, ECF No. 57, Movant respectfully requests that the Court grant the relief requested herein.

Dated: New York, New York  
March 5, 2018

Respectfully submitted,

*/s/ Jay W. Eisenhofer*
Jay W. Eisenhofer  
Daniel L. Berger  
Caitlin M. Moyna  
GRANT & EISENHOFER P.A.  
485 Lexington Avenue  
New York, NY 10017  
Tel.: (646) 722-8500  
Fax: (646) 722-8501  
Email: jeisenhofer@gelaw.com  
Email: dberger@gelaw.com  
Email: cmoyna@gelaw.com  
Email: jpark@gelaw.com  

**Counsel for Intervenor-Plaintiff The Cleveland Bakers and Teamsters Pension Fund**

11