**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SJUNDE AP-FONDEN and THE CLEVELAND BAKERS AND TEAMSTERS PENSION FUND, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>GENERAL ELECTRIC COMPANY, JEFFREY R. IMMELT, JEFFREY S. BORNSTEIN, JAMIE MILLER, KEITH S. SHERIN, JAN R. HAUSER, and RICHARD A. LAXER,<br><br>　　　　　　　Defendants. | 17 Civ. 08457 (JMF) (GWG)<br><br><br><br><u>**ORAL ARGUMENT REQUESTED**</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**<u>MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT</u>**

LATHAM & WATKINS LLP
Miles N. Ruthberg
Blake T. Denton
885 Third Avenue
New York, New York 10022
(212) 906-1200

Sean M. Berkowitz (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 876-7700

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

*Attorneys for Defendants*

October 29, 2018

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................3

I.     THE FAC LACKS ANY FALSE STATEMENTS OR OMISSIONS ...............................3

     A.     The Statements Regarding GE Capital's Run-Off Insurance Business Are
Not Actionable ......................................................................................................3

          1.     Plaintiffs Concede None of Defendants' Statements About LTC
Were Actually False.....................................................................................3

          2.     Plaintiffs Do Not Allege Any Omitted Facts About LTC That GE
Was Required By Law To Disclose.................................................................3

          3.     Plaintiffs Do Not Allege Any Materially Misleading Statements
About LTC Liabilities Or Reserves .............................................................5

     B.     The Statements Regarding GE Power's LTSAs Are Not Actionable......................7

          1.     Plaintiffs Do Not Allege Any Actual False Statements About
LTSAs............................................................................................................7

          2.     Plaintiffs Do Not Allege Any Omitted Facts About LTSAs That
GE Was Required By Law To Disclose .........................................................8

          3.     Plaintiffs Do Not Allege Any Materially Misleading Statements
About LTSAs Or Factoring ..........................................................................8

II.     THE FAC LACKS A STRONG INFERENCE OF SCIENTER .....................................11

III.     THE STATUTE OF REPOSE BARS MANY OF PLAINTIFFS' CLAIMS ..................15

CONCLUSION.......................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Cortina v. Anavex Life Scis. Corp.*,
   2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) ........................................................15

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)......................................................................................7

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*,
   2011 WL 1345097 (S.D.N.Y. Mar. 29, 2011), *aff'd*, 506 F. App'x 5
   (2d Cir. 2012)..........................................................................................................13

*Gavish v. Revlon, Inc.*,
   2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004).........................................................14

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)......................................................................14

*Goplen v. 51job, Inc.*,
   453 F. Supp. 2d 759 (S.D.N.Y. 2006)....................................................................7, 8

*Ho v. Duoyuan Glob. Water, Inc.*,
   887 F. Supp. 2d 547 (S.D.N.Y. 2012)......................................................................13

*In re Am. Express Co. Sec. Litig.*,
   2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008), *aff'd sub nom. Slayton v. Am.
   Express Co.*, 604 F.3d 758 (2d Cir. 2010) .........................................................11, 12

*In re Axis Capital Holdings Ltd. Sec. Litig.*,
   456 F. Supp. 2d 576 (S.D.N.Y. 2006)......................................................................10

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
   2018 WL 2382600 (S.D.N.Y. May 24, 2018) ...................................................6, 8, 9

*In re Genworth Fin. Inc. Sec. Litig.*,
   103 F. Supp. 3d 759 (E.D. Va. 2015) .......................................................................6

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
   2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) .........................................................15

*In re PXRE Grp., Ltd. Sec. Litig*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009).......................................................................12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   135 S. Ct. 1318 (2015)...............................................................................................7

*Pirnik v. Fiat Chrysler Autos., N.V.*,
  2016 WL 5818590 (S.D.N.Y. Oct. 5, 2016) ................................................................7

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank*
  *of Commerce,* 694 F. Supp. 2d 287 (S.D.N.Y. 2010) ............................................14

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
  551 U.S. 308 (2007) ................................................................................................13

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) .....................................................................................7

*Total Equity Capital, LLC v. Flurry, Inc.*,
  2016 WL 3093993 (S.D.N.Y. June 1, 2016) ...........................................................13

## REGULATIONS

17 C.F.R. § 229.303 .......................................................................................... *passim*

## OTHER AUTHORITIES

SEC Financial Reporting Manual, § 9240.7 ..................................................................4

SEC Release 33-9144 ...............................................................................................4, 5

## PRELIMINARY STATEMENT

Defendants' Motion to Dismiss (the "Motion")[1] demonstrated that Plaintiffs' claims fail on multiple grounds.  Plaintiffs' Opposition provides no arguments that save those claims.

**First**, Plaintiffs largely abandon their misstatement claims, instead shifting to omission theories, claiming that Item 303 gave rise to a duty of disclosure.  But Plaintiffs distort Item 303's requirements, arguing it mandates very specific disclosures about LTC and LTSAs that are unsupported by the text of the rule, the accounting guidance interpreting it, or any cases.[2]  Thus, with both actual falsity and pure omission claims unavailable, Plaintiffs resort to claiming that Defendants' true disclosures are rendered "misleading" by omission of additional information.  However, nowhere do Plaintiffs identify with particularity any misleading statements by Defendants or any additional "facts" that a reasonable investor would need to avoid being misled.

**Second**, Plaintiffs fail completely to establish a strong inference of scienter.  The FAC is devoid of any allegation of stock sales by the Individual Defendants or any other cognizable motive to commit fraud.  It instead rests on vague allegations by low-level FEs who had no direct interactions with any of the Individual Defendants and no insight into what information Defendants knew with regard to any of the alleged misstatements or omissions.  Plaintiffs also point to a hodgepodge of general industry trends, the magnitude of GE's losses, speculation as to what reports Defendants may have had "access" to, and other conclusory allegations that are not

---

[1]   Defendants filed the Motion on September 12, 2018, seeking dismissal of the Third Amended Complaint ("TAC").  ECF Nos. 172-74.  On October 17, 2018, Plaintiffs filed a Fourth Amended Complaint ("FAC"), which removed all allegations attributed to FE-6.  ECF No. 179.  The parties stipulated that the Motion applies equally to the FAC.  ECF No. 177.

[2]   Unless otherwise indicated, capitalized terms shall have the meanings ascribed to them in the Motion, citations and quotations are omitted, emphasis is added, and citations to "Ex. __" refer to exhibits attached to the Declaration of Blake T. Denton, submitted with the Motion, and the Supplemental Declaration of Blake T. Denton, submitted herewith.

particularized and are insufficient to plead scienter under well-established case law. The more cogent inference, confirmed by undisputed facts such as Defendants' reliance on positive margins from reserve tests and unqualified audit opinions each year, continues to be that there was no fraud, but instead business setbacks and forecasting misses that Defendants disclosed in real time.

**Third**, the statute of repose bars Plaintiffs' new claims based on alleged misstatements and omissions made prior to July 25, 2013. Plaintiffs' Opposition offers no viable response.

**Finally**, Plaintiffs display a basic misunderstanding of the foundations for their attack. The centerpiece of Plaintiffs' LTC claim—that GE's LTC exposure was allegedly under-reserved by $24 billion until GE "revealed" the alleged fraud by booking a "$24 billion" reserve increase, Opp. 2, 28—reflects embarrassing double-counting by Plaintiffs. As GE disclosed, it increased its GAAP book liability by $8.9 billion (pre-tax) and, as required by statutory accounting, will contribute $15 billion of capital as a back-up asset to cover that same liability, *see* Ex. 20, at 2— the reserves did not increase by a combination of the two. Plaintiffs also inexplicably claim that GE has no life insurance business, *e.g.*, Opp. 21, when its public disclosures make clear that it does, *see* ¶¶ 156, 493. Similarly, regarding LTSAs, Plaintiffs claim that ASC 606 "put an end" to GE's ability to recognize cumulative adjustments from contract modifications and other commercial actions. Opp. 32. But ASC 606 expressly allows adjustments to revenue "at the date of the contract modification," *i.e.,* via a cumulative adjustment. *See* Ex. 44, at ASC 606-10-25-13.

This is the Fourth Amended Complaint, and the Court already offered Plaintiffs leave to amend to address issues raised in the Motion, noting that would be the last opportunity. Plaintiffs did nothing other than *remove*, belatedly, allegations attributed to FE-6, further diminishing their meager group of confidential witnesses. The FAC should be dismissed with prejudice.

2

## ARGUMENT

## I.   THE FAC LACKS ANY FALSE STATEMENTS OR OMISSIONS

Plaintiffs allege no particularized facts that Defendants' statements about GE's LTC or LTSA portfolios were actually false or contained actionable omissions.  The Opposition provides no effective response to the arguments in the Motion as to either GE or the Individual Defendants, and for some Defendants provides no response at all (for example, Mr. Laxer is charged with only *one* alleged statement, which Plaintiffs still fail to establish was false or misleading, Mot. 11).

### A.   The Statements Regarding GE Capital's Run-Off Insurance Business Are Not Actionable

#### 1.   Plaintiffs Concede None of Defendants' Statements About LTC Were Actually False

In their Opposition, Plaintiffs abandon the claim that GE falsely represented that it had no LTC exposure.  *Compare* Opp. 11, *with* ¶¶ 14, 31, 108, 201, 466 (alleging false "proclamations" that GE "'exited' the insurance business and 'all of the insurance business was gone'").  Plaintiffs also do not dispute that GE's divestitures reduced GE's insurance exposure by $130 billion and generated $13 billion of cash.  *See* Mot. 5.  GE's statements that it had "reduced its risks by decreasing its insurance exposures" are thus indisputably true.  Opp. 10.

#### 2.   Plaintiffs Do Not Allege Any Omitted Facts About LTC That GE Was Required By Law To Disclose

Having abandoned their efforts to identify false statements about GE's LTC exposure, Plaintiffs pursue an omission theory, arguing that Item 303 affirmatively obligated Defendants to include LTC liabilities in a contractual obligations table.  Opp. 11-14.  That argument is baseless.

Plaintiffs argue that the "plain language" of Item 303(a)(5), which states that "the presentation must include all of the obligations of the registrant that fall within the specified categories," required Defendants to include "all" insurance liabilities (including LTC) in the table.

Opp. 12.  However, the MD&A table was not required to include GE Capital's LTC liabilities, and no reasonable investor could have believed that it did, as GE expressly stated it did not.  The "presentation" of liabilities in Item 303 includes both the "tabular presentation" and its accompanying "footnotes," Item 303(a)(5)(i).  The SEC's Manual (interpreting its own rule) gives management the discretion to exclude items from the tabular presentation, adding that "[i]f management's judgment results in items being excluded," then "accompanying footnotes should describe the nature of items excluded and why they are excluded."  SEC FRM, § 9240.7.  Accordingly, throughout the Class Period, GE's tabular presentation (the MD&A table) included a line item for "Insurance liabilities," with a footnote explaining that it "[i]ncluded contracts with reasonably determinable cash flows" and "excluded long-term care" and other long-duration contracts that, by contrast, were not reasonably determinable near term.[3]  ¶¶ 122, 326-33; Mot. 15-16.  In fact, the table always contained exclusions before, during, and after the Class Period.  *See, e.g.*, Ex. 45, at 69; Ex. 9, at 82; Ex. 4, at 81.  Yet the SEC never complained, KPMG always issued clean audit opinions, and no court has adopted Plaintiffs' interpretation of Item 303(a)(5).

Plaintiffs further assert that Item 303(a)(5) "required" GE to "tie" the MD&A table to its Note 11 disclosures pursuant to SEC Release 33-9144, Opp. 14, but the Release actually makes clear there is no such requirement, stating that "***if useful*** … a registrant ***might consider*** separating amounts in the table into those that are reflected on the balance sheet … particularly where such a distinction ***helps to tie*** the information to financial statement disclosure ...."[4]  SEC Release 33-

---

[3]    Any reasonable investor would understand that excluded items lacked the characteristic justifying ***inclusion*** of other items—*i.e.*, "reasonably determinable cash flows" in the table's years.

[4]    Plaintiffs also fail to state any violation of Item 303(a)(1) or GAAP.  Plaintiffs simply restate their unsupported allegations and add that Defendants "undoubtedly" had knowledge of a trend of growing LTC liabilities, or recite an accounting standard and conclude Defendants violated it.  Opp. 15.  That is insufficient under the law.  *See* Mot. 19-20.

9144, at n.17.  Plaintiffs' second-guessing of GE's permissible exercise of judgment about its disclosures does not transform this optional suggestion into a mandated practice.

### 3.    Plaintiffs Do Not Allege Any Materially Misleading Statements About LTC Liabilities Or Reserves

Failing to allege any actionable false statements or omissions arising from a duty to disclose by law, Plaintiffs are left only to argue that Defendants' truthful statements were "misleading" because they did not include additional information.  That theory fails.

*LTC Liabilities.*  Plaintiffs do not dispute that GE accurately and completely disclosed its LTC liabilities in the "Investment contracts, insurance liabilities and insurance annuity benefits" line item of its publicly filed financial statements.  Mot. 14.  Plaintiffs further concede that GE broke down those LTC liabilities in Note 11 of its financial statements, under the sub-line items "Life insurance benefits" and "Other."  Opp. 5.  Plaintiffs' own concessions rebut their entire theory that GE somehow "hid" the "extent" or "risks" of these liabilities from investors.[5]

Plaintiffs argue that grouping LTC liabilities in GE's financial statements under the headings "Life insurance benefits" and "Other" was "misleading," Opp. 21, but they do not point to a single statute, case, GAAP requirement, or rule mandating or forbidding that LTC liabilities be grouped under any particular sub-heading.  Plaintiffs' argument that the term "Life insurance

---

[5]       Plaintiffs' concession that an investor could determine GE's LTC liabilities from publicly available regulatory filings further undermines their argument that GE was required to say more about the size of its LTC reserves or the quality of its remaining LTC portfolio.  Opp. 13.  Likewise, their allegation that "Mr. Immelt claimed that GE exited the LTC business 'before the storm,'" misinterprets his remark to relate to adverse trends in the LTC industry, Opp. 1, but Plaintiffs omit that neither Mr. Immelt nor the accompanying December 2014 presentation even reference LTC, and instead discuss GE's exit from the insurance business generally, prior to the financial crisis.  The context of Mr. Immelt's remark, as well as the myriad of disclosures detailing GE's ongoing LTC liabilities, makes it clear that he was discussing the bulk of GE's insurance business that was in fact sold, and not the much smaller LTC insurance business that was retained as part of GE's discontinued operations.  *See* Ex. 46, at 7; Ex. 47, at 2, 4; *see also* Ex. 12, at 3.

benefits" is misleading because "***none*** of these reserves pertained to life insurance policies," *id.*, is simply false; the FAC admits that "Life insurance benefits" ***includes*** reserves for "life and disability insurance." *See* ¶¶ 156, 493 (describing "Life insurance benefits" as including significant reserves for "[s]tructured settlement annuities with life contingencies and other contracts," and citing disclosure that "other contracts" include "life and disability insurance products"). Analyst reports and court opinions cited in the FAC and the Opposition further confirm that LTC often is grouped within life insurance. *See* Mot. 14; *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 765 (E.D. Va. 2015) ("Genworth is divided into two business divisions: Global Mortgage and U.S. Life Insurance, with the latter encompassing Genworth's LTC insurance business unit.") (cited at Opp. 19, 20, 28, 34).

*LTC Reserves.* The allegedly misleading statements regarding the basis for the insurance reserves fare no better. Plaintiffs concede that GE's LTC reserves are opinion statements, Opp. 18, and do not dispute that insurance reserves, in particular, are "extremely conjectural." Mot. 17.

Fatal to their claims, neither Plaintiffs nor any FE contend that GE's LTC reserves were understated at any specific point.[6] Mot. 17-18. Moreover, Plaintiffs offer no facts supporting their allegations that LTC reserves were "untrue" at the time estimated and that Defendants did not honestly believe them. Opp. 19-20. Nor do they respond to controlling authority that allegations of general "trends" in the insurance industry cannot cure a failure to plead specific facts showing Defendants did not believe GE's own LTC reserves were adequate.[7] Mot. 17-19. And even if

---

[6]    Plaintiffs allege no "factual allegations from which a reader could infer Defendants intentionally or recklessly failed to [increase reserves] when they should have," as required by the very case Plaintiffs cite, *In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at *7 (S.D.N.Y. May 24, 2018). Opp. 20 n.8; *see* Mot. 17-19.

[7]    Plaintiffs argue that when GE excluded LTC liabilities from the MD&A table because they were not "reasonably determinable," it was an admission that GE's LTC reserves reported in Note 11 did not rest on a meaningful inquiry. Opp. 18-19. But that compares apples and oranges: LTC

true, alleged deficiencies in documentation and validation, rather than substantive calculation, do not come close to demonstrating GE's LTC reserves are misleading by omission—which the Supreme Court has explained is "no small task" for an investor—or otherwise actionable.[8] *Omnicare*, *Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1332 (2015); *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016).

## B.     The Statements Regarding GE Power's LTSAs Are Not Actionable

### 1.     Plaintiffs Do Not Allege Any Actual False Statements About LTSAs

Regarding LTSAs, Plaintiffs do not allege with particularity any facts showing that GE was required to adjust its LTSA financial metrics downward at any specific time or by any specific amount, much less connect documents or details containing such facts to any of the Individual Defendants or otherwise establish that they knew of any alleged overstated revenues.  *See Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 768 (S.D.N.Y. 2006) (dismissing complaint for failing "to identify any documents, meetings, or reports that show that the defendants knew or should have known that the [company's] revenues were misstated").  Instead, Plaintiffs once again shift to unsupported omission theories that are insufficient to sustain their claims.

---

reserves are estimates of future liabilities over many decades.  GE's decision to exclude LTC liabilities from a table presenting liabilities in a near-term breakdown in no way shows that its total reserve was not "reasonably determinable"—it just means near-term outflows in a particular year were not sufficiently precise to be useful.

[8]     Plaintiffs criticize Defendants for not citing *Omnicare*, even though post-*Omnicare*, this Court has properly analyzed reserve provisions under the standard Defendants cited, *Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011).  *See Pirnik v. Fiat Chrysler Autos., N.V.*, 2016 WL 5818590, at *8 (S.D.N.Y. Oct. 5, 2016) ("Accordingly, *Fait*'s standards apply here, and Plaintiffs must show that FCA's 'opinions' – *i.e.*, its determinations of its reserve provisions – were not only 'false' (*i.e.*, inaccurate) but also 'not honestly believed when they were made.'") (cited at Opp. 9-10, 11, 21 n.9, 23).  Defendants identified the correct standard for the Court and even cited a case applying *Omnicare*.  *See* Mot. 17 n.9.  Defendants plainly did not "waive" any omission arguments, and the arguments in the Motion apply equally regardless of whether Plaintiffs seek to spin their claims as misstatements or omissions.  *See id.* at 17-19.

## 2. Plaintiffs Do Not Allege Any Omitted Facts About LTSAs That GE Was Required By Law To Disclose

Plaintiffs return to Item 303 to concoct a non-existent disclosure obligation, arguing Defendants needed to disclose: (i) "the deteriorating power industry"; (ii) "customers' migration to sustainable energy sources"; and (iii) "GE's subsequent reliance on and use of a host of unsustainable manipulations and factoring of LTSAs."  Opp. 26-27.

As an initial matter, the FAC does not allege that omissions regarding a "deteriorating power industry" or "customers' migration to sustainable energy sources" constituted Item 303 violations.  *See* ¶ 410 (listing alleged Item 303 violations).  Plaintiffs cannot amend the FAC through their Opposition.[9]  *See Goplen*, 453 F. Supp. 2d at 764 n.4.

Plaintiffs also concede that Item 303 requires disclosure of specific business or accounting practices only if the "inability to sustain them" is "reasonably likely to have a material impact on GE's financial condition."  Opp. 27.  But Plaintiffs fail to allege that Defendants knew that any purportedly "unsustainable" business practices—which Plaintiffs admit were not illegal and were properly accounted for, *id*. at 23—would have any (much less a material) impact on GE's financials.  17 C.F.R. § 229.303(a)(1); *see* Mot. 21-26.

## 3. Plaintiffs Do Not Allege Any Materially Misleading Statements About LTSAs Or Factoring

*LTSA Financial Metrics*.  GE's reported LTSA-related financial metrics are opinion statements under Second Circuit law.  *See* Mot. 21.  Indeed, *Chicago Bridge*, cited by Plaintiffs, held that "where there is no objective standard for an accounting decision, that decision should be

---

[9]     These new claims nonetheless fail.  GE disclosed risks of market trends that "could affect [its] ability to fully recover [its] contract costs and estimated earnings."  Ex. 48, at 19; Ex. 49, at 114-15; Ex. 50, at 118; Ex. 51, at 123.  Plaintiffs fail to allege with particularity any specific time when any Defendant knew of any particular trends or uncertainties about GE's LTSA portfolio that were reasonably likely to impact GE's financials materially.  *See* Opp. 26-27; Mot. 21-26.

construed as a statement of opinion and be analyzed under *Omnicare*."  2018 WL 2382600, at *6.
Plaintiffs argue that LTSA financial metrics are not opinions because GE predicted future billings
through historic actuals.  Opp. 25.  But there is no objective standard under GAAP for how those
actuals must be incorporated into a model, and Plaintiffs do not dispute that the anticipated future
revenues of LTSAs are neither objective nor presently verifiable.  *See* Mot. 21.  GE's use of
projected billings and cost estimates is exactly the type of subjective accounting judgment that
*Chicago Bridge* said is a protected opinion.  2018 WL 2382600, at *6.

  In any event, Plaintiffs fail to state a claim regardless of whether the LTSA financial
metrics are treated as opinions.  Plaintiffs contend that GE should have disclosed that it allegedly
"disregard[ed]" customers' utilization data and engaged in "unsustainable" business practices to
trigger positive revenue adjustments.[10]  Opp. 22-23.  Both arguments fail.

  As to utilization data, Plaintiffs argue Defendants misled investors by representing that the
estimates underlying GE's reported LTSA revenues were "routinely review[ed]" and "regularly
revise[d]" "to adjust for changes in outlook" based on, among other things, historical utilization
rates and GE's contractual obligations.  *Id.* at 22.  But the FAC admits that is ***exactly*** how GE
accounted for the cumulative adjustments Plaintiffs attack, noting that historical utilization rates
and GE's contractual obligations to its customers were two inputs GE regularly monitored and
incorporated into LTSAs' estimated profitability.  ¶¶ 258, 272-84.

  Moreover, Plaintiffs have no coherent theory as to why the use of a three-year average was
not a reasonable method to estimate billings under contracts that often range 25 years in duration.
*See* Mot. 6, 22.  Plaintiffs rely on FE-5, a PS employee based in Italy who left GE in 2013, for the

---

[10]  Along with the removal of FE-6's allegations from the FAC, *see supra* n.1, Plaintiffs struck
all allegations concerning GE's alleged practice of extending or eliminating "sunset dates" from
LTSAs, *see* ¶¶ 280-82.  Those allegations by Plaintiffs have been abandoned.

contention that from 2010 to 2013, "usage of oil/gas turbines by customers was down 80 to 90%." ¶¶ 55, 254.  Even crediting this dubious statistic—which is entirely devoid of any particularized facts on the scope of affected contracts, or the basis for the low-level FE's knowledge of such information—it would mean the entire alleged utilization drop ***would have been captured*** in GE's model during the remaining four years of the Class Period, as utilization data was naturally incorporated through the three-year backward-looking average.  Plaintiffs' position instead appears to be that GE's use of utilization rate averages somehow failed to account for "real-time" data.  *See* Opp. 24.  Unsurprisingly, however, Plaintiffs cite no industry authority or rules that required GE's accounting models to operate any differently than they did, nor do they allege with particularity that GE's use of three-year averages did not accurately reflect customers' estimated turbine utilization ***over the life of these long-term contracts***.[11]

As for allegedly "unsustainable" practices, Plaintiffs tellingly do not explain why business strategies that Plaintiffs admit did increase margins (a perfectly legitimate and common business objective) were fraudulent.  Mot. 24-25.  Moreover, even if the FAC were somehow right that these practices were "unsustainable," Plaintiffs ignore *In re Axis Capital Holdings Ltd. Sec. Litig.*, which squarely held that "statements regarding ... accurately reported revenue and income [are not] rendered materially misleading by failing to disclose that such income was unsustainable." 456 F. Supp. 2d 576, 587 (S.D.N.Y. 2006); Mot. 23-24.

*Factoring*.  Plaintiffs do not dispute that factoring is a "legitimate business practice."  Opp.

---

[11]    Plaintiffs' argument that "internal LTSA modeling tools reflected need for negative adjustment based on declining run rates," Opp. 22 n.11, is based solely on FE-10, who "***believed*** there were instances where the models concluded a negative cumulative catch-up adjustment was needed in light of changing conditions, but those results were either ignored or altered," ¶ 268.  A "belief" by a single employee that there may have been unspecified instances at unidentified times involving unidentified individuals purportedly "ignor[ing] or alter[ing]" data is insufficient to plead a claim with the requisite particularity.  *See* Mot. 15, 26.

25.   Rather, they claim Defendants misled investors by "representing [that factoring] was used **solely** to manage credit exposure and [that] GE was not pulling future profit forward."  *Id.* at 24.  But GE never stated that was factoring's "sole" purpose, which is Plaintiffs' mischaracterization.  Moreover, the statement that GE was "not pulling future profit forward" did not concern factoring, ¶ 385, but rather cumulative catch-up adjustments, as the FAC itself alleges, ¶ 386—which makes sense because factoring generates cash, not "profit."  Plaintiffs then cite, but tellingly do not quote, three other FAC paragraphs as "misleading statements regarding GE's use of factoring":  382, 384, and 388.  But paragraphs 384 and 388 do not relate to factoring, and paragraph 382 cites an accurate disclosure:  "For the total year, factoring with GE Capital was a $1.6 billion change for the year.  It was $1.7 billion last year …."  ¶¶ 381-82.  This disclosure of the factored dollar amount disproves the claim that the same statement misled investors about the extent of factoring.[12]

## II.   THE FAC LACKS A STRONG INFERENCE OF SCIENTER

The failure to plead scienter is, if anything, even more glaring.  The FAC does not and cannot plead any motive for Defendants' alleged "multi-year fraud."  *See* Opp. 28-35.  Plaintiffs allege no stock sales by the Individual Defendants or any benefit from their supposed fraud.  Also lacking are any allegations of direct interactions between the low-level FEs and the Individual Defendants or any first-hand knowledge that the Individual Defendants possessed specific documents or information.  *See* Mot. 30; *see also In re Am. Express Co. Sec. Litig.*, 2008 WL 4501928, at *8 (S.D.N.Y. Sept. 26, 2008) (no scienter without facts showing confidential witnesses

---

[12]      Additionally, Mr. Bornstein's view that "there's very good underlying performance here," ¶ 381, is inactionable puffery.  Plaintiffs have no substantive response, instead arguing that GE waived arguments of forward-looking statements, puffery, and/or opinions with regard to all 159 statements that Plaintiffs claim were false or misleading.  *See* Opp. 27.  That is baseless.  Defendants discussed opinion statements at length in the Motion, clearly noted that many challenged statements constitute forward-looking statements and/or puffery, and specifically identified each such statement in an appendix.  *See* Mot. 17-19, 21-23, 26, & Ex. 2.

"had any contact with the Individual Defendants or would have knowledge of what they knew or should have known"), *aff'd sub nom. Slayton v. Am. Express Co.*, 604 F.3d 758 (2d Cir. 2010).

Moreover, the Opposition does not address the fundamental uncontested facts rebutting an inference of scienter, including:  GE's annual LTC reserve deficiency testing, which "resulted in a positive margin" every year and prevented GE, under GAAP, from unlocking its reserves, *see* ¶ 215; Mot. 28; Defendants' updates to investors throughout 2017 after elevated claims experience indicated the potential need to reconstruct claim cost assumptions, *see* Mot. 8-9, 29; GE's timely disclosure of cumulative adjustments and their impact, *see* ¶ 286; Mot. 29; and KPMG's issuance of unqualified audit opinions throughout the Class Period notwithstanding Plaintiffs' allegation that KPMG knew of concerns raised by an FE, *see* ¶¶ 195, 415; Mot. 29.

Plaintiffs therefore are left only with industry trends, the size of the LTC and LTSA portfolios and resulting losses, general descriptions of materials that FEs "believe" or "understood" may have been provided or accessible to the Individual Defendants, and rank speculation that Defendants must have known of fraud.  Opp. 28-35.  Such thin, non-particularized allegations fail to plead scienter both as to the Individual Defendants and GE.  *See* Mot. 33.

*LTC Allegations*.  To plead scienter based on "access to information … Second Circuit cases uniformly rely on allegations that [1] ***specific*** contradictory information was available to the defendants [2] ***at the same time*** they made their misleading statements."  *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009) (emphasis in original).

Plaintiffs only cite unspecified reports that the FEs speculate may have been accessible to the Individual Defendants.  Opp. 32; ¶¶ 182-95 (alleging, for example, that FE-2 "believes" that unspecified reports were provided to management and the Board and "all audit issues were entered into [a computer program called] Audit Works," but not alleging that any Individual Defendants

ever accessed that program).  The Individual Defendants were executives at the highest levels of a huge publicly traded company employing over 300,000 people through hundreds of subsidiaries across numerous continents.  Mot. 4.  The inference that they "must have known" of a third-tier subsidiary's LTC reserve assumptions, models, and related validation processes, Opp. 32, is not "cogent" or "compelling."  *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 314 (2007).

Plaintiffs cannot rectify these flaws by alleging that Defendants "recklessly disregarded" the "deterioration of the LTC industry."  Opp. 30.  Mere industry trends do not establish scienter. *See Fried v. Lehman Bros. Real Estate Assocs. III, L.P.*, 2011 WL 1345097, at *8 (S.D.N.Y. Mar. 29, 2011), *aff'd*, 506 F. App'x 5 (2d Cir. 2012).  Similarly insufficient are allegations as to the size of the LTC portfolio or the resulting write-down.  Opp. 28-30; *see, e.g.*, *Total Equity Capital, LLC v. Flurry, Inc.*, 2016 WL 3093993, at *5 (S.D.N.Y. June 1, 2016).  Furthermore, the case cited by Plaintiffs notes that departures of executives during turbulent times, without facts linking them to alleged fraud (which Plaintiffs still have not provided, *see* Opp. 29), are insufficient.  *See Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012).  Finally, Ms. Hauser and Mr. Laxer are not even mentioned in the LTC scienter section of Plaintiffs' Opposition, and the allegations against them should be dismissed.

*LTSA Allegations*.  Plaintiffs resort to the same insufficient tactics with regard to scienter as to their LTSA claims.  Plaintiffs plead no particularized facts that GE's senior-most executives were well-versed in turbine utilization trends, contractual renegotiation strategies, or any of the other factors Plaintiffs claim inflated GE Power's revenues.  Speculation, for example, that Ms. Hauser received "executive snapshots" and "technical memos" as part of "weekly evaluation[s] of GE's contracts," Opp. 32; *see also* ¶¶ 319-20, does not describe those documents with particularity, let alone specify what information in those documents was inconsistent with Ms. Hauser's public

statements.  *See, e.g.*, *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 299-300 (S.D.N.Y. 2010) (rejecting "broad reference to raw data" and "generalized forecasting and speculation").  Neither does the vague assertion by a low-level FE based in PS's Milan office about what was "internally acknowledged," *see* Opp. 33 (citing ¶ 262), nor his speculation as to who ultimately may have had access to reports he authored, *see* Opp. 33 (citing ¶ 269), establish scienter as to any Defendant.  *See, e.g.*, *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011) (plaintiffs must "*specifically identify* the [contradictory] reports or statements," and "allegations that information was the sort of [data] that would have been reviewed by the Individual Defendants are too speculative" to establish scienter).

Plaintiffs' speculation that Defendants engaged in factoring to inflate reported earnings also does not evidence scienter.  *See* Opp. 34 (citing ¶¶ 279, 290); Mot. 25-26; *Gavish v. Revlon, Inc.*, 2004 WL 2210269, at *15 (S.D.N.Y. Sept. 30, 2004) (rejecting that the "common practice" of "offering incentives to meet sales or earnings goals" established scienter "[a]bsent more particularized allegations of knowingly fraudulent conduct").

Likewise, the fact that some Individual Defendants reported GE's top-level financial metrics (*e.g.*, "Contract Assets," "CFOA," and "Cumulative catch-up adjustments," *see* Opp. 33) in SEC filings and on earnings calls, does not indicate or provide any basis for concluding that they knew those metrics were false.  Mot. 29.  Nor does awareness of upcoming accounting changes under ASC 606, Opp. 32, somehow evidence an intent to misstate revenues under the earlier accounting standard, ASC 605.[13]  *See* Mot. 23.  Indeed, such a theory makes no sense given that Plaintiffs admit that Defendants knew GE's LTSA revenues would be recast upon the 2018

---

[13]     Plaintiffs provide no support whatsoever for their contention that GE "admitted" it "did not have adequate internal controls over LTSAs," citing only their conclusory speculation both in the FAC and their Opposition.  *See* Opp. 35 (citing ¶ 324).

implementation of ASC 606.  *See* Opp. 32.

Last, Plaintiffs resort to the dubious "core operations" doctrine, *see id.* at 34, which is at best a "supplementary but not independently sufficient" means to plead scienter.  *See, e.g.*, *Cortina v. Avanex Life Scis. Corp.*, 2016 WL 7480415, at *8 (S.D.N.Y. Dec. 29, 2016) ("[T]here is considerable doubt whether the core operations doctrine survived enactment of the PSLRA, and many courts have held that it is no longer valid.").  In any event, it does not apply here, as neither GE Power (a GE subsidiary), nor PS (one of 10 divisions of GE Power), *see* Mot. 6, were ever "core operations."  *See, e.g.*, *In re Ferrellgas Partners, L.P., Sec. Litig.,* 2018 WL 2081859, at *19 (S.D.N.Y. Mar. 30, 2018) (noting the "core operations doctrine generally require[s] that the operation in question constitute nearly all of a company's business" and finding segment comprising 30% of business was not a core operation).

## III.    THE STATUTE OF REPOSE BARS MANY OF PLAINTIFFS' CLAIMS

The statute of repose bars claims based on misstatements or omissions made before July 25, 2013 that were asserted for the first time on July 25, 2018.  *See* Mot. 34-35.  Plaintiffs' position that a motion to intervene preserves all future claims (even those not previously alleged) against all possible defendants (even those not previously named) is wrong.  *See* Opp. 35; Mot. 34. Plaintiffs assert completely new allegations based on GE's 2012 10-K, Q1 2013 10-Q, and sources never previously referenced, as well as, for the *first time*, pre-July 25, 2013 claims against Mr. Sherin and Ms. Hauser.[14]  Mot. 34-35.  None of these newly asserted claims is timely.

## CONCLUSION

The Court should grant Defendants' Motion and dismiss the FAC with prejudice.

---

[14]     Plaintiffs assert that "some" prior complaints "*timely* named Sherin."  Opp. 35.  That is false.  Prior to the TAC, only the March 20, 2018 and April 10, 2018 complaints named Mr. Sherin as a Defendant, but neither raised claims based on pre-July 25, 2013 statements.

Dated: New York, New York
       October 29, 2018

Respectfully submitted,

LATHAM & WATKINS LLP

By:   <u>/s/ Miles N. Ruthberg</u>
     Miles N. Ruthberg
     Blake T. Denton
     885 Third Avenue
     New York, New York 10022
     (212) 906-1200
     miles.ruthberg@lw.com
     blake.denton@lw.com

     Sean M. Berkowitz (*pro hac vice*)
     330 North Wabash Avenue, Suite 2800
     Chicago, Illinois 60611
     (312) 876-7700
     sean.berkowitz@lw.com

     William J. Trach (*pro hac vice*)
     200 Clarendon Street
     Boston, Massachusetts 02116
     (617) 948-6000
     william.trach@lw.com

     *Attorneys for Defendants General Electric*
     *Company, Jeffrey R. Immelt, Jeffrey S.*
     *Bornstein, Jamie Miller, Keith S. Sherin,*
     *Jan R. Hauser, and Richard A. Laxer*

16