

December 11, 2020

**Via ECF**

The Hon. Jesse M. Furman
United States District Court for the
Southern District of New York
40 Centre Street, Room 2202
New York, N.Y. 10007

Re:     *Sjunde AP-Fonden et al. v. Gen. Elec. Co., et al.*, **Case No. 17-cv-8457 (JMF)**

Dear Judge Furman:

   We represent Lead Plaintiff Sjunde AP-Fonden, Additional Plaintiff The Cleveland
Bakers and Teamsters Pension Fund and the proposed Class (collectively, "Plaintiffs") in the
above-referenced action.   We write pursuant to Your Honor's Rule 1.A and in response to
Defendants' letter dated December 9, 2020 (the "Notice") (ECF No. 201), which provides notice
to the Court of a freshly-inked settlement between the SEC and GE (the "SEC Settlement") and
"Order Instituting Cease-and-Desist Proceedings" issued by the SEC (the "SEC Order") (ECF
No. 201-1).   As Defendants acknowledge, these developments relate directly to Defendants'
pending motion to dismiss in this matter and Plaintiffs' opposition thereto.  *See* ECF Nos. 196,
198, respectively.

   The SEC Settlement is the latest development in a multi-year investigation by the SEC
into the same misconduct that lies at the heart Plaintiffs' Complaint (ECF No. 191):  Defendants'
materially false and misleading statements and omissions concerning (1) the financial
performance of GE's power operations ("GE Power"); and (2) its long-term care insurance
business ("LTC").  *See also* Complaint, ¶¶ 26, 33, 301, 501–04 (alleging facts about the SEC
investigation).   Following the SEC's protracted investigation and a Wells Notice issued in
October 2020, the SEC found that, consistent with the Complaint's allegations, "GE's repeated
disclosure failures across multiple businesses materially misled investors about how it was
generating reported earnings and cash growth as well as latent risks in its insurance business."[1]

   The SEC Order contains detailed factual findings supporting the SEC's conclusion and
setting forth the basis for the securities law violations it lodged against GE.  These findings
confirm Plaintiffs' allegations that GE misled investors concerning GE Power and the GE LTC
business.  Public disclosure documents filed with the SEC, like the SEC Order, are the proper
subject of judicial notice.  *See, e.g.*, *In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166,

---

[1] Press Release, U.S. Securities and Exchange Commission, General Electric Agrees to Pay $200 Million Penalty for
Disclosure Violations (Dec. 9, 2020), https://www.sec.gov/news/press-release/2020-312.

Hon. Jesse M. Furman
December 11, 2020
Page 2

at *13 (S.D.N.Y. June 10, 2010); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 301-02, 306–07 (S.D.N.Y. 2009); *In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 986 F. Supp. 2d 428, 438 n.3 (S.D.N.Y. 2013) (taking notice of SEC order).

Rather than withdraw their pending motion to dismiss and acknowledge that the SEC Order confirms the viability of Plaintiffs' claims, Defendants' Notice attempts to downplay the SEC's findings and disavow their significance to the Court's assessment of the plausibility of Plaintiffs' claims. Their efforts, however, cannot withstand scrutiny.

As an initial matter, Defendants' Notice is conspicuously silent on the issue of falsity. Defendants have repeatedly argued to this Court that they did not make a single false statement to investors about GE Power or GE's LTC business. *See generally* ECF No. 196. Yet, Defendants fail to mention or explain how those denials possibly comport with the findings made by the SEC concerning the inaccuracy and misleading nature of GE's public disclosures during the Class Period. Nor could they credibly do so, as the SEC's findings confirm that the Complaint plausibly alleges actionable false and misleading statements regarding GE Power and the LTC business.

With respect to Plaintiffs' GE Power-based claims, the SEC Order corroborates the Complaint's allegation that Defendants made material misrepresentations about GE Power's LTSA practices, use of factoring, the negative trends within the segment, and the source of the unit's profits. *See* Complaint, § VI.F. For example, the SEC Order concludes that:

- "GE's disclosures regarding its GE Power business omitted material information regarding its reductions in cost estimates and reliance on its new deferred monetization practice, causing GE's disclosures to be incomplete and misleading." SEC Order, ¶ 15.

- "GE commentary on earnings calls, at investor conferences, and in its quarterly and annual reports during this period was materially misleading" because "GE described changes in profit in its Power business as arising from items other than reductions in cost estimates in its service agreement portfolio despite recognition internally that these changes were critical to GE's reported results." *Id.*, ¶ 16

- "GE's disclosure of its Industrial Cash Flow non-GAAP measure in earnings releases and on earnings calls, at investor conferences, and in its quarterly and annual reports was misleading in light of its failure to disclose the extent to which the reported measure relied on changes in practice expanding intercompany factoring in its GE Power business and pulling forward cash from future periods." *Id.*, ¶ 17. These misleading disclosures "ma[de] it appear as if GE Power was converting earnings to cash in the present period, when in fact GE power was pulling forward cash from future periods to offset current period growth in unbilled revenue and earnings." *Id.*, ¶ 18.

As for Plaintiffs' LTC-based claims, the SEC concluded that GE violated Item 303(a)(3)(ii) of Regulation S-K by "fail[ing] to disclose known trends and uncertainties regarding increasing costs and reasonably likely losses in its insurance business." SEC Order, ¶¶ 38–39; *see also id.*, ¶ 36 (finding GE's disclosures "omitted material known trends of

Hon. Jesse M. Furman
December 11, 2020
Page 3

increasing costs in its historical claims experience and uncertainties inherent in increasingly optimistic assumptions of lower future claims costs, that material insurance losses were reasonably likely in the future"). These findings mirror *exactly* the allegations (and Item 303 claims) in the Complaint. *See* Complaint, ¶¶ 217–238.

Beyond falsity, the SEC Order also includes numerous findings that fully substantiate and even bolster the Complaint's existing allegations of scienter. *See, e.g.*, Complaint, §§ V.C and VI.E. With respect to GE Power, for example, the SEC found that:

> Executives at GE Power *informed GE management* that a significant portion of GE Power's segment profits was the result of reductions in cost estimates and that these changes were critical to meeting financial targets. Moreover, *executives at GE understood that these reductions in cost estimates necessarily increased GE's deferred balance of unbilled revenue* . . . . Nonetheless, *GE executives directed GE Power Services executives* to both increase earnings and keep the deferred balance from growing further.

SEC Order, ¶ 8 (emphasis added). Relatedly, the SEC found that "Executives at GE Power Services understood that GE's new deferred monetization practice pulled forward future years' cash collections into the present year, decreasing cash flows in later periods," but "GE's senior executives, and those at GE Power and GE Power Services not only agreed to engage in the practice, but expanded it in part to meet internal cash flow targets set by GE's leadership" and, ultimately, to *increase GE's stock price*. *Id*., ¶ 12 (emphasis added); *see also id*., ¶¶ 9–14.[2] Nevertheless, the SEC found, "GE did not disclose its deferred monetization practice in earnings calls and investor conferences *even in response to analyst questions about cash flow*." *Id*., ¶ 17 (emphasis added).

The SEC Order similarly corroborates the Complaint's allegation that GE acted with scienter in misstating and omitting material facts concerning its LTC portfolio. For instance, the SEC determined that executives within GE Capital and its LTC unit knew that the LTC's "continuing and expected losses posed a growing risk to GE's financial statements," but GE did not disclose this risk to investors and instead sought ways to "minimize losses . . . particularly 'shock losses'—large, unforecasted losses in any period." SEC Order, ¶ 23. The SEC also found that GE altered its reserve testing assumptions, making them *less conservative*, to avoid increasing its LTC reserves.[3] SEC Order, ¶ 23 ("Executives at NALH and at GE Capital acknowledged internally during 2015 and 2016 that NALH's continuing and expected losses posed a growing risk to GE's financial statements. GE had not publicly disclosed this risk to

---

[2] GE would have missed financial forecasts provided to investors for CFOA without the undisclosed reductions in cost estimates. *Id.*, ¶ 6; *see also id.*, ¶ 9 ("In one presentation to GE senior management in August of 2016, a GE Power executive posited that GE's stock price could reach $40/share if operating cash flow performance improved.").

[3] These facts corroborate the analyses of Plaintiffs' actuarial expert, Axene, who concluded that GE's premium deficiency tests incorporated "best estimate" assumptions that were "outdated and inconsistent with both industry practice and GE's own highly negative claims experience, which rendered meaningless the results of its annual premium deficiency tests." Complaint, ¶ 189; *see also id.*, ¶¶ 192, 195, 205, 207, 209–12.

Hon. Jesse M. Furman
December 11, 2020
Page 4

investors.").   Moreover, the SEC determined that "***GE understood that there were known uncertainties inherent in their estimates that were reasonably likely to come to fruition and had the potential for material insurance losses in the future***," but failed to disclose those risks to investors.  *Id.*, ¶ 39; *see also* ECF No. 198 at 11, n.9 (explaining corporate scienter is alleged by imputing the knowledge of a company's senior executives to the company itself).

Ignoring that the SEC's findings substantiate and even strengthen the already powerful inference of scienter, Defendants brazenly suggest that GE's negotiated agreement to settle only negligence-based disclosure claims with the SEC is somehow exculpatory on the element of scienter.  *See* Notice at 1-2.  This argument is not novel.  It has been considered, and ***rejected***, by numerous courts.  *See, e.g.*, *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 707 n.5 (9th Cir. 2012) ("We draw ***no inference*** from the SEC's decision not to plead scienter or charge defendants with fraud.") (emphasis added); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975 n.15 (N.D. Cal. 2009) ("Although the SEC ultimately decided not to prosecute Defendants for fraud, the Court finds that the SEC's discretionary determination with respect to prosecution is not determinative of whether Defendants, in fact, committed securities fraud.").

For the reasons set forth above, Plaintiffs respectfully request that the Court take judicial notice of the SEC Settlement and Order.  The SEC's findings strongly confirm Plaintiffs' allegations in the Complaint and support their arguments in opposition to Defendants' motion to dismiss, which should be denied in its entirety.  At a minimum, to the extent the Court determines Plaintiffs' Complaint is insufficient with respect to falsity or scienter, there is no credible argument that permitting Plaintiffs to amend their complaint would be futile here under Fed. R. Civ. P. 15 (a)(2), particularly given the SEC's factual findings.

Respectfully submitted,

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

*s/ Sharan Nirmul*
Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Joshua A. Materese
Michelle M. Newcomer
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
jmaterese@ktmc.com
mnewcomer@ktmc.com

Hon. Jesse M. Furman
December 11, 2020
Page 5

*Counsel for Lead Plaintiff Sjunde AP-Fonden*
*and Lead Counsel for the Class*

**GRANT & EISENHOFER P.A.**
Jay W. Eisenhofer
Daniel L. Berger
Caitlin M. Moyna
Jonathan D. Park
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (610) 722-8501
jeisenhofer@gelaw.com
dberger@gelaw.com
cmoyna@gelaw.com
jpark@gelaw.com

*Counsel for Additional Plaintiff Cleveland Bakers*
*and Teamsters Pension Fund and Local Counsel for*
*the Class*

Copies by ECF to All Parties of Record