LATHAM & WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

December 14, 2020

**VIA ECF**

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

Re:   *Sjunde AP-Fonden et al. v. Gen. Elec. Co. et al.*, Case No. 17-cv-8457 (JMF)

Dear Judge Furman:

We write in response to Plaintiffs' December 11, 2020 letter, Dkt. No. 202 ("Pls.' Ltr."),[1] which requests that the Court (i) take judicial notice of the contents of the December 9, 2020 SEC settlement order (the "SEC Order"), which Defendants attached to their letter to the Court of that same date, Dkt. No. 201; or (ii) permit Plaintiffs to amend their complaint for a sixth time to the extent that the Court finds that the operative Fifth Amended Complaint, Dkt. No. 191 ("5AC"), is "insufficient with respect to falsity or scienter." Pls.' Ltr. 4. Defendants respectfully request that the Court deny each of Plaintiffs' requests.

*First*, Defendants oppose Plaintiffs' request for judicial notice to the extent Plaintiffs ask the Court to take judicial notice of the SEC Order for the truth of the allegations contained therein. Pls.' Ltr. 1 (arguing that the SEC Order purportedly "confirm[s] Plaintiffs' allegations that GE misled investors concerning GE Power and the GE LTC business"). The Court may of course take judicial notice of the fact that there was a settlement with the SEC and which charges were brought and settled. But there is no legal basis to grant Plaintiffs' request for judicial notice of the truth of the SEC Order's findings, which are only allegations that, as a condition to settlement, GE is bound to neither admit nor deny. *See In re Merrill Lynch Tyco Research Sec. Litig.*, No. 03 Civ. 4080, 2004 WL 305809, at *4 n.3 (S.D.N.Y. Feb. 18, 2004) (public documents "may be judicially noticed for the fact of their publication, they may not be judicially noticed for the truth of the matter asserted") (citing Fed. R. Evid. 201); *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208, 2006 WL 1008138, at *5 (S.D.N.Y. Apr. 18, 2006) ("[S]tatements made by the SEC . . . in [] settlement documents are not law; they are rather untested assertions made by litigants."); *Staehr v. Hartford Fin. Servs. Grp. Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("[I]t is

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning ascribed to them in Defendants' Memorandum of Law In Support of Their Motion To Dismiss the 5AC, Dkt. No. 196 ("Mot."), citations and quotations are omitted, and emphasis is added.

proper to take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents . . . .") (emphasis in original).

*Second*, if this Court takes judicial notice of the fact of the SEC settlement (as opposed to the truth of the allegations), the non-scienter, non-Section 10(b) settlement weighs in favor of dismissal of the 5AC, contrary to Plaintiffs' argument. *See* Pls.' Ltr. 4. Plaintiffs cite to two distinguishable, out-of-circuit authorities, and ignore multiple decisions in the Southern District of New York giving weight to non-scienter settlements. *See, e.g.*, *Fries v. Northern Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 722 (S.D.N.Y. 2018) (holding that plaintiff failed adequately to plead that defendant acted recklessly where, among other things, "the SEC settlement concerning [defendant's] failure to disclose . . . only implicated [defendant] in negligent, not fraudulent, conduct"); *Shemian v. Research In Motion Ltd.*, No. 11 Civ. 4068, 2013 WL 1285779, at *4 (S.D.N.Y. Mar. 29, 2013) (rejecting plaintiff's reliance on SEC settlement as "evidence of Defendants' 'propensity to engage in improper business conduct'" because "the settlement involved a nonscienter based crime and did not require either Individual Defendant to admit guilt"), *aff'd*, 570 F. App'x 32 (2d Cir. 2014). Indeed, it makes no sense for Plaintiffs to allege that the existence of the SEC's investigation evidences 10(b) fraud, 5AC ¶¶ 26, 33, 301, 501-04, and then argue that the Court should accord no weight to the fact that, after a multi-year investigation, the SEC declined to bring 10(b) claims or any other claims that require more than mere negligence.

*Third*, Defendants oppose Plaintiffs' belated request to amend for a sixth time. The request is both futile and too late. *See Marcu v. Cheetah Mobile, Inc.*, No. 18 Civ. 11184, 2020 WL 4016645, at *9 (S.D.N.Y. July 16, 2020) (Furman, J.); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."). Regarding futility, all Plaintiffs offer in support of a hypothetical amended complaint are the allegations in the SEC Order themselves. *See* Pls.' Ltr. But under Second Circuit law, "a complaint that *merely* recites others' allegations," without more, is insufficient. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 180 (2d Cir. 2015) (emphasis in original). Plaintiffs claim that the SEC Order's allegations "corroborate[]" and "bolster" the allegations in the 5AC, Pls.' Ltr. 2-4, but that is simply untrue. For example, the gravamen of Plaintiffs' LTC claims is that beginning in the early 2000s, Defendants engaged in a concerted scheme to "intentionally conceal[] the Company's mammoth LTC liabilities and risks from investors' view," 5AC ¶¶ 8-10, 17, which is unsupported by the SEC Order. Likewise, Plaintiffs' LTSA-based claims are premised on the notion that Defendants were actually aware of, but failed to disclose, three specific trends in GE's LTSA business (unsustainable LTSA modifications, decreasing customer utilization, and increasing factoring of LTSA receivables), 5AC ¶¶ 409-25, but the SEC Order does not address the bulk of Plaintiffs' claims, contradicts other claims, and fails to save the remainder. *See* discussion *infra* pp. 3-4.

In any event, even if the Court could take judicial notice of the truth of the SEC's allegations (which it cannot), nothing in the SEC Order supports any inference, let alone a strong inference, of scienter. With respect to LTC, the SEC Order directly contradicts Plaintiffs' deficient scienter allegations. After this Court held that Plaintiffs failed adequately to allege scienter for

**LATHAM&WATKINS**LLP

their LTC claims, Plaintiffs' sole new scienter allegation in the 5AC related to an unidentified PowerPoint presentation purportedly containing LTC claims experience data that an FE speculated was "received" by Mr. Immelt and unnamed executives from "even before" the start of the Class Period in 2013, 5AC ¶¶ 131-35—which Plaintiffs repeatedly emphasized in their opposition to Defendants' motion to dismiss. *See* Dkt. No. 198, at 1, 5, 10-12, 14, 20, 22. But the SEC Order alleges that GE executives were not aware until **Q2 2017** of any "optimistic projections of future liabilities despite higher than expected claims," SEC Order ¶ 41, which contravenes Plaintiffs' allegations.² On LTSA, the SEC Order does not allege that any individual acted with scienter, nor does it identify any individual by name or title (much less an individual whose scienter could be imputed to the company). Like the 5AC, it says nothing about what any Defendant actually knew or saw, and thus cannot establish scienter. *See* Mot. 27.

As to falsity, the SEC Order makes no allegation that any of GE's prior period financial statements were misstated, nor does it require corrections to or restatements of GE's previously reported financial statements. Plaintiffs make no effort to claim that the SEC Order supports in any way their claims that GE's presentation of its LTC liabilities in its financial statements was misleading, 5AC ¶¶ 251-57, or that GE fraudulently understated those liabilities, *e.g.*, *id.* ¶¶ 12, 135. With respect to their Item 303 claims related to LTC, Plaintiffs erroneously assert that the SEC's findings "mirror exactly" the Item 303 allegations in the 5AC, at ¶¶ 217-38. Pls.' Ltr. 3. But the manifold "negative trends" and "uncertainties" that the 5AC alleges were omitted—such as "[t]he uncertainties related to GE's inability, as a reinsurer, to offset its negative actual claims experience by directly seeking regulatory approval for premium increases," 5AC ¶ 228—do not accord with the allegations in the SEC Order. *See* SEC Order ¶ 36; *see also id.* ¶ 39. Moreover, Plaintiffs allege Item 303 LTC violations for 2012 through 2016, *see, e.g.*, 5AC ¶¶ 232-33, whereas the SEC Order contains only limited allegations relating to the period between Q3 2015 and Q1 2017, SEC Order ¶ 39. Nor does the SEC Order change Plaintiffs' concession that they cannot plead that Defendants did not actually believe GE's GAAP LTC reserves were inadequate or that GE's disclosures did not rest upon a meaningful inquiry, as required by *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015). Dkt. No. 198, at 1, 8. That admission dooms Plaintiffs' Item 303 claims. *See* Dkt. No. 200, at 5-11.³

---

² While Plaintiffs point to the SEC's allegations relating to "[e]xecutives at NALH and at GE Capital," i.e., subsidiaries of GE, their knowledge cannot be imputed to GE. *See Friedman v. Endo Int'l PLC*, No. 16 Civ. 3912, 2018 WL 446189, at *4 (S.D.N.Y. Jan. 16, 2018) (Furman, J.) ("[I]n the absence of allegations giving rise to a strong inference of scienter on the part of the Individual Defendants, Plaintiffs cannot establish scienter on the part of [the company] itself."); *Youngers v. Virtus Inv. Partners Inc.*, 2017 WL 5991800, at *5 (S.D.N.Y. Dec. 4, 2017).

³ Plaintiffs also claim that the SEC Order "corroborate[s] the analyses" of Plaintiffs' actuarial "expert," David Axene. Pls.' Ltr. 3 n.3. But the SEC made no finding that GE's assumptions resulted in reserve estimates that were materially misstated or that GE's financials needed to be restated. Rather, the SEC focused on the fact that uncertainties related to certain assumptions were not specifically disclosed, which does not lend support to Mr. Axene's flawed analysis. *See* Dkt. No. 196, at 14-19; Dkt. No. 200, at 9-10.

**LATHAM&WATKINS**LLP

With respect to GE's LTSA accounting, the 5AC continues to fail on falsity in addition to scienter. The 5AC alleges that GE engaged in uneconomical "de-scoping" to obtain short-term cumulative catch-up gains and that GE allegedly faced a catastrophic drop of 80-90% in its customers' utilization of its turbines. 5AC ¶¶ 347, 360-61, 410, 417. Those claims are conspicuously absent from the SEC Order. As to factoring, the SEC Order cannot save the 5AC's sweeping and often contradictory allegations from FEs who either did not work in the Power Division or served as a paid consultant for prior counsel, and Plaintiffs' factoring-based Item 303 claims still fail for the reasons described in the Motion. Mot. 33-34. Moreover, the Order alleges a time period (May 2016 through October 2017) at odds with the time frame certain FEs propose for the purported "trend" (beginning in 2014 or 2015). Mot. 35; SEC Order ¶ 15. Like the 5AC, it thus provides no basis for revisiting the Court's prior ruling dismissing the factoring-based claims as to Messrs. Immelt, Sherin, and Laxer and Mmes. Miller and Hauser, as well as any alleged violations before 2015.[4] Mot. 35.

*Finally*, Plaintiffs' halfhearted request to amend comes far too late. This action was initiated more than three years ago, and the 5AC is the sixth iteration of Plaintiffs' pleadings. Prior to allowing Plaintiffs to amend their Third Amended Complaint, the Court had previously warned that Plaintiffs would "not be given any further opportunity to amend the complaint to address issues raised by [Defendants'] motion to dismiss." Order (Sept. 13, 2018), Dkt. No. 175, at 1. The Court already once before allowed amendment despite its clear warning, issued more than two years ago. It need not do so yet again. *See Marcu*, 2020 WL 4016645, at *9. It is time for the operative complaint to be decided on its merits.

For the foregoing reasons and the reasons set forth in Defendants' motion to dismiss the 5AC, Defendants respectfully request that the Court deny Plaintiffs' requests and dismiss the 5AC with prejudice.

Respectfully submitted,

/s/ Miles N. Ruthberg

Miles N. Ruthberg
of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF)

---

[4] Nor does the Order in any way negate Defendants' arguments as to the handful of affirmative statements that Plaintiffs challenge. *See* Mot. 36-38; Dkt. No. 200, at 18 n.16, 19-20.