

February 18, 2021

**VIA ECF**
The Honorable Jesse M. Furman
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *Sjunde AP-Fonden, et al. v. General Electric Co., et al.*, No. 17-cv-8457 (JMF)

Dear Judge Furman:

The parties in the above-referenced action respectfully submit this joint letter in response to the Court's January 29, 2021 Notice of Initial Pretrial Conference (Dkt. #207). The parties conferred regarding their respective proposals for a Civil Case Management Plan and Scheduling Order, but were unable to reach agreement. Accordingly, the parties' respective proposed Civil Case Management Plan and Scheduling Orders and accompanying addendums are attached hereto as Exhibits A (Plaintiffs) and B (Defendants).

**1.   A brief statement of the nature of the action and the principal defenses thereto.**

*Plaintiffs' Statement of the Nature of the Action*

The Section 10(b) claims sustained by the Court arise out of Defendants' alleged misstatements and omissions concerning GE Power's use of factoring to conceal cash flow problems that existed within the segment between February 27, 2015 and January 24, 2018 (the "Class Period").

Plaintiffs allege that during the Class Period, GE ramped up its use of factoring to GE Capital in an effort "to shore up its dwindling cash flow and mask the growing gap between contract assets and actual cash being generated in [its] Industrials group, including from LTSAs." Dkt. #185 at 52; FAC ¶¶393-413. Specifically, in the years leading up to the start of the Class Period, as customer utilization of GE's gas turbines declined, so too did GE Power's earnings under its LTSAs. FAC ¶345. While GE attempted to make up for these lost earnings by modifying its LTSAs to generate "cumulative catch-up" earnings, GE booked those earnings long before it could actually invoice customers and collect cash under those agreements. This caused a widening gap between earnings booked, which are recorded as assets on GE's balance sheet as "Contract Assets," and its industrial cash flows from operating activities ("Industrial CFOA"). As GE's Industrial CFOA increasingly failed to keep pace with booked earnings, analysts and investors voiced concerns about the Company's cash flow. FAC ¶¶318, 387; *see also* Dkt. #201-1 (SEC Cease & Desist Order) at ¶9.

Plaintiffs allege that GE began factoring its LTSA receivables to GE Capital in order to conceal this growing gap between Contract Assets and cash collections. FAC ¶¶393-405.

280 King of Prussia Road, Radnor, Pennsylvania 19087   T. 610-667-7706   F. 610-667-7056   info@ktmc.com
One Sansome Street, Suite 1850, San Francisco, California 94104   T. 415-400-3000   F. 415-400-3001   info@ktmc.com
WWW.KTMC.COM

The Honorable Jesse M. Furman
February 18, 2021
Page 2



Factoring is the process of selling future receivables for immediate cash. FAC ¶24. GE's effort to factor LTSA receivables differed from "traditional" factoring in that: (i) it involved the sale of LTSA receivables with due dates up to five years into the future; and (ii) in order to make its LTSA receivables eligible for factoring, GE offered incentives to its customers (in the form of discounts or extended payment terms), thereby "trad[ing] away future revenue for immediate cash." Dkt. #185 at 45; FAC ¶397; Dkt. #201-1 at ¶11.

Plaintiffs contend that internally, GE's senior executives, including Bornstein, understood that GE heavily relied upon factoring to meet its cash flow targets. They created a task force that was specifically focused on factoring as many LTSA receivables possible, and they recognized that the practice was not sustainable because, among other things, GE Power only had a finite number of LTSA receivables to sell to GE Capital. FAC ¶¶ 394, 401, 416. *See also* Dkt. #201-1 at ¶12 (referring to factoring scheme as a "drug"). Despite knowing that GE was engaging in this unsustainable practice to artificially boost its Industrial CFOA and to conceal the growing gap between its recorded earnings and cash collections, Dkt. #185 at 52, GE and its executives did not disclose these facts to investors.

The Court sustained Plaintiffs' allegation that GE's reliance on factoring was a trend or event that was reasonably likely to result in a material change in GE's liquidity and was reasonably expected to have a material impact on its earnings. As a result, the Court found that Plaintiffs alleged that GE's failure to disclose material facts regarding its factoring practice in its financial statements from 2015 on—beginning with its February 27, 2015 Form 10-K for the year-ended December 31, 2014—constituted a violation of Item 303 of Regulation S-K and Section 10(b). *See* FAC ¶¶ 421-25; Dkt. #185 at 44-46.

In addition, the Court sustained Plaintiffs' allegation that GE affirmatively misled investors when it stated, in its 2016 Form 10-K, that "[i]n order to manage credit exposure, the Company sells current receivables to third parties." Dkt. #185 at 51-52. In particular, the Court held that a reasonable investor could read this statement "and conclude that GE factored LTSA receivables only to reduce its credit exposure while, in reality, as Plaintiffs plausibly and specifically allege, GE was also factoring to shore up its dwindling cash flow and mask the growing gap between contract assets and actual cash being generated in the Industrials group, including from LTSAs." *Id.* at 52.

During the Class Period, GE's alleged factoring scheme—and its related misstatements and omissions—accomplished their objective: creating the illusion of cash flows and concealing the expanding gulf between GE Power's revenues and cash collections, and in turn the weakness in the Power business.

By 2017, however, cracks in GE's much touted Industrial CFOA began to emerge. *See, e.g.,* FAC ¶¶451-54. For example, after GE's new CEO, John Flannery began a "deep dive" into GE's business, GE slashed its Industrial CFOA projections by half, which had just been reaffirmed months earlier by Defendant Bornstein, and cut its dividend. *See, e.g., id.* ¶¶ 462-65, 475-79, 482-83. Thereafter, GE announced an SEC investigation into its business practices. ¶501.



The Honorable Jesse M. Furman
February 18, 2021
Page 3

*Defendants' Statement of the Nature of the Action and Principal Defenses*

Defendants respectfully refer the Court to its January 29, 2021 Order, Dkt. #206 (the "Order"), for an accurate recitation of the allegations that remain in this case, and which are narrower than as described above by Plaintiffs. The Order granted Defendants' motion to dismiss, except as to "(1) Plaintiffs' Section 10(b) and Rule 10b-5 claims concerning (a) factoring in GE's 2016 Form 10-K and (b) GE's failure to disclose factoring in its Class Period financial statements from 2015 on, which survive against GE and Bornstein; and (2) Plaintiffs' corresponding Section 20(a) control person claims against Bornstein" (the "Surviving Claims"). Order at 32-33. In particular, the Court dismissed Plaintiffs' claims related to long-term care insurance; long-term service agreement ("LTSA") modifications, cumulative catch-up adjustments, customer utilization rates; factoring of LTSA receivables prior to 2015; and the disclosures described at Paragraphs 430, 432, 434, and 436 of the Fifth Amended Complaint, Order at 16, 24-29, 23-33, as well as all of Plaintiffs' claims against Jeffrey R. Immelt, Jamie Miller, Keith S. Sherin, Jan R. Hauser, and Richard A. Laxer, Order at 34 (collectively, the "Dismissed Claims").

Defendants disagree that the Class Period for the Surviving Claims begins on February 27, 2015, the date that GE filed its Form 10-K containing financial statements for the year-ended *December 31, 2014*. The Order only sustained Plaintiffs' claims concerning GE's failure to disclose factoring in its "financial statements from 2015 on." Order at 32-33. GE's first financial statements from 2015 were filed after the market closed on May 4, 2015, in its Form 10-Q for the first quarter of 2015. Accordingly, the first day of the Class Period is May 5, 2015.

Defendants have numerous defenses to both liability and damages, including that Defendants did not make material misstatements or omissions, lacked scienter, did not cause Plaintiffs' losses, and acted at all times in good faith. Defendants' affirmative defenses are listed in their Answer. Dkt. #208.

Of particular relevance to the schedule in this case is the issue of loss causation, as addressed further in Addendum A. Defendants believe that Plaintiffs will be unable to meet their burden to prove that any portion of GE's stock price decline was caused by the revelation of the small portion of the alleged misstatements and corrective disclosures that have survived Defendants' motion to dismiss. Nor do Defendants believe that Plaintiffs can proceed under any other viable loss causation theory. Defendants believe this potentially case-dispositive issue should be addressed at the earliest opportunity. Even assuming without conceding that Plaintiffs have properly pleaded loss causation as to the limited alleged misstatements remaining in the case, this issue will be the subject of expert testimony based on publicly available information, and is not dependent upon information from fact discovery. Accordingly, efficiency favors expert reports and testimony on loss causation proceeding in parallel with fact discovery.

**2.  A brief explanation of why jurisdiction and venue lie in this Court.**

The claims at issue in this Action arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder,



The Honorable Jesse M. Furman
February 18, 2021
Page 4

including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.  Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  While GE maintains its corporate headquarters in Boston, Massachusetts, it is incorporated in New York and GE's common stock trades on the New York Stock Exchange.

**3.     A statement of all existing deadlines, due dates, and/or cut-off dates.**

There are no existing deadlines, due dates, or cut-off dates.

**4.     A brief description of any outstanding motions.**

There are no outstanding motions.

**5.     A brief description of any discovery that has already taken place and of any discovery that is necessary for the parties to engage in meaningful settlement negotiations.**

To date, no discovery has been conducted in this action.  In order to engage in meaningful settlement negotiations, Plaintiffs' position is that they will need discovery into the following:

- The materials that GE produced to the SEC in connection with its investigation into GE Power and transcripts of witness interviews or testimony given in connection with that investigation;
- GE Power's factoring practices during each quarter of the Class Period;
- The impact of GE's factoring practice on its reported financial results, including Industrial CFOA, during each quarter of the Class Period;
- The reduction in sales and utilization of GE gas turbines and the reduced profitability of its LTSAs, and related forecasts of demand for GE gas turbines and of competition from alternative power sources;
- GE Power's use of cumulative catch-up adjustments and their impact on GE Power's financial results;
- GE Power's contract modification practices for LTSAs;
- The nature, timing and substance of GE's quarterly and annual financial disclosures;
- GE's financial projections for GE Power, including its Industrial CFOA projections, throughout the Class Period;
- The nature, timing and substance of the alleged false and misleading statements;
- The nature, substance and timing of the alleged corrective disclosures;
- GE's insurance policies relevant to this litigation.

Defendants, in response, dispute Plaintiffs' position on the scope of discovery.  Indeed, Defendants' position is that many of the categories above relate solely to claims that this Court dismissed in the Order and which are no longer part of this case, such as sales and utilization of

The Honorable Jesse M. Furman
February 18, 2021
Page 5



GE gas turbines, cumulative catch-up adjustments, profitability of LTSAs, and contract modification practices. Order at 23-30. Defendants oppose Plaintiffs' efforts to broaden discovery so as to encompass these irrelevant topics, and believe that the scope of discovery in this matter should instead be tailored to the limited allegations that are going forward pursuant to the Court's decision on Defendants' motion to dismiss the Fifth Amended Complaint.

As to Defendants' expected discovery needs, Defendants will need discovery from Plaintiffs regarding, among other things, their GE stock purchases, investment decisions, and confidential witness allegations in the FAC. Third party discovery may also be required.

**6.     A list of all prior settlement discussions, including the date, the parties involved, and the approximate duration of such discussions, if any.**

The parties have not engaged in any settlement discussions to date.

**7.     A statement confirming that the parties have discussed the use of alternate dispute resolution mechanisms and indicating whether the parties believe that (a) a settlement conference before a Magistrate Judge; (b) participation in the District's Mediation Program; and/or (c) retention of a privately retained mediator would be appropriate and, if so, when in the case (e.g., within the next sixty days; after the deposition of plaintiff is completed; after the close of fact discovery; etc.) the use of such a mechanism would be appropriate.**

The parties have discussed the use of alternate dispute resolution mechanisms and believe that retention of a privately retained mediator may be appropriate following further development of factual and expert discovery. The parties will continue to discuss the use of such mechanisms and update the Court as discovery advances.

**8.     Any other information that the parties believe may assist the Court in advancing the case to settlement or trial, including, but not limited to, a description of any dispositive issue or novel issue raised by the case.**

As noted, Defendants believe that Plaintiffs will be unable to establish that any portion of GE's stock price decline was caused through any corrective disclosures or to otherwise advance a viable loss causation theory. Because loss causation is a potentially case-dispositive expert issue that will not depend on the results of fact discovery, Defendants believe that prioritizing early loss causation-related expert discovery likely would assist in efficiently advancing the case toward a resolution. Accordingly, Defendants' addendum to their proposed Civil Case Management Plan and Scheduling Order sets forth additional proposed deadlines for the early completion of loss causation expert discovery. Plaintiffs disagree with Defendants' position and oppose the imposition of a separate schedule for loss-causation expert discovery, in part because the record developed in fact discovery will be relevant to, and inform, any expert opinion on loss causation.

\*           \*           \*

The Honorable Jesse M. Furman
February 18, 2021
Page 6



     We look forward to discussing these issues further with Your Honor during the February 25, 2021 initial pretrial conference.

                                                   Respectfully submitted[1],

                                                 *S/ Sharan Nirmul*
                                                 Sharan Nirmul
                                                 of Kessler Topaz Meltzer & Check, LLP

                                                 *Counsel for Plaintiffs*

                                                 *S/ William J. Trach*
                                                 William J. Trach
                                                 of Latham & Watkins LLP

                                                 *Counsel for Defendants*

Attachments
cc: All Counsel of Record (via ECF)

---

[1] Electronic signatures are used with consent in accordance with rule 8.5(b) of the Court's ECF Rules and Instructions.