# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

SJUNDE AP-FONDEN and THE
CLEVELAND BAKERS AND TEAMSTERS
PENSION FUND, individually and on behalf
of all others similarly situated,

                 Plaintiffs,

     v.

GENERAL ELECTRIC COMPANY, et al.

                 Defendants.

Case No. 1:17-cv-8457-JMF

Hon. Jesse M. Furman

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
# MOTION FOR LEAVE TO FILE A SIXTH AMENDED CONSOLIDATED CLASS
# ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    PRELIMINARY STATEMENT ......................................................................1

II.   RELEVANT PROCEDURAL BACKGROUND AND THE PROPOSED
      AMENDMENT...........................................................................................5

      A.    Procedural Posture ...........................................................................5

      B.    The Proposed Amendment.................................................................6

III.  LEGAL STANDARD...................................................................................9

IV.   ARGUMENT ............................................................................................10

      A.    Good Cause Exists to Grant Plaintiffs Leave to Amend......................10

      B.    There Is No Undue Prejudice to Defendants ....................................13

      C.    The Proposed Amendment Is Not Futile ..........................................16

V.    CONCLUSION.........................................................................................18

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
   626 F.3d 699 (2d Cir. 2010)......................................................13

*Agerbrink v. Model Serv. LLC*,
   155 F. Supp. 3d 448 (S.D.N.Y. 2016)......................................................14

*Ambac Assurance Corp. v. EMC Mortg. Corp.*,
   2010 WL 11595698 (S.D.N.Y. Dec. 16, 2010) .............................................. *passim*

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012)......................................................17

*Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*,
   289 F.R.D. 401 (S.D.N.Y. 2013) ................................................ 13, 16-17

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993)......................................................16

*Bridgeport Music, Inc. v. Universal Music Grp., Inc.*,
   248 F.R.D. 408 (S.D.N.Y. 2008) ................................................ 12-13

*Broadspring, Inc. v. Congoo, LLC*,
   2014 WL 4100615 (S.D.N.Y. Aug. 20, 2014) (Furman, J.) .......................................10, 13, 15

*DeCastro v. City of N.Y.*,
   2020 WL 4932778 (S.D.N.Y. Aug. 24, 2020) ......................................................10

*Enzymotec Ltd. v. NBTY, Inc.*,
   754 F. Supp. 2d 527 (E.D.N.Y. 2010) ..................................................13

*Friedl v. City of N.Y.*,
   210 F.3d 79 (2d Cir. 2000)......................................................13

*Indus. Tech. Ventures, L.P. v. Pleasant T. Rowland Revocable Trust*,
   280 F.R.D. 86 (W.D.N.Y. 2012)......................................................11

*Kleeberg v. Eber*,
   331 F.R.D. 302 (S.D.N.Y. 2019) ...................................................... 15-16

*Lee v. Kylin Mgmt. LLC*,
   2019 WL 917097 (S.D.N.Y. Feb. 25, 2019) (Furman, J.) ................................................10, 17

*Lickteig v. Cerberus Capital Mgmt., L.P.*,
2020 WL 7629876 (S.D.N.Y. Dec. 22, 2020) ...........................................................13, 14, 16

*New Hampshire Ins. Co. v. Total Tool Supply, Inc.*,
621 F. Supp. 2d 121 (S.D.N.Y. 2009)......................................................................................17

*New York SMSA Ltd. P'ship v. Town of Hempstead*,
2013 WL 1148898 (E.D.N.Y. Mar. 19, 2013)........................................................................10

*Pasternack v. Shrader*,
863 F.3d 163 (2d Cir. 2017)....................................................................................................16

*Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*,
889 F. Supp. 2d 453 (S.D.N.Y. 2012)....................................................................................17

*In re Pfizer Inc. Sec. Litig.*,
2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) ..........................................................................16

*SEC v. Rio Tinto plc*,
2020 WL 2504008 (S.D.N.Y. Mar. 9, 2020) ..........................................................................11

*State Teachers Ret. Bd. v. Fluor Corp.*,
654 F.2d 843 (2d Cir. 1981)....................................................................................................15

*Stonewell Corp. v. Conestoga Title Ins. Co.*,
2010 WL 647531 (S.D.N.Y. Feb. 18, 2010).................................................................... 14-15

**Other Authorities**

Fed. R. Civ. P. 16(b)(4)....................................................................................................................9

Pursuant to Federal Rule of Civil Procedure ("Rule") 15(a) and 16(b)(4), Lead Plaintiff Sjunde AP-Fonden and Additional Plaintiff The Cleveland Bakers and Teamsters Pension Fund (collectively, "Plaintiffs") respectfully submit this memorandum in support of their Motion for Leave to File a Sixth Amended Consolidated Class Action Complaint. The proposed Sixth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws ("6AC") is attached hereto as Exhibit 1, and a redlined version of the 6AC showing the changes Plaintiffs have made is attached hereto as Exhibit 2.

## I.    PRELIMINARY STATEMENT

Plaintiffs' proposed amendment is a narrow one. It does not plead a new theory of liability, name any new parties, expand the Class Period, or modify the definition of the Class that Plaintiffs seek to certify in their currently-pending motion for Class Certification (*see* ECF Nos. 218, 219). Rather, it simply re-pleads the entirety of a previously-dismissed statement that Bornstein made during GE's January 20, 2017 4Q16 earnings call.

Specifically, during the January 20, 2017 earnings call, Defendant Jeff Bornstein was asked by an analyst: "is there any factoring this quarter from GE Capital into GE industrial?" In response, Bornstein stated:

> So within that accounts receivable performance you asked about factoring. For the total year, factoring with GE Capital was a $1.6 billion change for the year. It was $1.7 billion last year, so actually year-to-year it was $100 million less of a benefit in the year between what we did with GE Capital around factoring. And in the fourth quarter importantly, and you see it because our receivables improved $500 million, is from the third to fourth quarter of 2015, the benefit was $2.3 billion, the benefit going forward from this third quarter to this quarter was $700 million. So it was actually down $1.6 billion year-to-year between third and fourth quarter each of those years. So there's very good underlying performance here. It's not just about, it's actually very little to do with GE Capital factoring.

In their motion to dismiss, Defendants argued that Bornstein's disclosure of GE's actual "factored dollar amount disproves the claim that the same statement misled investors about the

extent of factoring." ECF No. 180 at 11. The Court relied on Defendants' representation in dismissing Plaintiffs' claim, concluding that Bornstein's "simultaneous disclosure of the actual factored dollar amounts in 4Q 201[6] and 2016 in the very same statement undercuts any inference that he intended to deceive investors or was reckless regarding the risk that they might be misled" and that "Plaintiffs offer no new facts to support a strong inference of scienter." ECF No. 206 at 28.

The proposed amendment cures this perceived deficiency. ██████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ Armed with this knowledge, and fully aware of the market's hyper-focus on GE's cash flows and cash collections, Bornstein misled investors.

Buttressing this already strong inference of scienter, the amendment also pleads facts establishing that, ████████████████████████████████████████ ████████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Good cause exists to allow the amendment. Plaintiffs were diligent in seeking leave to amend upon discovering the facts forming the basis of the proposed amendment, and have done so: (i) prior to the close of fact discovery; (ii) before Bornstein's deposition; and (iii) months before the conclusion of expert discovery. Critically, there is no trial date set in this case. Plaintiffs' proposed amendment is the product of their analysis of: (i) the more than 209,000 documents that Defendants have produced—productions that are still ongoing, even though the substantial completion deadline was August 5, 2021; (ii) [REDACTED]

[REDACTED]

[REDACTED] and (iii) the sworn testimony of eleven current and former GE employees that have been deposed in connection with this action. [REDACTED]

[REDACTED]

While depositions are still proceeding as of the date of this motion, Plaintiffs have pieced together from this voluminous discovery record the facts necessary to plead with particularly the falsity of Bornstein's statements and to raise a strong inference of scienter. Plaintiffs could not have sought leave to amend prior to the Court's March 29, 2021 deadline for amendment under Rule 15 because the facts that form the basis of the proposed amendment—which were derived from nonpublic Company documents later produced in discovery and confirmed through the testimony of fact witnesses—were not available to them until long after that date and still required

3

extensive analysis and deposition discovery to piece together and assess Bornstein's and GE's culpability based on this new evidence.

There is also no undue prejudice to Defendants from Plaintiffs' proposed amendment. The statements Plaintiffs seek to include are predicated on the same theory of fraud sustained by the Court. They concern the same facts and evidence as the factoring claims already in the case, and on which the parties have already conducted (and are presently conducting) extensive discovery. No additional discovery beyond what the parties have already contemplated will be required as a result of granting Plaintiffs leave to amend, and amendment will not impose any significant additional costs on Defendants, necessitate an extension of the current schedule, or delay resolution of this case.

Finally, Plaintiffs note that with the exception of Bornstein's January 20, 2017 misstatements, Plaintiffs are not reasserting in the 6AC any of the claims that this Court previously dismissed or seeking to revive any claims against any party that the Court previously dismissed. While Plaintiffs have left the prior complaint allegations intact and have added their amended allegations to the end of the proposed 6AC, they have done so simply for ease of review for the Court and Defendants. The proposed 6AC is subject to the Court's motion to dismiss opinion (ECF No. 206) and Plaintiffs' pending motion for class certification (ECF No. 218). Plaintiffs believe that this approach will allow the Court to efficiently review and consider Plaintiffs' new allegations without disturbing any of its prior rulings and Defendants to answer the new allegations in a straightforward manner.

For these reasons, Plaintiffs' proposed amendment should be allowed.

## II.    RELEVANT PROCEDURAL BACKGROUND AND THE PROPOSED AMENDMENT

### A.    Procedural Posture

The operative complaint asserted claims arising from Defendants' misrepresentations and omissions about: (i) the risk and quality of GE's long-term care insurance portfolio; (ii) GE Power's LTSAs, negative trends within GE Power's operating segment, the source of GE Power's profits, GE Power's reliance on factoring of receivables associated with its LTSAs to generate Industrial CFOA; and (iii) the impact of factoring on GE's liquidity. ECF No. 191.

On December 18, 2019, Defendants moved to dismiss the Plaintiffs' claims. ECF No. 194. On January 29, 2021, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 206. Specifically, the Court sustained Plaintiffs' allegations that: (i) in violation of Item 303 of Regulation S-K, "GE's [SEC] filings from 2015 on" failed to disclose GE's increased reliance on factoring GE Power receivables to conceal cash flow problems and the risks associated with that rampant factoring activity that were reasonably likely to materially impact GE's liquidity; and (ii) Defendants misrepresented in GE's 2016 10-K that GE factored receivables only "[i]n order to manage credit exposure." *Id*. at 26-28, 30.

On February 26, 2021, the Court entered a Case Management Plan and Scheduling Order ("Scheduling Order") setting a deadline of March 29, 2021, for Plaintiffs to file a motion for leave to amend the pleadings under Rules 15 and 21. ECF No. 211, ¶ 5 ("Any motion to amend or to join additional parties filed after the deadline in this paragraph [March 29, 2021] will be subject to the 'good cause' standard in Fed. R. Civ. P. 16(b)(4) rather than the more lenient standards of Fed. R. Civ. P. 15 and 21."). The Scheduling Order also set a substantial completion date of August 5, 2021, for all document requests served by March 26, 2021, and a fact discovery completion date

of December 3, 2021, which the Court later extended to February 1, 2022. *See id*. at 6; ECF No. 269 at 1-2.

On August 5, 2021, Defendants notified Plaintiffs that their document production was substantially complete. Since that date, Defendants have produced 4,500 new documents, totaling 34,791 pages, ████████████████████████████████████████████ ██████████████████████████████████████████████ Defendants also provided production image overlays altering more than 6,886 previously produced documents, including unredacted versions of many documents that had been improperly withheld (in whole or in part) under a claim of privilege, after the August 5 substantial completion deadline.

Deposition discovery of fact witnesses has been an equally protracted process, prompting the parties to seek an extension of the completion of fact discovery. ECF No. 269 at 1-2. As of the date of this filing, eleven of the fifteen fact witness depositions agreed to by the parties have taken place with two scheduled after the fact discovery cutoff date.

### B.     The Proposed Amendment

Plaintiffs' proposed amendment seeks to re-plead statements that Bornstein made during GE's 4Q16 earnings call on January 20, 2017, which the Court previously dismissed, along with contextual misstatements Bornstein made during that same January 20, 2017 exchange with the analyst. 6AC, ¶¶ 521-24.

Specifically, the 6AC pleads new, particularized facts demonstrating that the following statements made by Bornstein during the January 20, 2017 earnings call were materially false and misleading:

> **Analyst:** Since I only have one question I'd love to focus on cash here. And within that, Jeff, is there any factoring this quarter from GE Capital into GE industrial? And then also while it's the strongest cash flow quarter in a while, still a little bit below what we thought you guys implied when we talked about it before. Then as you think about it progressing through 2017 and beyond maybe just talk a little

more about the cash flow initiative comp that really can give investor's confidence that the cash flow part of the story is improving.

**Bornstein:** So within that accounts receivable performance you asked about factoring. For the total year, factoring with GE Capital was a $1.6 billion change for the year. It was $1.7 billion last year, so actually year-to-year it was $100 million less of a benefit in the year between what we did with GE Capital around factoring. And in the fourth quarter importantly, and you see it because our receivables improved $500 million, is from the third to fourth quarter of 2015, the benefit was $2.3 billion, the benefit going forward from this third quarter to this quarter was $700 million. So it was actually down $1.6 billion year-to-year between third and fourth quarter each of those years. So there's very good underlying performance here. It's not just about, it's actually very little to do with GE Capital factoring.

6AC, ¶¶ 522-23.

As set forth in the proposed amendment, ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████

          ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████

Analysts latched on to Bornstein's claim that GE's actual factored dollar amount for 2016 was $1.6 billion. For example, Stephen Tusa, one of the most influential of the analysts who covered GE, wrote in his note following the earnings call that "***receivables factoring helped by***

***$0.7B in 4Q ($1.6B for the full year, similar to last year)*.**" 6AC, ¶ 581. Three days later, Tusa

repeated these statements in a subsequent report, saying once again that "receivables factoring"

helped GE's cash performance by "$0.7B in 4Q ($1.6B for the full year, similar to last year)." *Id*.

## III.    LEGAL STANDARD

Where, as here, a party seeks to amend a pleading after the deadline for doing so provided

by a court's scheduling order, it must first satisfy Rule 16(b)(4)'s "good cause" standard. Fed. R.

Civ. P. 16(b)(4); *see also* Scheduling Order, ¶ 5 ("Any motion to amend or to join additional parties

filed after the deadline in this paragraph [March 29, 2021] will be subject to the 'good cause'

standard in Fed. R. Civ. P. 16(b)(4) rather than the more lenient standards of Fed. R. Civ. P. 15

and 21.").

9

"If the part[y] seeking the amendment satisf[ies] the 'good cause' standard of Rule 16, the court then determines whether the movant has also met the liberal standards of Rule 15." *DeCastro v. City of N.Y.*, 2020 WL 4932778, at *7 (S.D.N.Y. Aug. 24, 2020) (quoting *Youngers v. Virtus Inv. Partners Inc.*, 2017 WL 5991800, at *6 (S.D.N.Y. Dec. 4, 2017) (alteration and citation omitted). Rule 15(a)(2) instructs courts to "freely give leave [to amend a pleading] when justice so requires." At that point, leave to amend should be denied only where there is "undue delay, bad faith, futility of amendment [or] . . . prejudice to the opposing party." *Lee v. Kylin Mgmt. LLC*, 2019 WL 917097, at *1 (S.D.N.Y. Feb. 25, 2019) (Furman, J.). The burden to establish these factors is on the party opposing the amendment. *See, e.g.*, *New York SMSA Ltd. P'ship v. Town of Hempstead*, 2013 WL 1148898, at *5 (E.D.N.Y. Mar. 19, 2013) (citations omitted); *see also Broadspring, Inc. v. Congoo, LLC*, 2014 WL 4100615, at *26 (S.D.N.Y. Aug. 20, 2014) (Furman, J.) (once good cause is established, "the burden is on [d]efendants to demonstrate that the proposed amendment would be prejudicial"); *DeCastro*, 2020 WL 4932778, at *7 ("The movant has the burden of demonstrating good cause, while the non-movant has the burden of demonstrating prejudice.") (citing *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014) (citations omitted).

## IV.   ARGUMENT

### A.   Good Cause Exists to Grant Plaintiffs Leave to Amend

The "primary consideration" in determining the existence of good cause under Rule 16(b)(4) is "whether the moving party can demonstrate diligence." *Lee*, 2019 WL 917097, at *1 (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). To do so, "the moving party must demonstrate that it has been diligent in its efforts to meet the Court's deadlines, and that despite its having exercised diligence, the applicable deadline could not have been reasonably met." *Id.*

When a motion to amend is based on information acquired in discovery, courts hold that a movant shows diligence by seeking leave to amend within months of receiving the discovery. *See, e.g.*, *Ambac Assurance Corp. v. EMC Mortg. Corp.*, 2010 WL 11595698, at *6-7 (S.D.N.Y. Dec. 16, 2010) (finding it "prudent of [plaintiff] to delay asserting [securities fraud] claim until it had the evidence to properly plead" despite being "almost a year in some cases, and in no case less than six months after it obtained the relevant discovery…[W]hen placed in perspective, [plaintiff's] delay was not excessive"); *Indus. Tech. Ventures, L.P. v. Pleasant T. Rowland Revocable Trust*, 280 F.R.D. 86, 92-93 (W.D.N.Y. 2012) (plaintiff who took months to review voluminous discovery and prepare amendments to conform to the evidence ascertained during discovery demonstrated diligence); *SEC v. Rio Tinto plc*, 2020 WL 2504008, at *7 (S.D.N.Y. Mar. 9, 2020) ("[G]ood cause is often found where a proposed amendment is based on particular evidence that, even with reasonable diligence, could not have been discovered before the deadline expired.").

Diligence is readily established here. Prior to the March 29, 2021 deadline for amending pursuant to Rule 15, Plaintiffs did not know—and could not have known— ███████████ ██████████████████████████████████████████████████████████████████ ████████ Nor could Plaintiffs have known or confirmed the material facts detailed in the 6AC prior to that time. Plaintiffs promptly served document requests on March 3, 2021, in accordance with the Court's individual practices, and as of March 29, 2021, Defendants had not produced a single document to Plaintiffs ████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████ and deposition discovery in this case had yet to commence. Thus, Plaintiffs could not have amended under Rule 15 prior to March 29, 2021.

Plaintiffs have also taken reasonably diligent steps to discover the information forming the basis of the proposed amendment. Defendants' document production in this case has been protracted and, in fact, is still ongoing. Prior to the August 5, 2021 substantial completion deadline, Defendants produced 11 volumes of documents ranging from 641 to 53,836 documents each. Plaintiffs have promptly reviewed and analyzed these voluminous documents as they were produced. Even so, Plaintiffs needed time to analyze GE's internal documents, piece together the documents necessary to plead with particularity falsity and scienter for Bornstein's statements, and depose fact witnesses to explain and confirm the contents of those internal materials.

Importantly, Defendants also made **_twenty-two_** document productions after the August 5, 2021 substantial completion deadline, totaling 4,500 documents. ███████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████ These productions were the result of protracted meet and confers to address deficiencies in Defendants' document production that Plaintiffs identified through their review and analysis, and the withdrawal of numerous improper claims of privilege.

Seeking leave to amend at this juncture—prior to the completion of fact discovery—is reasonable in light of the timing, volume, and complexity of Defendants' document productions. *See Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 414 (S.D.N.Y. 2008)

(plaintiff's request to amend complaint after it could inquire further into the extent of the defendants' activities was reasonable); *see also Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (good cause established to grant motion to amend filed nine months after scheduling order deadline, in part, because delayed discovery "deferred [plaintiff's] ability to discover the facts supporting the proposed cause of action"); *Ambac*, 2010 WL 11595698, at *4-5 (case where an "enormous amount of pretrial discovery" eventually unfolded, the court deemed it "unrealistic to expect [plaintiff] to meet the amendment date at a time when little or no discovery had taken place.").[1]

### B.     There Is No Undue Prejudice to Defendants

Having established good cause for granting Plaintiffs' leave to amend, "the burden is on Defendants to demonstrate that the proposed amendment will be prejudicial." *Broadspring*, 2014 WL 4100615, at *26. Defendants cannot meet this burden.

"[O]nly <u>undue</u> prejudice warrants denial" of a motion to amend. *Lickteig v. Cerberus Capital Mgmt., L.P.*, 2020 WL 7629876, at *4 (S.D.N.Y. Dec. 22, 2020) (emphasis in original). "The type of prejudice that warrants denial of leave to amend is usually such that it puts [the opposing party] at an unfair disadvantage, such as the addition of a new claim on the eve of trial." *Ambac*, 2010 WL 11595698, at *7 (alteration in original). Further, courts consider amendment unduly prejudicial when "it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725-26 (2d Cir. 2010)

---

[1] Plaintiffs' diligence also demonstrates that they did not unduly delay or act in bad faith under Rule 15 in seeking leave to amend at this juncture. *See Ambac*, 2010 WL 11595698, at *7 ("Having rejected [defendants'] argument that [plaintiff] did not act diligently, it follows that there can be no undue delay."); *see also Friedl v. City of N.Y.*, 210 F.3d 79, 88 (2d Cir. 2000) ("[T]here has been no showing of…undue delay, given that the amendment was proposed only after discovery revealed additional relevant facts…"); *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 289 F.R.D. 401, 404 (S.D.N.Y. 2013) ("There is also no evidence of bad faith or dilatory motive…particularly given that discovery is ongoing.").

(quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). And, "[w]hether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to the undue prejudice analysis." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016) (citing *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)). None of these circumstances are present here.

*First*, allowing an amendment to re-plead Bornstein's January 20, 2017 misstatements "will not drastically affect the contours of this case such that Defendants would have to expend significant additional resources to conduct discovery and prepare for trial." *Lickteig*, 2020 WL 7629876, at *5. Plaintiffs do not seek to add any new defendants, expand the Class Period, or change the Class definition. Rather, they seek to re-plead misrepresentations of which Defendants have been on notice, based on newly discovered facts.

*Second*, Plaintiffs do not seek to "change [] tactics or theories." Bornstein's alleged misrepresentations are based the same theory of fraud that Plaintiffs are currently prosecuting and the same common nucleus of operative facts as Plaintiffs' sustained claims and on which the parties have focused their discovery efforts in this case. *Agerbrink*, 155 F. Supp. 3d at 455; *see also Lickteig*, 2020 WL 7629876, at *4 (no undue prejudice where amendment sought to add previously dismissed misrepresentation to plaintiff's existing securities fraud claim); *Ambac*, 2010 WL 11595698, at *6-7 (allowing plaintiff to add new claim for securities fraud violation of the Exchange Act arising from the same transactions underlying the original complaint); *Stonewell Corp. v. Conestoga Title Ins. Co.*, 2010 WL 647531, at *2 (S.D.N.Y. Feb. 18, 2010) ("Courts in this district have consistently granted motions for leave to amend a complaint where facts and

allegations developed during discovery are closely related to the original claim and are foreshadowed in earlier pleadings.").

*Third*, the proposed amendment will require minimal expenditure of additional time or resources and will require no additional discovery. *See State Teachers*, 654 F.2d at 856 (concluding that district court abused its discretion denying leave to amend where amendment would "not involve a great deal of additional discovery" because the key witnesses involved had already been deposed). Rather, the discovery Plaintiffs have completed to date—and will complete through the remaining fact witness depositions and previously-served document requests and interrogatories— more than suffices. Thus, the amendment, if granted, will neither expand the scope of discovery nor require the extension of existing case deadlines. *Id*.; *see also Broadspring*, 2014 WL 4100615, at *26 (no prejudice where amendment was "derived entirely from Defendants' own document production and deposition testimony").

Indeed, numerous witnesses have already been questioned █████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Moreover, regardless of whether amendment is granted and these statements are held actionable, the underlying facts and evidence are relevant to Plaintiffs' remaining claims. Therefore, Defendants will not have to expend significant additional resources preparing their defense if the newly identified misstatements are added to the case.

*Fourth*, Plaintiffs do not seek leave to amend to gain an "unfair disadvantage, such as the addition of a new claim on the eve of trial." *Ambac*, 2010 WL 11595698, at *7-8; *Kleeberg v. Eber*, 331 F.R.D. 302, 316 (S.D.N.Y. 2019) (no prejudice when "discovery is ongoing and a trial

date has not yet been set"). A trial date has not yet been set, and the close of expert discovery is still months away. █████████████████████████████████████

███████████████████████████████████████████████

Thus, Defendants will not be unfairly disadvantaged by the proposed amendment, and will have ample time to prepare their defense.[2]

*Fifth*, "[t]here is not a categorical bar on amending PSLRA complaints." *Lickteig*, 2020 WL 7629876, at *6. Consistent with PSLRA jurisprudence, plaintiffs are permitted to use information obtained in discovery to amend the complaint. *Id.* ("[T]he amendment that is proposed does not raise a new claim or add a new defendant. Instead, the additional facts add detail to a claim that was advanced in the original complaint and that, in part, survived a motion to dismiss. In this context, concerns about an end-run around the PSLRA are mitigated."); *see also In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *2 (S.D.N.Y. Mar. 22, 2012) ("Courts routinely grant leave to amend when a plaintiff seeks to refine the complaint to reflect evidence obtained during discovery."); *Ambac*, 2010 WL 11595698, at *6-7 (allowing plaintiff to use discovery to allege Section 10(b) claim in amended complaint).

In sum, Defendants will be unable to meet their burden in demonstrating they would suffer undue prejudice if the amendment is granted.

### C.    The Proposed Amendment Is Not Futile

Amendment would not be futile here. "An amendment is futile if it fails to state a claim upon which relief may be granted or is subject to motion to dismiss on another basis, such as the

---

[2] For these reasons, there is no undue prejudice under Rule 15. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("In determining what constitutes 'prejudice,' we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [and] (ii) significantly delay the resolution of the dispute"); *Pasternack v. Shrader*, 863 F.3d 163, 174 (2d Cir. 2017) (same).

statute of limitations." *Bayerische Landesbank*, 289 F.R.D. at 404 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)). "Where a party opposes leave to amend on 'futility' grounds, the appropriate legal standard is whether the proposed complaint fails to state a claim, the traditional Fed. R. Civ. P. 12(b) standard." *New Hampshire Ins. Co. v. Total Tool Supply, Inc.*, 621 F. Supp. 2d 121, 124 (S.D.N.Y. 2009); *see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453 (S.D.N.Y. 2012). As with prejudice, "[t]he party opposing a motion to amend bears the burden of establishing that the amendment would be futile." *Lee*, 2019 WL 917097, at *3 (citing *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013)). Defendants will be unable to meet their burden here.

Plaintiffs' proposed amendment is not futile and will survive dismissal. As an initial matter, the proposed alleged misstatements are predicated on the same viable legal theory that the Court sustained with respect to Plaintiffs' sustained factoring claims. They are also supported by particularized allegations of facts unearthed during discovery that demonstrate their material falsity or misleading nature, as well as the scienter of GE and Bornstein, that would readily defeat a Rule 12(b)(6) motion to dismiss.

While the Court dismissed Bornstein's statements that "there's very good underlying performance here. It's not just about, it's actually very little to do with GE Capital factoring," it did so on the grounds that Bornstein's "simultaneous disclosure of the actual factored dollar amounts in 4Q 2015 and 2016 in the very same statement undercut[] any inference that he intended to deceive investors or was reckless regarding this risk that they might be misled." ECF No. 206 at 28. ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████



Bornstein's statements would have misled a reasonable investor and raises a strong inference of scienter that is "at least as compelling as any opposing inference one could draw from the facts alleged." 6AC, ¶¶ 584-590; s*ee* ECF No. 206 at 28 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007)).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion.

Dated:   January 19, 2022                    Respectfully submitted,

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**

*S/ Sharan Nirmul*
Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Joshua A. Materese
Michelle M. Newcomer
Evan R. Hoey
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
jmaterese@ktmc.com
mnewcomer@ktmc.com
ehoey@ktmc.com

*Counsel for Lead Plaintiff Sjunde AP-Fonden*
*and Lead Counsel for the Class*

**GRANT & EISENHOFER P.A.**
Daniel L. Berger
Caitlin M. Moyna
Jonathan D. Park
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (610) 722-8501
dberger@gelaw.com
cmoyna@gelaw.com
jpark@gelaw.com

*Counsel for Additional Plaintiff The Cleveland*
*Bakers and Teamsters Pension Fund and Local*
*Counsel for the Class*