**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SJUNDE AP-FONDEN and THE CLEVELAND BAKERS AND TEAMSTERS PENSION FUND, individually and on behalf of all others similarly situated, | 17 Civ. 08457 (JMF) (GWG) |
| Plaintiffs, | |
| v. | **ORAL ARGUMENT REQUESTED** |
| GENERAL ELECTRIC COMPANY and JEFFREY S. BORNSTEIN, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR LEAVE TO FILE A SIXTH AMENDED COMPLAINT**

LATHAM & WATKINS LLP

Sean M. Berkowitz (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
(312) 876-7700

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000

Blake T. Denton
Jooyoung Yeu
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

Sarah A. Tomkowiak (*pro hac vice*)
555 Eleventh Street NW
Washington, D.C. 20004
(202) 637-2200

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, California 92130
(858) 523-5400

*Attorneys for Defendants*

February 3, 2022

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...............................................................................................................3

    A.    Procedural History ...........................................................................3

    B.    Fact Discovery and Plaintiffs' Midnight Amendment ...............................5

    C.    "New" Allegations in the Proposed Sixth Amended Complaint ............................6

ARGUMENT ....................................................................................................................8

I.     PLAINTIFFS' PROPOSED AMENDMENT IS FUTILE ................................................9

II.    NO GOOD CAUSE EXISTS FOR PLAINTIFFS' PROPOSED AMENDMENT..........14

    A.    Plaintiffs Have Not Demonstrated Diligence .........................................14

    B.    Plaintiffs' Proposed Amendment Is Prejudicial...................................19

CONCLUSION................................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*246 Sears Road Realty Corp. v. Exxon Mobil Corp.*,
    2012 WL 4174862 (E.D.N.Y. Sept. 18, 2012) ...................................................................15

*380544 Can., Inc. v. Aspen Tech., Inc.*,
    2011 WL 4089876 (S.D.N.Y. Sept. 14, 2011)....................................................................20

*Accelecare Wound Ctrs., Inc. v. Bank of N.Y.*,
    2009 WL 2460987 (S.D.N.Y. Aug. 11, 2009).....................................................................16

*Ambac Assurance Corp. v. EMC Mortgage Corp.*,
    2010 WL 11595698 (S.D.N.Y. Dec. 16, 2010) ..................................................................16

*Anwar v. Fairfield Greenwich Ltd.*,
    283 F.R.D. 193 (S.D.N.Y. 2012) .......................................................................................19

*Capak v. Epps*,
    2020 WL 2543092 (S.D.N.Y. Apr. 7, 2020).......................................................................17

*Chukwueze v. NYCERS*,
    2013 WL 5878174 (S.D.N.Y. Nov. 1, 2013) ........................................................................9

*Colliton v. Cravath, Swain & Moore LLP*,
    2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d
    Cir. 2009) ............................................................................................................................17

*DeCastro v. City of New York*,
    2020 WL 4932778 (S.D.N.Y. Aug. 24, 2020)............................................................9, 19, 20

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)................................................................................................13

*Friedman v. Endo Int'l PLC*,
    2018 WL 2021561 (S.D.N.Y. Apr. 27, 2018).......................................................................9

*Gorman v. Entergy Nuclear Operations, Inc.*,
    2006 WL 4774619 (S.D.N.Y. Apr. 14, 2006), *aff'd*, 488 F.3d 586 (2d Cir.
    2007) ...................................................................................................................................13

*Gullo v. City of New York*,
    540 F. App'x 45 (2d Cir. 2013) ..........................................................................................16

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009)..................................................................................................9

*Indus. Tech. Ventures, L.P. v. Pleasant T. Rowland Revocable Trust*,
    280 F.R.D. 86 (W.D.N.Y. Feb. 17, 2012) ...............................................................................16

*In re Adient plc Sec. Litig.*,
    2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ...........................................................................12

*In re Aluminum Warehousing Antitrust Litig.*,
    2016 WL 1629350 (S.D.N.Y. Apr. 25, 2016) .............................................................. *passim*

*In re AOL, Inc. Repurchase Offer Litig.*,
    2013 WL 6331802 (S.D.N.Y. Dec. 5, 2013) ...........................................................................11

*In re AOL, Inc. Repurchase Offer Litig.*,
    966 F. Supp. 2d 307 (S.D.N.Y. 2013) ....................................................................................14

*In re GeoPharma, Inc. Sec. Litig.*,
    411 F. Supp. 2d 434 (S.D.N.Y. 2006) ....................................................................................13

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    939 F. Supp. 2d 360 (S.D.N.Y. 2013) ....................................................................................18

*In re Petrobras Sec. Litig.*,
    2016 WL 3144395 (S.D.N.Y. May 5, 2016) ...........................................................................18

*In re Pfizer Inc. Sec. Litig.*,
    2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) ..........................................................................20

*Kant v. Columbia Univ.*,
    2010 WL 807442 (S.D.N.Y. Mar. 9, 2010) ......................................................................17, 18

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
    496 F.3d 229 (2d Cir. 2007) .....................................................................................................9

*Lickteig v. Cerberus Capital Mgmt., L.P.*,
    2020 WL 7629876 (S.D.N.Y. Dec. 22, 2020) ........................................................................20

*Livingston v. Cablevision Sys. Corp.*,
    966 F. Supp. 2d 208 (E.D.N.Y. 2013) ....................................................................................11

*Lucente v. Int'l Bus. Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002) ................................................................................................9, 10

*Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*,
    2006 WL 2242596 (S.D.N.Y. Aug. 3, 2006) ...............................................................18, 19, 20

*Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*,
    2009 WL 2432729 (S.D.N.Y. Jul. 31, 2009) ..........................................................................19

*Parker v. Columbia Pictures Indus.*,
204 F.3d 326 (2d Cir. 2000)................................................................................18

*Pavelic & LeFlore v. Marvel Ent. Grp.*,
493 U.S. 120 (1989) ...........................................................................................11

*Rapoport v. Asia Elecs. Holding Co., Inc.*,
88 F. Supp. 2d 179 (S.D.N.Y. 2000)..................................................................10

*Rivero v. INTL FCStone Inc.*,
2015 WL 6128707 (S.D.N.Y. Oct. 19, 2015) .....................................................20

*S.E.C. v. Rio Tinto PLC*,
2020 WL 2504008 (S.D.N.Y. Mar. 9, 2020) ...................................................9, 15

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
417 F. Supp. 3d 379 (S.D.N.Y. 2019)...................................................................4

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
2021 WL 311003 (S.D.N.Y. Jan. 29, 2021) .....................................................4, 13

*Tardif v. City of New York*,
2016 WL 2343861 (S.D.N.Y. May 3, 2016) ........................................................16

*United States ex. re. Ladas v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016)...................................................................................20

*VNB Realty, Inc. v. Bank of Am. Corp.*,
2013 WL 5179197 (S.D.N.Y. Sept. 16, 2013)......................................................11

**RULES**

Fed. R. Civ. P. 11 ...............................................................................................7, 11

Fed. R. Civ. P. 12(b)(6).............................................................................................9

Fed. R. Civ. P. 16 ...............................................................................................8, 9

Defendants General Electric Co. ("GE") and Jeffrey S. Bornstein (together, "Defendants") submit this memorandum of law in opposition to Plaintiffs' Motion for Leave to File a Sixth Amended Consolidated Class Action Complaint (ECF No. 280, the "Motion," cited as "Mot.").[1]

## PRELIMINARY STATEMENT

With less than two weeks of fact discovery remaining in a case that has been pending since November 2017, and almost ten months after the Court-ordered deadline to file amendments, Plaintiffs seek leave to amend their pleadings for a *seventh* time in order to re-litigate and expand upon a twice-dismissed claim.  In the Motion, Plaintiffs purport to challenge Mr. Bornstein's answer on GE's January 20, 2017 fourth quarter earnings call to a question from a stock market analyst regarding factoring with GE Capital.  The Court previously dismissed claims premised on that statement because, in the same answer, Mr. Bornstein quoted historical factoring data, which undermined any inference of fraudulent intent.  Plaintiffs now seek to resuscitate their claims under the pretext that discovery has revealed that Mr. Bornstein lied on that call by responding that all of GE's industrial businesses collectively did $1.6 billion of factoring with GE Capital in 2016, when in fact they did many multiples of that, $20.4 billion.  In so doing, Plaintiffs seek to pivot from a case about whether GE disclosed enough about long-term factoring in GE Power, to one about Mr. Bornstein affirmatively misrepresenting to investors the factoring volume across all of GE and then engaging in a cover-up.  Plaintiffs' latest request to amend their complaint should be denied.

---

[1] Unless otherwise indicated herein, all internal citations and quotations are omitted, emphasis is added, and citations to "Ex. __" refer to exhibits attached to the Declaration of Blake T. Denton, submitted herewith.  Pursuant to the Court's January 21, 2022 Order (ECF No. 283), Defendants are concurrently filing a letter addressing portions of Plaintiffs' proposed sixth amended complaint ("P6AC") that should remain under seal.

*First*, Plaintiffs' Motion fails because the proposed amendment would be futile.   The challenged statement itself confirms that Mr. Bornstein never suggested that GE did a total of $1.6 billion of factoring in 2016; he said that there was a $1.6 billion "change" in the financial impact of factoring year-to-year from Q4 2015 to Q4 2016.   Nor could any reasonable investor believe that GE did only $1.6 billion of factoring in 2016, as GE's industrial businesses annually did tens of billions of dollars of factoring with GE Capital, which GE disclosed repeatedly to investors. Indeed, Plaintiffs omit that Defendants produced the contemporaneous back-up for the numbers in Mr. Bornstein's statement, which ties perfectly to his truthful statement on the earnings call. Moreover, Plaintiffs' manufactured story of a conspiracy among GE employees to cover up Mr. Bornstein's purported misstatement is unsupported by any well-pled allegations (and contradicted by the very document upon which the P6AC relies).

*Second*, the Motion should be denied due to Plaintiffs' lack of diligence and undue delay, as well as the prejudice to Defendants that would result from allowing Plaintiffs' proposed amendment.   Plaintiffs should not be rewarded for their untimely tactical decision to invent a false, bad-faith theory and present it to the Court as truth.   The Motion—unsupported by any attorney affidavit—is also tellingly silent on when Plaintiffs purportedly learned of any "new" information that would warrant changing the scope of this case at this late stage of the proceedings.   The fact that GE annually factored more than $1.6 billion of receivables was published in GE's SEC filings for years before Plaintiffs filed the Motion in January 2022, and the sole document that the Motion relies upon to support Plaintiffs' claim that GE factored "$20.4 billion" of receivables across all of its industrial businesses was produced on September 1, 2021.[2]   Plaintiffs' other "new"

---

[2] Prior to filing the Motion, Plaintiffs asked only a single witness about that document, and even then, did not ask the witness anything about the $20.4 billion figure that forms the basis of their proposed amendment. *See* Ex. 16, R. Green Dep. Tr., at 294:5-298:4.

allegations—most of which have nothing to do with Mr. Bornstein's January 20, 2017 statement—
are likewise sourced almost entirely from (i) allegations found in the December 2020 SEC consent
decree announcing the SEC's settlement with GE (the "SEC Order"); and (ii) documents produced
months ago.  Even if "facts" based on these documents could somehow support an amendment
(and they cannot), Plaintiffs offer no justifiable excuse for waiting so long to request leave to
pursue their latest flawed claim.

With the Court-ordered deadline for fact discovery now passed, Plaintiffs are out of
chances to fundamentally change their case theory.  The Motion should be denied.

## **BACKGROUND**

### A.   **Procedural History**

This action was filed in November 2017.  After multiple amended complaints, on October
17, 2018, Plaintiffs filed the Fourth Amended Complaint ("4AC").  In the 4AC (and in predecessor
complaints dating back to March 2018, ECF No. 73 ¶¶ 499, 508), Plaintiffs challenged a portion
of Mr. Bornstein's response to an analyst question—whether there was "any factoring this quarter
from GE Capital into GE industrial"—during GE's fourth quarter ("Q4") 2016 earnings call on
January 20, 2017.  Mr. Bornstein responded:

> …So within that accounts receivable performance you asked about
> factoring.  For the total year, factoring with GE Capital was a $1.6 billion
> change for the year.  It was $1.7 billion last year, so actually year-to-year it
> was $100 million less of a benefit in the year between what we did with GE
> Capital around factoring.  And in the fourth quarter importantly, and you
> see it because our receivables improved $500 million, is from the third to
> fourth quarter of 2015, the benefit was $2.3 billion, the benefit going from
> this past third quarter to this quarter was $700 million.
>
> So it was actually down $1.6 billion year-to-year between third and fourth
> quarter each of those years.  So there's very good underlying performance
> here.  It's not just about, it's actually very little to do with GE Capital
> factoring.

4AC ¶¶ 381-82 (emphasis removed); *see also* Ex. 5, Q4 2016 Earnings Call Tr. (Jan. 20, 2017). Plaintiffs alleged that Mr. Bornstein's statements that "there's very good underlying performance here," and "[i]t's not just about, it's actually very little to do with GE Capital factoring" were false or misleading "because, in fact, GE was heavily reliant on factoring to monetize its Contract Assets and to generate CFOA."  4AC ¶¶ 381-82.

On August 29, 2019, the Court dismissed the vast majority of the claims asserted in the 4AC, including all claims premised upon the January 20, 2017 statement challenged by Plaintiffs. In particular, the Court found that Mr. Bornstein's "simultaneous disclosure of the actual factored dollar amounts in 4Q 2015 and 2016 in the very same statement . . . undercuts any inference" of scienter.  *Sjunde AP-Fonden v. Gen. Elec. Co.*, 417 F. Supp. 3d 379, 414 (S.D.N.Y. 2019) ("*AP7 I*").  At that time, the Court granted Plaintiffs leave to file another amended complaint, even though "Plaintiffs already had one opportunity to amend their Complaint following Defendants' motion to dismiss, and were expressly warned that they would 'not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss.'"  *See id.* at 415 (quoting ECF No. 175).

On October 25, 2019, Plaintiffs filed the Fifth Amended Complaint ("5AC"), which again unsuccessfully challenged Mr. Bornstein's January 20, 2017 statement.  *See Sjunde AP-Fonden v. Gen. Elec. Co.*, 2021 WL 311003, at *11-12 (S.D.N.Y. Jan. 29, 2021) ("*AP7 II*") (citing *AP7 I*, 417 F. Supp. 3d at 414) (noting that "Plaintiffs offer[ed] no new facts to support a 'strong inference of scienter'" regarding the January 20, 2017 statement).  In addition to dismissing the vast majority of Plaintiffs' claims, the Court rejected Plaintiffs' request for leave to file another amended complaint based on allegations in the SEC Order that GE neither admitted nor denied, noting that the SEC settlement "concerns non-scienter-based violations of the Exchange Act," and that

"Plaintiffs have been given, and taken, multiple opportunities to amend their pleadings." *Id.* at *14.

Following the Court's order on Defendants' motion to dismiss the 5AC, the Court set the deadline to file any amended pleadings as March 29, 2021, noting that such a deadline was "amply justified, given the number of amended complaints that have already been filed and how long this has been pending." ECF No. 212 at 3:18-4:6; ECF No. 211 ¶ 5. The Court set the deadline for substantial completion of document production as August 5, 2021. ECF No. 211 at 6.

## B.      Fact Discovery and Plaintiffs' Midnight Amendment

Plaintiffs did not file an amended pleading by the Court-ordered deadline of March 29, 2021. Instead, the parties proceeded to fact discovery, and Defendants substantially completed their document production on August 5, 2021. As Plaintiffs concede in their Motion, 95% of the approximately 209,000 documents (totaling over 1 million pages) provided to Plaintiffs in this matter were produced by August 5, 2021. *See* Mot. at 3, 6. The small number of documents produced after the substantial completion deadline consisted primarily of transcripts and exhibits from SEC testimony (which were provided contemporaneously as the SEC delivered transcripts), documents produced during Defendants' privilege log review, and several smaller sets of documents belatedly requested by Plaintiffs. *See id.* at 12. Plaintiffs also noticed fifteen fact depositions, all but two of which are complete as of the submission of this brief.

On January 17, 2022, for the first time, Plaintiffs notified Defendants that they intended to seek leave to file an amended complaint in order to "replead a January 20, 2017 statement by Jeff Bornstein that the Court previously dismissed," and sought Defendants' position regarding the confidentiality of various documents upon which Plaintiffs' Motion purportedly would rely. *See* Ex. 17, Jan. 17, 2022 Email from E. Hoey. Defendants inquired as to the factual basis for the Motion, but Plaintiffs refused Defendants' inquiry. *See* Ex. 18, Jan. 19, 2022 Email from E. Hoey.

Of the thirty-seven documents listed in Plaintiffs' email (excluding deposition transcripts), ten were produced in April 2021, and an additional twenty-two were produced from June through September 2021. The remaining documents were produced in October and November 2021 and consisted of (i) a video, which accompanied a slide deck that was already produced to Plaintiffs, and (ii) four documents that were first produced in April and July 2021, but then reproduced with certain redactions removed. Plaintiffs do not claim to rely on any of the previously redacted information in support of their proposed amendment.

### C.     "New" Allegations in the Proposed Sixth Amended Complaint

In their proposed amendment, Plaintiffs seek to replead and expand upon the same January 20, 2017 statement challenged in the 4AC and 5AC (and in previous operative complaints)—that for 2016, "factoring with GE Capital was a $1.6 billion change for the year," and that for 2015, "[i]t was $1.7 billion," "so actually year-to-year it was $100 million less of a benefit in" 2016, and "there's very good underlying performance here. It's not just about, it's actually very little to do with GE Capital factoring." Mot. at 7. Plaintiffs now claim this statement was false because Mr. Bornstein falsely "represent[ed] that GE factored $1.6 billion in 2016 and $1.7 billion in 2015," when in fact GE did over $20 billion of factoring in 2016. *Id.* In support of this flawed argument, Plaintiffs cite a single slide in a presentation purporting to show that all of GE's industrial businesses collectively monetized $20.4 billion with GE Capital in 2016. *See* Mot. 7-8 (citing P6AC ¶¶ 568-72); Ex. 3, GE_SDNY00979605, at -13. Plaintiffs argue this document "confirm[s] that the extent of factoring with GE Capital in 2016 was vastly larger than [] $1.6 billion." *See* Mot. at 8.

Notably, Defendants produced the back-up that supported Mr. Bornstein's January 20, 2017 statement during discovery. An email sent just four days before the January 20, 2017 earnings call ████████████████████████████████████████████████████████████

█████ Ex. 4, GE_SDNY01013015, at -15.  In a slide titled█, ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████ *Id.* at -25.  The very year-over-year changes Mr. Bornstein referenced on

the January 20, 2017 earnings call—$1.6 billion and $1.7 billion, respectively—█████████

███████████.  *Id.*

Since the filing of this Motion, Plaintiffs revealed that they knew of this document all

along, but nonetheless decided to hide it from the Court.  On February 1, 2022 (less than one week

after filing the Motion), Plaintiffs' counsel deposed Mr. Bornstein and ████████████████

████████████████████████████  Specifically, Plaintiffs' counsel ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████ Ex. 19, J. Bornstein

Dep. Tr., at 207:14-208:10, 211:23-212:14, 215:6-216:8.  Despite these facts, Plaintiffs have still

not withdrawn the frivolous Motion wherein they assert that Mr. Bornstein lied to investors on the

January 20, 2017 earnings call by misrepresenting factoring numbers.[3]

Plaintiffs also allege a "post-hoc cover-up inside GE in the aftermath of [Mr.] Bornstein's

misrepresentations" to "more closely align[]" the 2016 10-K to the $1.6 billion figure Mr.

Bornstein provided on the earnings call.  Mot. at 9, 18 (citing P6AC ¶¶ 584-90).  This is fiction

contradicted by the very SEC testimony Plaintiffs purport to rely on for this new "fact."  *See* P6AC

¶¶ 586-90; Ex. 11, GE_SDNY00979103, M. Vitanza SEC Tr., at 158:19-25 (████████████

---

[3] Defendants reserve all rights, including the right to make a Rule 11 motion regarding Plaintiffs'
bad-faith request to amend.



). It also lacks any support from deposition testimony and other documents produced in this case. *See* Ex. 15, P. Mahajan Dep. Tr., at 69:24-70:6, 73:2-9 (

); *id.* at 126:4-12 (

); Ex. 14, M. Mascola Dep. Tr., at 173:17-21 (

; *id.* at 181:18-23 (

; Ex. 12, GE_SDNY00980498, B. Weverman SEC Tr., at 200:4-10 (

).

The remainder of Plaintiffs' new allegations relate generally to GE Power's factoring fees, interest expenses, deferred monetization balances, and other metrics throughout 2015, 2016, and 2017, which Plaintiffs largely sourced from the December 9, 2020 SEC Order.[4] *Compare* P6AC ¶¶ 530-32, 537, 539, 549-55, 558, 564-67, 570-74, *with* Ex. 10, SEC Order, at 2 & ¶¶ 4-5, 8, 11-14, 18; *see also* Mot. at 18.

## ARGUMENT

Where, as here, a plaintiff seeks leave to amend after a court-ordered deadline to do so, the plaintiff bears the burden of satisfying Rule 16(b)(4), which provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see, e.g.*,

---

[4] Many of Plaintiffs' new allegations have nothing to do with Mr. Bornstein's January 20, 2017 statement, with some even stretching back to 2015. *E.g.*, P6AC ¶¶ 525-32.

*Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009); Mot. at 9-10. The "primary consideration" in determining whether good cause exists within the meaning of Rule 16(b)(4) is "whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). A party cannot make a showing of diligence "when the proposed amendment rests on information that the party knew or should have known, in advance of the deadline." *DeCastro v. City of New York*, 2020 WL 4932778, at *7 (S.D.N.Y. Aug. 24, 2020). Other factors that may "dovetail" with the "good cause" analysis under Rule 16 include whether the plaintiff acted in bad faith and whether permitting amendment would result in undue prejudice to the opposing party. *See id.* at *10. Even where a plaintiff establishes good cause, courts deny leave to amend if the proposed amendment is "futile." *Friedman v. Endo Int'l PLC*, 2018 WL 2021561, at *2-3 (S.D.N.Y. Apr. 27, 2018). An amendment is "futile" if it cannot withstand a motion to dismiss under Rule 12(b)(6). *See, e.g., Chukwueze v. NYCERS*, 2013 WL 5878174, at *1 (S.D.N.Y. Nov. 1, 2013).

Courts generally require a plaintiff first to demonstrate good cause to amend before even considering whether the amendment is futile or otherwise improper. *See S.E.C. v. Rio Tinto PLC*, 2020 WL 2504008, at *7, *12 (S.D.N.Y. Mar. 9, 2020). However, courts retain their discretion to deny a motion to amend on any ground, including futility, regardless of whether a plaintiff has shown "good cause." *Id.*; *see also DeCastro*, 2020 WL 4932778, at *7.

## I.   PLAINTIFFS' PROPOSED AMENDMENT IS FUTILE

Leave to amend should be denied because there is no chance the P6AC would withstand a motion to dismiss, so permitting such an amendment would be futile.[5] *See Lucente v. Int'l Bus.*

---

[5] Defendants highlight certain of the salient deficiencies in the P6AC without prejudice to Defendants' ability to fully address those deficiencies at a later time, if necessary. If the Court grants the Motion, Defendants reserve the right to file a motion to dismiss the P6AC.

*Machines Corp.*, 310 F.3d 243, 258-60 (2d Cir. 2002). The Motion is based on contrived "facts" that are contrary to the very statement at issue, other public disclosures, and discovery produced in this case—materials Plaintiffs knew about but disregarded when presenting their new complaint to this Court.

Plaintiffs' Motion outright mischaracterizes the plain words of what Mr. Bornstein said. Plaintiffs claim Mr. Bornstein lied because he "represent[ed] that GE factored $1.6 billion in 2016 and $1.7 billion in 2015." Mot. at 7-8. But the transcript of his statements shows that is not what he said. Mr. Bornstein clearly used words of comparison ("change"; "year-to-year"; "less of a benefit") to explain that the financial impact of the industrial businesses' factoring with GE Capital changed by $1.6 billion from Q4 2015 to Q4 2016, and changed by $1.7 billion from Q4 2014 to Q4 2015. *Id.* at 7; *see also* Ex. 5, Q4 2016 Earnings Call Tr. (Jan. 20, 2017). Thus, the increased financial benefit of factoring from Q4 2015 to Q4 2016 was slightly lower than from Q4 2014 to Q4 2015, supporting Mr. Bornstein's statement that, comparing those quarters, "year-to-year it was $100 million less of a benefit." Plaintiffs cannot square their new reading of Mr. Bornstein's statement with the words on the page.[6] *See Rapoport v. Asia Elecs. Holding Co., Inc.*, 88 F. Supp.

---

[6] Without any factual basis, Plaintiffs claim that analyst Stephen Tusa was misled by Mr. Bornstein's statement. P6AC ¶ 581. Plaintiffs omit that Tusa issued several reports between May 2016 and March 2017 indicating that he understood that GE factored more than $1.6 billion in 2016 and $1.7 billion in 2015. Ex. 2, Stephen Tusa, et al. (J.P. Morgan), *FCF and Fundamental Risks Do Not Support Premium - Moving to a UW Rating and $27 Price Target from NR*, at 17, 172 (May 12, 2016) ("At the end of 2015, GE industrial customer receivables factored through a GE Capital affiliate as financing receivables by GE Capital totaled $13B, roughly 48% of the total consolidated current receivables . . . ."); Ex. 8, Stephen Tusa et al. (J.P. Morgan), *GE Cash Series: "Perspective" Is for Earnings, Cash Is a Fact; Day One, Working Capital*, at 7-8 (Mar. 28, 2017) ("Factored receivables on the GE capital balance sheet stand at $12.3B vs $13B in 2015 (note 2015 included ~$0.7B related to Appliance), and we note that Power had the biggest increase in factored receivables, up ~$1.8 y/y, offset by declines at all other segments."); *see also, e.g.*, Ex. 6, Nigel Coe et al. (Morgan Stanley), *Powering Down Our Estimates*, at 17 (Jan. 23, 2017) (providing a summary of the Q4 2016 earnings call transcript, including that "[f]or the total year, factoring with GE capital was $100m less of a benefit Y/Y.").

2d 179, 184 (S.D.N.Y. 2000) (if documents incorporated into the complaint "contradict the allegations of the amended complaint, the documents control and this Court need not accept as true the allegations in the amended complaint").

Plaintiffs' strained reading of Mr. Bornstein's statement is also at odds with facts that they know to be true. The back-up for Mr. Bornstein's January 20, 2017 statement was not only already produced to Plaintiffs in this case, ███████████████████████████████████████████████ ██████████. *See* Ex. 4, GE_SDNY01013015, at -25 (██████████████████████████████ ███████████████████. There can thus be no question that Plaintiffs are aware this back-up exists. And yet Plaintiffs chose not to tell the Court about it in the Motion, to file a bad-faith further amended complaint, and not to withdraw such complaint thereafter once it became indisputable that their theory is false. These tactics call into question Plaintiffs' duty of candor to the Court and duty under Rule 11 to confirm the truth of allegations before certifying them in a complaint as true. *See In re AOL, Inc. Repurchase Offer Litig.*, 2013 WL 6331802, at *3, *5 (S.D.N.Y. Dec. 5, 2013) (ordering sanctions where counsel violated Rule 11's requirement that "all factual contentions have evidentiary support"); *see also VNB Realty, Inc. v. Bank of Am. Corp.*, 2013 WL 5179197, at *7 (S.D.N.Y. Sept. 16, 2013) (attorneys have a "'personal, non-delegable responsibility' under Rule 11 to 'validate the truth and legal reasonableness of the papers filed'") (quoting *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989)).

Furthermore, Plaintiffs' contention that investors were under the misimpression that the industrial businesses only did $1.6 billion of factoring with GE Capital in 2016 is plainly refuted by GE's disclosures in its Forms 10-Q and 10-K. *See* Mot. at 7-8; *Livingston v. Cablevision Sys. Corp.*, 966 F. Supp. 2d 208, 219-20 (E.D.N.Y. 2013). For years, GE has engaged in factoring of receivables across its industrial businesses to more closely align the timing of outlay of cost by GE

to service the customer with the receipt of cash from the customer.  *See, e.g.*, Ex. 9, 2017 10-K, at 82.  These factored amounts numbered in the tens of billions of dollars per year across all of GE, and those amounts were disclosed.  *See, e.g.*, Ex. 1, 2015 10-K, at 156 ("GE industrial customer receivables [were] factored through a GE Capital affiliate and reported as financing receivables by GE Capital of $13,042 million and $12,533 million at December 31, 2015 and 2014").  Indeed, only weeks after Mr. Bornstein's statement on the January 20, 2017 earnings call, GE published its Form 10-K for the same period which disclosed $12.3 billion in "current" (i.e., due in less than one year) receivables on GE Capital's books as of year-end.  Ex. 7, 2016 10-K, at 87 ("As of December 31, 2016, GE Capital had approximately $12.3 billion recorded on its balance sheet related to current receivables purchased from GE.").  Investors could not be under the preposterous misimpression that GE did a total of only $1.6 billion of factoring in any given year of the Class Period.

The P6AC's allegations regarding *GE Power*'s long-term factoring program, interest payments, and customer discounts likewise do nothing to disprove Mr. Bornstein's statement. Mot. at 8 (citing P6AC ¶ 580), 18 (citing P6AC ¶¶ 525-83).  As Plaintiffs cannot dispute, GE Power was just *one* of GE's seven industrial businesses in 2016.  *See* P6AC ¶¶ 44, 78; Ex. 7, 2016 10-K, at 18.  On the January 20, 2017 earnings call, Mr. Bornstein was asked about factoring with GE Capital by all of GE's industrial businesses combined, not any one in particular, and that is what he addressed in his response.  Mot. at 6-7; *see In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *13 (S.D.N.Y. Apr. 2, 2020) (failure to disclose issues in company's metals segment did not render statements about plan to achieve company-wide margin expansion false or misleading). Plaintiffs' proposed amendments—which thus serve merely to "add details" regarding GE Power—do not establish that Plaintiffs would have any likelihood of salvaging their previously

dismissed claim.  *See Gorman v. Entergy Nuclear Operations, Inc.*, 2006 WL 4774619, at *6 (S.D.N.Y. Apr. 14, 2006), *aff'd*, 488 F.3d 586 (2d Cir. 2007); *see also In re Aluminum Warehousing Antitrust Litig.*, 2016 WL 1629350, at *8 (S.D.N.Y. Apr. 25, 2016) (rejecting amendments that "constitute[d] mere clarifications of plaintiffs' existing allegations").

The Motion also fails to identify any proposed amendments that could amount to a showing of recklessness or more with respect to Mr. Bornstein's January 20, 2017 statement.  The non-fraudulent inference—that Mr. Bornstein relied on and disclosed figures provided to him in responding to an analyst's question—is certainly more compelling than Plaintiffs' theory that Mr. Bornstein decided on the spot to lie about the extent of factoring by providing random numbers to an analyst that the entire GE corporate team then attempted to hide rather than immediately correct. *See In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 466 n.83 (S.D.N.Y. 2006) (illogical allegations do not raise a strong inference of scienter).

Ultimately, Plaintiffs have nothing new to say about the portion of Mr. Bornstein's statement that this Court previously dismissed, i.e., "So there's very good underlying performance here.  It's not just about, it's actually very little to do with GE Capital factoring."  Mot. at 7.  The simultaneous disclosure of the increases in the financial impact of factoring year over year still disproves the claim that Mr. Bornstein misled investors about the extent of factoring and undermines any inference of scienter, *see AP7 II*, 2021 WL 311003, at *11-12, and the statement is also still an inactionable opinion statement, as well as corporate optimism that is "too general to cause a reasonable investor to rely upon" it, *see, e.g.*, *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009).

Finally, Plaintiffs claim to have added allegations establishing a "post-hoc cover-up" supposedly aimed at "strip[ping] out billions of dollars in long-term receivables factoring

transactions" from the 2016 Form 10-K to "more closely align[]" the 2016 Form 10-K to Mr. Bornstein's figures.  Mot. at 9, 18 (emphasis omitted).  This entire cover-up story makes no sense given that Mr. Bornstein plainly did not tell investors that GE did only $1.6 billion of factoring in 2016.  But, in any event, once again the very discovery upon which Plaintiffs rely contradicts that supposed connection between the January 20, 2017 earnings call and the 2016 Form 10-K.  *See* P6AC ¶¶ 586-90; Ex. 11, GE_SDNY00979103, M. Vitanza SEC Tr., at 158:19-25 (███████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████).  Rank speculation that there "must have been" a conspiracy is insufficient to meet Plaintiffs' burden.  *Cf. In re AOL, Inc. Repurchase Offer Litig.*, 966 F. Supp. 2d 307, 314-15 (S.D.N.Y. 2013) ("conspiracy theory" allegations were "mere speculation" insufficient to survive motion to dismiss where they were "recklessly made without any factual support").

With no well-pled allegations to support falsity or scienter for the January 20, 2017 statement, Plaintiffs' proposed amendment would be futile, and their Motion must be denied.

## II.     NO GOOD CAUSE EXISTS FOR PLAINTIFFS' PROPOSED AMENDMENT

Regardless of whether Plaintiffs' proposed amendment would have any chance of success (and it would not), the Motion should be denied because Plaintiffs cannot establish "good cause" under settled law:  The "facts" relied upon for their unfounded theory were all available well before January 2022, and allowing amendment after four years and the completion of fact discovery would prejudice Defendants.

### A.     Plaintiffs Have Not Demonstrated Diligence

Plaintiffs have not demonstrated, as they must, that they acted diligently or in good faith in pursuing their factually baseless amendment.  Nor could they.  Plaintiffs' proposed amendment

relies on a made-up theory contrary to common sense and documents Plaintiffs themselves used in a deposition less than a week after filing the Motion.

Moreover, Plaintiffs' failure to tell the Court when they first contemplated amending their complaint and when they first learned the facts underlying each of their proposed amendments is dispositive. *See 246 Sears Road Realty Corp. v. Exxon Mobil Corp.*, 2012 WL 4174862, at *10 (E.D.N.Y. Sept. 18, 2012) (denying leave to amend where plaintiff merely claimed it "first learned of the facts forming the basis of its fraud claim in discovery"). Plaintiffs cannot demonstrate diligence by vaguely complaining of (untrue) discovery delays with no connection to their proposed amendments, particularly where, as here, the deadline for amended pleadings ordered by the Court occurred months before the completion of fact discovery. *See Rio Tinto*, 2020 WL 2504008, at *9 ("Limiting the time to file further motions to amend in the Scheduling Order is not a meaningless technicality.").

In any event, even if Plaintiffs' theory about Mr. Bornstein's January 20, 2017 statement were somehow tenable (which it is not), the purported discrepancy in Mr. Bornstein's statement— that the amount of receivables factored by GE Capital across all of GE's industrial businesses was "greater than" $1.6 billion in 2016, Mot. at 2—was readily apparent to Plaintiffs years before January 2022. *See, e.g.*, Ex. 7, 2016 10-K, at 87 ("As of December 31, 2016, GE Capital had approximately $12.3 billion recorded on its balance sheet related to current receivables purchased from GE."); *see also supra* at 11-12. If Plaintiffs truly believed, as they posit now, that Mr. Bornstein stated that GE factored only $1.6 billion of receivables in 2016, there were multiple public filings dated prior to the filing of the 4AC and 5AC (as well as the Court's decisions on motions to dismiss both complaints) that would flag any purported discrepancy. *See supra* at 11-12.

Even if GE's public disclosures did not long ago put Plaintiffs on notice of the potential

theory they now seek to advance, the amendment would still be untimely. Defendants produced a

majority of the documents that Plaintiffs claim to have relied upon for their amendment *more than*

*five months ago*, prior to the August 5, 2021 deadline for substantial completion. Yet Plaintiffs

offer no explanation for failing to move to amend until now—nearly ten months after the March

29, 2021 deadline to move to amend and as the sun sets on fact discovery—other than "need[ing]

time." Mot. at 12. That is insufficient to meet Plaintiffs' burden to excuse an untimely

amendment. *See Accelecare Wound Ctrs., Inc. v. Bank of N.Y.*, 2009 WL 2460987, at *3 (S.D.N.Y.

Aug. 11, 2009) (delay of six weeks after receiving purportedly new information is an "unexplained

delay [that] demonstrates a lack of diligence and, accordingly, a lack of good cause justifying

granting leave to amend"); *Tardif v. City of New York*, 2016 WL 2343861, at *5 (S.D.N.Y. May

3, 2016) (five-month gap precluded good cause); *Gullo v. City of New York*, 540 F. App'x 45, 47

(2d Cir. 2013) (three-month delay was not diligent); *In re Aluminum*, 2016 WL 1629350, at *7

(no good cause where plaintiffs had access "to adequate documents and information to allow them

to make their most significant proposed amendments" months earlier).[7]

Nor do Plaintiffs provide any "good cause" to include their extraneous allegations

unrelated to the January 20, 2017 statement in the P6AC. Plaintiffs characterize their proposed

---

[7] Plaintiffs' cited cases are inapposite. *See* Mot. at 11. In *Ambac Assurance Corporation v. EMC Mortgage Corporation*, 2010 WL 11595698 (S.D.N.Y. Dec. 16, 2010), the plaintiff had not previously pled a Section 10(b) claim and defendant notified the court and defendant within a few months after depositions began that it intended to amend the complaint, which allowed the Court to pause discovery and set a briefing schedule. *Id.* at *4, *7. Similarly, in *Industrial Technology Ventures, L.P. v. Pleasant T. Rowland Revocable Trust*, 280 F.R.D. 86 (W.D.N.Y. Feb. 17, 2012), the plaintiff sent defendants a draft of its proposed amended complaint prior to key depositions, and moved for leave to amend shortly after the depositions. *Id.* at 93. Here, however, Plaintiffs waited until the end of fact discovery, refused to share their proposed amendment (or even the basis for it) with Defendants prior to filing, added new claims never before alleged, and fact discovery will be closed prior to the completion of briefing on their Motion.

amendment as "narrow" and necessary "simply [to] re-plead" a previously dismissed alleged misstatement, but the P6AC belies their claim. *See* Mot. at 1. Rather than allege particularized facts regarding the January 20, 2017 statement, the P6AC discusses events that took place two years before the alleged misstatement was made. For example, the P6AC asserts that GE began factoring long-term receivables at a yet again unspecified date in 2015, despite the fact that the purported start of the practice is irrelevant to the falsity of Mr. Bornstein's statement on January 20, 2017. *E.g.*, P6AC ¶¶ 525-32. The length and irrelevance of many of the new allegations in the P6AC are strong evidence that Plaintiffs' amendment is motivated not by the discovery of new evidence, but by some other reason—potentially a desire to avoid an adverse ruling on Plaintiffs' pending class certification motion and proposed class period, *see* ECF No. 245 at 9-12,[8] or to expand their allegations and potential damages to encompass claims about all factoring (instead of just long-term receivables) in all of GE's industrial businesses (instead of just GE Power). Neither supports leave to amend. *See, e.g.*, *Colliton v. Cravath, Swain & Moore LLP*, 2008 WL 4386764, at *6, *10, *13 (S.D.N.Y. Sept. 24, 2008) (denying leave to amend where plaintiff sought to include allegations that expanded the time during which the challenged conduct occurred after defendant, based on plaintiff's original complaint, argued that the claims were barred by a statute of limitations), *aff'd*, 356 F. App'x 535 (2d Cir. 2009); *Capak v. Epps*, 2020 WL 2543092, at *2 (S.D.N.Y. Apr. 7, 2020) ("A court also may deny a request for leave to amend where the request was made in bad faith or for tactical reasons"); *Kant v. Columbia Univ.*, 2010 WL 807442, at *7 (S.D.N.Y. Mar. 9, 2010) ("[W]here it appears that a plaintiff's purpose in asserting a new claim is

---

[8] That would fail, including because the P6AC also concedes that GE disclosed the CFOA impact of all factoring in its disclosures prior to the 2016 10-K. *See* P6AC ¶ 587.

his or her anticipation of an adverse ruling on the original claims, the court will deny leave to amend.").[9]

Plaintiffs' remaining attempts to show that they have acted diligently fail on their face. Plaintiffs claim that they were diligent because they sought leave to amend prior to the completion of fact discovery, Mot. at 12, but fact discovery will be completed before briefing on the Motion concludes, *see* ECF No. 269. Plaintiffs also say that they did not receive Mr. Bornstein's sworn SEC testimony until December 26, 2021, Mot. at 3, but they simply disregard his testimony, which provides no support for their absurd new theory of falsity. *See* Ex. 13, GE_SDNY01013601, J. Bornstein SEC Tr., at 392:20-23 (████████████████████████████████), 396:23-398:4 (████████████████████████████████). Lastly, Plaintiffs assert that they did not know the SEC investigation was ongoing in March 2021, Mot. at 11, ignoring that not only is that irrelevant to Plaintiffs' claims in this case, but they have been receiving SEC deposition transcripts from Defendants for months. In any event, as a plaintiff in a related case noted on March 29, 2021 in its amended complaint, "[w]hen the SEC announced its settlement with GE it described its investigation as 'ongoing'. . . . " *See Touchstone Strategic Trust et al. v. Gen. Elec. Co.*, 1:19-cv-01876, ECF No. 18 ¶ 16.

---

[9] Plaintiffs' new allegations also mirror the publicly available SEC Order and other public documents that were available well before March 29, 2021 and certainly before January 29, 2022; they do not depend on any separate new facts that Plaintiffs could only discover recently through documents produced in this litigation. *See supra* at 11-12, 15; *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340-41 (2d Cir. 2000) (no good cause when plaintiff was aware of possible claims and certain facts "prior to and throughout the course of th[e] litigation"); *see also In re Petrobras Sec. Litig.*, 2016 WL 3144395, at *3 (S.D.N.Y. May 5, 2016) ("[G]ranting plaintiffs' request would amount to an end run around the PSLRA. Plaintiffs would receive the benefits of discovery without adequately pleading scienter before discovery began."); *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 391-92 (S.D.N.Y. 2013) ("[T]he PSLRA restricts the circumstances in which amendment should be granted," and "amendment should be granted less freely when a complaint subject to the PSLRA is dismissed").

Because Plaintiffs do not and cannot demonstrate that they acted diligently in pursuing their baseless motion to amend at this late stage, the Motion should be denied. *E.g.*, *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2006 WL 2242596, at *4 (S.D.N.Y. Aug. 3, 2006) ("Delay can act as a predicate for finding of bad faith, and bad faith is a sufficient reason to deny leave to amend"); *Anwar v. Fairfield Greenwich Ltd.*, 283 F.R.D. 193, 197 (S.D.N.Y. 2012) ("delay was undue because 'the information [in the proposed amended complaints] was known to Plaintiffs when this action was first filed,' and the new claims were 'not dependent upon evidence revealed in the course of discovery'").

## B.      Plaintiffs' Proposed Amendment Is Prejudicial

In ruling on a motion to amend, courts also consider whether amendment would unduly prejudice the defendant. *See DeCastro*, 2020 WL 4932778, at *10.  Here, Plaintiffs argue that the P6AC does not prejudice Defendants because the "alleged misrepresentations are based [on] the same theory of fraud that Plaintiffs are currently prosecuting."  Mot. at 14.  Yet Plaintiffs also claim that they could not have moved earlier because "the facts that form the basis of the proposed amendment" were not revealed until discovery.  *See id.* at 3-4, 11, 14.  Either the P6AC pleads claims and asserts facts that Plaintiffs had no way of discovering until very recently, or it realleges no new issues.  Plaintiffs' attempt to have it both ways demonstrates the incoherence of their position and reveals the prejudice of amendment to Defendants.  *See In re Aluminum*, 2016 WL 1629350, at *7 ("[T]o the extent that plaintiffs argue that they could not have learned of the facts they now seek to add until this late stage, that claim is flatly contradicted by their assertion that the amendments allege the same case that the parties have been litigating from the outset . . . this contradiction nonetheless renders their diligence arguments incredible at the outset."); *see also Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, 2009 WL 2432729, at *3 n.3 (S.D.N.Y. Jul. 31, 2009) (same).

Plaintiffs are also wrong that allowing the P6AC will "require minimal expenditure of additional time or resources" and will not "require the extension of existing case deadlines." Mot. at 15. At the very least, Defendants will move to dismiss the additional claims, necessitating yet another round of motion to dismiss briefing. Forcing Defendants to brief and the Court to decide a claim that the Court has already dismissed twice is "a colossal waste of judicial resources." *Rivero v. INTL FCStone Inc.*, 2015 WL 6128707, at *3 (S.D.N.Y. Oct. 19, 2015); *see Nairobi Holdings*, 2006 WL 2242596, at *8 ("the amendment would cause defendants undue prejudice" where "[d]efendants intended to file another motion to dismiss if leave to amend were granted, which would only further delay the resolution of the dispute"); *see also United States ex. re. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (leave to amend should generally be denied in instances of "repeated failure to cure deficiencies by amendments previously allowed").[10] Rather than proceeding with expert discovery and summary judgment, the case will grind to a halt, further prolonging the resolution of this litigation. *See DeCastro*, 2020 WL 4932778, at *10-11; *see also 380544 Can., Inc. v. Aspen Tech., Inc.*, 2011 WL 4089876, at *5 (S.D.N.Y. Sept. 14, 2011) ("Should any of the Defendants seek to move to dismiss the amended claims . . . additional discovery would be stayed under the PSLRA [and that] would significantly delay proceedings which have already consumed four and a half years, thereby prejudicing Defendants.").

---

[10] Plaintiffs' reliance on *Lickteig v. Cerberus Capital Management, L.P.*, 2020 WL 7629876 (S.D.N.Y. Dec. 22, 2020), for, among others, the contention that there is no "categorical bar on amending PSLRA complaints," Mot. at 16, is to no avail. Unlike here, the amendment in *Lickteig* was based upon documents produced in a *separate* litigation, did not raise a new claim, and was filed less than two months after the deadline for amendments and a week after plaintiff came into possession of those documents. *Id.* at *1-2, *4-6. *In re Pfizer Inc. Securities Litigation* is likewise of no use to Plaintiffs because plaintiffs there filed their proposed amendment in accordance with the court's scheduling order. 2012 WL 983548, at *1-2 (S.D.N.Y. Mar. 22, 2012).

## <u>CONCLUSION</u>

Because Plaintiffs lack good cause in support of their Motion and any such amendment

would be futile, Plaintiffs' Motion should be denied.

Dated: New York, New York
       February 3, 2022

Respectfully submitted,

LATHAM & WATKINS LLP

By:  <u>/s/ Sean M. Berkowitz</u>
      Sean M. Berkowitz (*pro hac vice*)
      330 North Wabash Avenue, Suite 2800
      Chicago, Illinois 60611
      (312) 876-7700
      sean.berkowitz@lw.com

William J. Trach (*pro hac vice*)
200 Clarendon Street
Boston, Massachusetts 02116
(617) 948-6000
william.trach@lw.com

Blake T. Denton
Jooyoung Yeu
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200
blake.denton@lw.com
jooyoung.yeu@lw.com

Sarah A. Tomkowiak (*pro hac vice*)
555 Eleventh Street NW
Washington, D.C. 20004
(202) 637-2200
sarah.tomkowiak@lw.com

Colleen C. Smith (*pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5450
colleen.smith@lw.com

*Attorneys for Defendants General Electric*
*Company and Jeffrey S. Bornstein*