**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SJUNDE AP-FONDEN and THE
CLEVELAND BAKERS AND
TEAMSTERS PENSION FUND,
individually and on behalf of all others
similarly situated,

                          Plaintiffs,

    v.

GENERAL ELECTRIC COMPANY and
JEFFREY S. BORNSTEIN,

                         Defendants.

Case No. 1:17-CV-8457-JMF-GS

Hon. Jesse M. Furman

# <u>JOINT PRETRIAL STATEMENT</u>

## I.    FULL CAPTION OF THE ACTION

The parties respectfully refer the Court to the caption heading in this document as an accurate and complete statement of the full caption in this matter.

## II.    TRIAL COUNSEL

### 1.    <u>Counsel for Plaintiffs and the Class</u>

Gregory M. Castaldo
Sharan Nirmul
Richard A. Russo, Jr.
Jamie M. McCall
Joshua A. Materese
Austin W. Manning
**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
gcastaldo@ktmc.com
snirmul@ktmc.com
rrusso@ktmc.com
jmccall@ktmc.com
jmaterese@ktmc.com
amanning@ktmc.com

Daniel L. Berger
Karin E. Fisch
Vincent J. Pontrello
Cecilia E. Stein
Alexandra E. Forgione
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
(646) 722-8500
dberger@gelaw.com
kfisch@gelaw.com
vpontrello@gelaw.com
cstein@gelaw.com
aforgione@gelaw.com

### 2.    <u>Counsel for Defendants</u>

William J. Trach
**LATHAM & WATKINS LLP**
200 Clarendon Street
Boston, MA 02116
(617) 948-6000
william.trach@lw.com

Sean M. Berkowitz
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
sean.berkowitz@lw.com

Colleen C. Smith
**LATHAM & WATKINS LLP**
12670 High Bluff Drive

Blake T. Denton
Jooyoung Yeu
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
blake.denton@lw.com
jooyoung.yeu@lw.com

Sarah A. Tomkowiak
**LATHAM & WATKINS LLP**
555 Eleventh Street NW
Washington, D.C. 20004
(202) 637-2200
sarah.tomkowiak@lw.com

San Diego, CA 92130
(858) 523-5450
colleen.smith@lw.com

Matthew T. Martens                    Timothy J. Perla
**WILMER CUTLER PICKERING HALE**       **WILMER CUTLER PICKERING HALE**
**AND DORR LLP**                       **AND DORR LLP**
2100 Pennsylvania Avenue NW            60 State Street
Washington, D.C. 20037                Boston, MA 02109
(202) 663-6000                        (617) 526-6000
matthew.martens@wilmerhale.com        timothy.perla@wilmerhale.com

## III.    SUBJECT MATTER JURISDICTION

### 1.    Plaintiffs' Statement

Plaintiffs' claims arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

### 2.    Defendants' Statement

Defendants do not challenge Plaintiffs' stated basis for subject matter jurisdiction.

## IV.    SUMMARY OF CLAIMS AND DEFENSES

### 1.    Plaintiffs' Statement Of Their Claims

Plaintiffs assert two causes of action on behalf of a certified class consisting of all individuals and entities who purchased or otherwise acquired GE common stock between February 29, 2016 and October 19, 2017, inclusive (the "Class Period").[1] One, Plaintiffs assert that the

---

[1] On April 11, 2022, the Court issued an order certifying a class of purchasers of GE common stock between February 29, 2016 and January 23, 2018. *See* ECF. No. 314 at 10. Notice was issued to the certified Class in June 2022 with a deadline for class members to opt out on or before August 15, 2022. *See, e.g.,* ECF No. 342. On September 28, 2023, the Court issued a decision granting in part and denying in part Defendants' motion for summary judgment. ECF No. 413. By operation of that order, the Court dismissed all claims arising after October 19, 2017. Accordingly, the Class Period is now defined to exclude those dismissed claims.

General Electric Company ("GE") and Jeffrey Bornstein ("Bornstein," and together with GE, "Defendants") violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78b, and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (the "Section 10(b) Claim"). Two, Plaintiffs assert that Bornstein violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (the "Section 20(a) Claim"). *See* ECF No. 327 (the "Complaint") at ¶¶ 591-603.

### i.  Section 10(b) Claim

The elements of Plaintiffs' Section 10(b) Claim are: (1) Defendants misstated or omitted a material fact in connection with the purchase or sale of securities; (2) Defendants acted with scienter, i.e., knowingly or recklessly; (3) Defendants used an instrumentality of interstate commerce or a facility of a national security exchange in connection with the sale of GE common stock; (4) Plaintiffs justifiably relied on Defendants' false or misleading statement of a material fact or omission of a material fact in purchasing GE common stock; and (5) Defendants' false or misleading statement or omission caused Plaintiffs to suffer damages. *See* 15 U.S.C. § 78b; 17 C.F.R. § 240.10b-5. [2]

Plaintiffs will prove that Defendants violated Section 10(b) by: (1) making material misrepresentations in GE's 2016 Form 10-K about GE's factoring; and (2) by Bornstein's material misrepresentations during GE's January 20, 2017 earnings call regarding the extent of GE's use of factoring, including long-term factoring, to generate Industrial CFOA. *See* ECF No. 413 (Opinion and Order ("Summary Judgment Order")) at 8. In addition, Plaintiffs will prove at trial that Defendants violated Section 10(b) by omitting from their public disclosure documents information

---

[2] On March 21, 2024, the Court issued an Order granting Plaintiffs' Motion to Bifurcate Trial, ordering that the trial be bifurcated in two phases: one addressing all class-wide issues related to liability and damages (Phase One), and, in the event the jury returns a verdict in Plaintiffs' favor during Phase One, a second phase addressing individualized issues of reliance and individual damages calculations for both Plaintiffs and absent class members (Phase Two). *See* ECF No. 454.

required to be disclosed to investors pursuant to Item 303 of Regulation S-K ("Item 303").[3] Item 303 requires disclosure of known trends demands, commitments, events, or uncertainties that are reasonably likely to have a material impact on GE's liquidity, cash flows, and results from operations. In particular, Plaintiffs will prove that Defendants violated Item 303 by failing to disclose GE's reliance on long-term factoring and deferred monetization transactions to generate Industrial cash flows from operating activities ("Industrial CFOA") and to conceal the gap between GE's Industrial CFOA and its publicly-disclosed cash flow targets. *See* Summary Judgment Order at 8 (quoting 17 C.F.R. § 229.303(a)(1), (a)(3)).

### ii. Section 20(a) Claim

The elements of Plaintiffs' Section 20(a) Claim are: (1) a primary violation of Section 10(b); (2) the defendant exercised direct or indirect control over the primary violator; and (3) the defendant was a culpable participant in the primary violation. *See* 15 U.S.C. § 78t(a); Summary Judgment Order at 10 n.3. Plaintiffs will prove that GE violated Section 10(b) and that Defendant Bornstein exercised direct control over GE and participated in its violations. Thus, Bornstein violated Section 20(a).

### iii. Dismissed Claims Not to Be Tried

Plaintiffs will not assert at trial their previously-asserted claims against any dismissed defendant, or their previously-asserted claims arising out of alleged misstatements and omissions made by Defendants: (1) prior to February 29, 2016 or after October 19, 2017; (2) about the risk and quality of GE's long-term care ("LTC") insurance portfolio; or (3) about GE's accounting and revenue recognition practices with respect to certain long-term service agreements. *See* ECF No.

---

[3] Defendants' position that an alleged Item 303 violation cannot form the basis of a Section 10(b) violation, *see infra* n.5, is contrary to Second Circuit precedent. *See Stratte-McClure v. Stanley*, 776 F.3d 94, 100 (2d Cir. 2015) ("We conclude, as a matter of first impression in this Court, that a failure to make a required Item 303 disclosure . . . is indeed an omission that can serve as the basis for a Section 10(b) securities fraud claim.").

206 (Opinion and Order granting in part and denying in part Defendants' motion to dismiss the Fifth Amended Complaint); ECF No. 314 (Opinion and Order granting Plaintiffs' motion for class certification).

## 2.    Defendants' Statement Of Their Defenses

Plaintiffs assert three claims under Sections 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), as well as Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, against Defendants General Electric Company ("GE") and Jeffrey S. Bornstein.[4] Plaintiffs also seek to hold Mr. Bornstein liable as a "control person" under Section 20(a) of the Exchange Act in connection with the foregoing alleged violations.   15 U.S.C. § 78t(a).   Defendants deny Plaintiffs' allegations and dispute their description of the alleged facts.  A non-exhaustive list of Defendants' defenses follows below.

### i.    Plaintiffs Cannot Establish Their Section 10(b) And Rule 10b-5 Claims

In order to prove that Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5, Plaintiffs bear the burden of establishing:  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563

---

[4] Plaintiffs initially sought to certify a class between March 2, 2015, through January 23, 2018, inclusive. *See* ECF No. 219 at 1.  On April 11, 2022, the Court certified a class for the period of February 29, 2016, through January 23, 2018, reasoning that "Plaintiffs' earliest remaining claim is that GE failed to disclose a trend of factoring LTSA receivables 'from 2015 on' and, thus, the first omission occurred in GE's 10-K for 2015." *See* ECF No. 314 (Opinion and Order Granting In Part Plaintiffs' Motion for Class Certification ("Class Certification Order")) at 7-8, 10.  On September 28, 2023, the Court issued a decision granting in part and denying in part Defendants' motion for summary judgment.  *See* ECF No. 413 (Opinion and Order Granting In Part Defendants' Motion for Summary Judgment ("Summary Judgment Order")).  The Court reasoned that "Plaintiffs fail altogether to demonstrate loss causation for disclosures between November 2017 and January 2018" and granted Defendants' motion for summary judgment "as to claims arising from the alleged corrective disclosures between November 2017 and January 2018." *Id.* at 30-31.  As explained further below, in light of the United States Supreme Court's unanimous decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024), it is Defendants' position that the Class Period should be shortened to begin no earlier than January 20, 2017, the date of the first challenged affirmative misstatement.

U.S. 27, 37-38 (2011); 17 C.F.R. §240.10b-5; 15 U.S.C. § 78j(b).  Plaintiffs cannot meet any of these burdens of proofs at trial.

*First*, Plaintiffs will not satisfy their burden of establishing that Defendants made any material misrepresentation or omission, as Defendants made no false or materially misleading statements to investors, nor were Defendants under any obligation to disclose more than their comprehensive disclosures already provided.  Plaintiffs accordingly will not meet their burden to prove any misstatement actionable under Section 10(b) or Rule 10b-5.

With respect to Plaintiffs' claims based on Item 303 of Regulation S-K, *see* 17 C.F.R. § 229.303, pursuant to this Court's April 15, 2024 Order, *see* ECF No. 457 at 4, Defendants filed a letter with the Court in which they explained that these claims must be dismissed in light of the United States Supreme Court's unanimous decision in *Macquarie*.  *See* ECF No. 458.  On May 10, 2024, the Court disagreed with Defendants, reasoning that "Plaintiffs' Item 303-based claims do not appear to be 'pure omission' claims" and that "the gravamen of Plaintiffs' claims is that 'Defendants' Item 303 omissions rendered GE's Class Period financial disclosures . . . 'materially misleading.'"  ECF No. 464 at 2-3.  Although Defendants disagree with the Court and reserve all rights with respect to the same, Defendants maintain that Plaintiffs will not meet their burden of proving that Defendants failed to disclose a known trend or uncertainty reasonably likely to have a material impact on GE's liquidity in violation of Item 303 or that such an alleged omission rendered any affirmative statement made false or misleading.

*Second*, Plaintiffs will not satisfy their burden of establishing that Defendants acted with scienter, namely a "mental state embracing intent to deceive, manipulate, or defraud" as to each alleged misrepresentation or omission.  *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); 15 U.S.C. § 78u-4(b)(2).  In the Second Circuit, this requirement can be satisfied by

showing that Defendants either acted knowingly or with deliberate recklessness.  *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009).

*Third*, Plaintiffs will not satisfy their burden of showing that they justifiably relied on any alleged misstatements or omissions.  *Basic Inc. v. Levinson*, 485 U.S. 224, 243-45 (1988); *see also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275-76 (2014).[5]  During Phase One of the trial, Defendants plan to challenge Plaintiffs' ability to invoke the *Basic* presumption of class-wide reliance, and also plan to argue that the presumption (if established as a prima facie matter) is nonetheless rebutted on a class-wide basis.[6]

*Fourth*, Plaintiffs will not satisfy their burden of establishing either economic loss or loss causation, *i.e.*, "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff."  *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2022 WL 151302, at *2 (2d Cir. Jan. 18, 2022) (quoting *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005)).  Among other issues, Plaintiffs will not be able to establish a causal link between the alleged fraud and the purportedly corrective events Plaintiffs identify, or meet their burden to "'disaggregate' losses caused by 'disclosures of the truth behind the alleged misstatements' from losses caused by other factors."  *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 477 F. Supp. 3d 88, 110 (S.D.N.Y. 2020) (citing *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009)).

---

[5] On March 21, 2024, this Court denied Defendants' Motion for Bifurcation and granted Plaintiffs' Motion for Bifurcation, holding that "trial will be bifurcated, with a Phase One limited to class-wide issues concerning liability and damages; and, only if necessary, a Phase Two addressing individual issues, including class member damages and any individual issues concerning reliance of both Class Representatives and other class members."  ECF No. 454 (Opinion and Order Denying Defendants' Motion for Reconsideration and Bifurcation, and Granting Plaintiffs' Motion for Bifurcation ("Reconsideration & Bifurcation Order")) at 4-7.

[6] Defendants reserve the right to rebut the presumption of reliance on an individual class-member basis, including as to each of the Plaintiffs, in Phase Two of the trial, should Plaintiffs prevail in Phase One.

*Finally*, Defendants have also pled other affirmative and dispositive defenses which remain to be tried.  *See* ECF No. 208 at 30-36; ECF No. 339 at 1.  These defenses, to the extent they have not been discussed elsewhere in Defendants' pretrial statement, include:[7]

(1) Defendants acted at all times in good faith and did not directly or indirectly induce any act or acts alleged to constitute a violation of law, and every act or omission was done or omitted in good faith conformity with the rules and regulations of the SEC, and therefore, pursuant to Section 23(a) of the Exchange Act, there is no liability for any act or omission so alleged;

(2) Any recovery for damages allegedly incurred by Plaintiffs and members of the class, if any, is subject to offset in an amount including, but not limited to, any tax or other benefits actually received by Plaintiffs or the class members through their investments; and

(3) Defendants at all times, acted in good faith and did not directly or indirectly induce any acts constituting the alleged violations and causes of action, *see* 15 U.S.C. §78t(a).

### ii.  **Plaintiffs Cannot Establish Their Section 20(a) Claim**

In order to establish a Section 20(a) violation, Plaintiffs must show:  (1) a primary violation; (2) control of the primary violator; and (3) culpable participation in the controlled person's fraud. *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014); 15 U.S.C. §78t(a).  Plaintiffs will be unable to meet their burden here because they cannot prove any primary violation, much less Mr. Bornstein's culpable participation in any fraud, which would require a showing of "at least approximating recklessness in the Section 10(b) context."  *Friedman v. JP Morgan Chase & Co.*, 2016 WL 2903273, at *10, *12 (S.D.N.Y. May 18, 2016).

---

[7] Specifically, several of the affirmative defenses listed in Defendants' answer, *see* ECF No. 208 at 30-36, are ones on which Defendants do not bear the burden of proof, but instead pertain to elements of Plaintiffs' claims for which Plaintiffs bear the burden of proof at trial.  Accordingly, Defendants' decision not to include such affirmative defenses here is not a concession that Plaintiffs can meet their burden to prove any element of their alleged claims, nor is it a waiver of Defendants' right to challenge Plaintiffs' ability to prove their claims.  Further, Defendants withdrew their thirty-second affirmative defense—namely, that "Plaintiffs' and members of the purported Class's claims are barred, in whole or in part, because Defendants had no duty to disclose any facts allegedly not disclosed, including under Item 303 of Regulation S-K"—on the sole ground that Defendants do not bear the burden as to this element of Plaintiffs' claims, but do not concede that Plaintiffs can meet their burden to prove any element of their alleged claims, including that Defendants had a duty to disclose any facts allegedly not disclosed, including under Item 303.

### iii. **Issues That Are Not To Be Tried**

Under the Court's prior rulings, Plaintiffs' original claims were "substantially narrowed." Summary Judgment Order at 1. Specifically, the Court's prior rulings eliminated the following claims:

(1) Plaintiffs' claims regarding GE Capital's long-term care insurance portfolio, *see* ECF No. 185 (Opinion and Order Granting In Part Defendants' Motion to Dismiss the Fourth Amended Complaint ("Motion to Dismiss 4AC Order")) at 16-36; ECF No. 206 (Opinion and Order Granting In Part Defendants' Motion to Dismiss the Fifth Amended Complaint ("Motion to Dismiss 5AC Order")) at 16-23;

(2) Most of Plaintiffs' claims regarding GE Power's long-term service agreements ("LTSAs"), including claims concerning:

    a. "[R]evenue and profit projections reported by GE in its financial statements — specifically, its contract assets, reported profits for GE's Industrials group, cumulative catch-up revenue, and earnings per share" based on allegations concerning declining customer utilization, GE Power's accounting for LTSAs, and GE Power's renegotiations of LTSAs, *see* Motion to Dismiss 4AC Order at 36-40, 46;

    b. Alleged violations of U.S. GAAP, *see id.* at 40-41;

    c. Alleged Item 303 violations concerning GE Power's "reliance on unsustainable business practices to renegotiate LTSAs in order to generate positive cumulative catch-up adjustments" based on allegations of "(1) de-scoping, (2) extending payment periods and offering discounts, (3) providing free technology, (4) pulling revenue forward by selling one-time upgrades at the expense of lower future service fees, and (5) unilaterally altering services under LTSAs," *see id.* at 41-44 (citations and quotation marks omitted); Motion to Dismiss 5AC Order at 24-25;

    d. Alleged Item 303 violations concerning the "deteriorating power industry," "customers' migration to sustainable energy sources and resulting decreased asset usage," and "declining customer utilization rates," *see* Motion to Dismiss 4AC Order at 41, 44; Motion to Dismiss 5AC Order at 25-26;

    e. Defendants' statements concerning GE's "calculation of contract assets" based on alleged manipulations of inputs for LTSAs revenue recognition in order to "create the appearance of profitability," *see* Motion to Dismiss 4AC Order at 46-49;

f.  Defendants' statements concerning cumulative catch-up adjustments, *see id.* at 50-51; Motion to Dismiss 5AC Order at 27-29;

g.  Defendants' statements concerning future asset utilization in GE Power, *see* Motion to Dismiss 5AC Order at 29; and

(3) Any and all claims regarding GE Power's long-term factoring *prior* to February 29, 2016, *see* Class Certification Order at 7-8, 10, or *after* October 19, 2017, *see* Summary Judgment Order at 30.

Prior to the filing of this joint pretrial statement, Defendants moved *in limine* to eliminate evidence and issues from the trial that are inadmissible, irrelevant, misleading, confusing, and/or unfairly prejudicial.  Defendants expect that the outcome of these filings will serve to further reduce the scope of the trial on Plaintiffs' claims, if not eliminate them altogether, and reserve the right to amend their pretrial statement accordingly.

## V.    ESTIMATED NUMBER OF TRIAL DAYS AND TYPE OF TRIAL

### 1.    <u>Plaintiffs' Position</u>

Plaintiffs' claims are to be tried by a jury. Plaintiffs estimate that the trial in Phase One of class-wide issues related to Defendants' liability and damages may be completed within 15 trial days, including jury selection and opening and closing statements, based on a trial day of approximately five-and-a-half hours with one half-hour break for lunch (*see* Individual Rules and Practices for Hearings and Trials, Rule A).

### 2.    <u>Defendants' Position</u>

The first phase of this case, *see supra* note 5, will be tried to a jury.  Defendants currently agree with Plaintiffs' estimate that this first phase can be completed within 15 trial days.  *See* Individual Rules and Practices for Hearings and Trials, Rule A.

## VI.    JOINT STATEMENT OF THE NATURE OF THE CASE

Thank you for your time, attention, and service.

The case you will hear about is a civil class action lawsuit. Plaintiffs are Sjunde AP-Fonden ("<u>AP7</u>"), a Swedish pension fund, and The Cleveland Bakers and Teamsters Pension Fund, a United States public pension fund. The Plaintiffs are representing themselves and a class of investors who purchased or otherwise acquired the publicly traded common stock of the General Electric Company ("<u>GE</u>") between February 29, 2016, and October 19, 2017, inclusive. The Defendants are GE and its former Vice Chairman and Chief Financial Officer, Jeffrey S. Bornstein. GE is a diversified, global industrial company founded in 1892.

Plaintiffs' claims in this lawsuit concern GE's public disclosures regarding the factoring of long-term customer receivables at GE Power, a segment of GE. Customer receivables are money owed by customers for goods or services provided to such customers. Long-term customer receivables refer to payments that are due to be paid by a customer more than one year in the future. In long-term factoring transactions, GE Power sold long-term customer receivables to another GE segment, GE Capital. In those transactions, GE Power received cash from GE Capital, while GE Capital received the right to collect the future cash payment due from the customer.

Plaintiffs allege that Defendants violated federal securities laws by knowingly or recklessly misstating and omitting material facts about this practice, and that these misstatements and omissions caused harm to Plaintiffs and the Class. Defendants deny Plaintiffs' allegations, and contend that they made all required disclosures to investors, and that Plaintiffs and the Class did not suffer any losses caused by the alleged violations.

## VII.    LIST OF PEOPLE, PLACES, AND INSTITUTIONS LIKELY TO BE MENTIONED DURING PHASE ONE

**Institutions/Companies/Entities:** Sjunde AP-Fonden ("<u>AP7</u>"), The Cleveland Bakers and Teamsters Pension Fund, General Electric Company ("<u>GE</u>"), GE Aviation, GE Healthcare, GE Energy Connections & Lighting, GE Power, GE Capital, GE Industrial Finance, GE Power

Services, GE Gas Power Systems, GE Oil & Gas, GE Renewable Energy, GE Working Capital Solutions, GE Transportation, Alstom, Mitsubishi Heavy Industries, Ltd., Siemens, United Technologies Corp., KPMG, McKinsey & Co., Boston Consulting Group, JP Morgan, Credit Suisse, International Energy Agency, and McCoy Power Reports.

**People:** Steven Bolze, Jeffrey S. Bornstein, Lynn Calpeter, Tim Carfi, Matthew Cribbins, Grant Dawson, Bob Degennaro, Estela Delgadillo, Timothy Donovan, Michael Eshoo, Daniel Fischel, John Flannery, Chris Gill, Eric Gray, Robert Green, Jan Hauser, Jeffrey Immelt, Danielle Konsten, S.P. Kothari, Puneet Mahajan, Marc Mascola, Charles Masurel, Paul McElhinney, Kelly McGinnis, Jamie Miller, Joanna Morris, Brad Mroski, Matt Potvin, Christopher Russo, Erik Ryan, Keith Sherin, Mark Sunshine, David I. Tabak, Aidan Viggiano, Michael Vitanza, Kevin Weber, Brian Weverman, Andrea Williamson.

## VIII.   CONSENT TO TRIAL BY MAGISTRATE

The parties have not consented to trial of the case by a magistrate judge.

## IX.   STIPULATIONS OR AGREED STATEMENTS OF FACT OR LAW

Please refer to **Appendix 1-A** and **Appendix 1-B**, submitted herewith, for the relevant stipulations entered into by the parties.

Additionally, the parties have agreed to the following:

(1) To the extent a report by a securities analyst is otherwise admissible, the parties agree that it is not being offered for the truth of any matter asserted in the report.

(2) With respect to any witness that either party lists under Section X *infra* as testifying live, the parties agree that if the witness is determined to be unavailable for purposes of trial, each party will have the opportunity to designate, object to, and counter-designate testimony.

(3) The parties will not present any evidence, argument, or comment regarding the SEC (or DOJ) investigation into GE or GE's settlement of claims with the SEC.[8]

(4) The parties will not present any evidence, argument, or comment that characterizes GE Power's long-term factoring of receivables as illegal or a sham transaction, or akin to a "Ponzi" scheme.

(5) The parties will not present any evidence, argument, or comment regarding the filing of any motion for protective order, the failure of any party to disclose or produce documents in response to a request for production, claims of document spoliation, the filing of a motion to compel production, any objections to discovery, including any objections which may have been made during depositions, interrogatories, and in other forms of discovery, or the occurrence of any discovery dispute or any rulings on such disputes.

(6) The parties will not present any evidence, argument, or comment regarding these motions and any other motions *in limine*, any rulings by the Court in response thereto, or any rulings by the Court excluding evidence (except to the extent that a party may seek jury instructions in connection therewith).

(7) The parties will not present any evidence, argument, or comment regarding the parties' unsuccessful attempts to settle this lawsuit, including reference to any settlement offers made or not made, any settlement demands made or not made, any settlement negotiations or lack thereof between the parties, or any mention of statements made at, in connection with, or pursuant to mediation sessions in this action.

(8) The parties will not present any evidence, argument, or comment regarding any document that a party has withheld on grounds of attorney-client privilege or work-product doctrine.

## X.    WITNESSES

### 1.    <u>Plaintiffs' Witnesses[9]</u>

Plaintiffs intend to call the following witnesses to testify during their case in chief. The designation of a "Live" witness is based on Plaintiffs' understanding that the witness is within the subpoena power of the Court or is otherwise available for trial.

---

[8] The parties are continuing to meet and confer on certain of Plaintiffs' deposition designations that expressly reference the SEC investigation and/or prior SEC testimony and agree that, to the extent the parties cannot reach an agreement on such designations in advance of trial, Defendants may move *in limine* to preclude Plaintiffs from introducing such deposition testimony excerpts.

[9] None of the witnesses listed herein will require an interpreter.

### a.  <u>**Witnesses Who Will Testify Live**</u>

**Jeffrey S. Bornstein:** Mr. Bornstein is a Defendant and GE's former Vice Chairman and Chief Financial Officer. Plaintiffs expect Mr. Bornstein will testify regarding his allegedly false or misleading statements and omissions, and as to events and discussions he can remember and documents he sent and received concerning GE's deferred monetization program, long-term ("LT") factoring, cash conversion, internal forecasts and actual results, including concerning Industrial CFOA and CFOA, GE's Annual Executive Incentive Plan ("AEIP"), and his executive compensation and stock sales.

**Lynn Calpeter:** Ms. Calpeter is the former Chief Financial Officer of GE Power. Ms. Calpeter will testify about her communications with Bornstein and other senior GE executives, GE Power's financial performance during the Class Period, GE Power's deferred monetization program, trends in GE Power's cash conversion, CFOA, and deferred balance, GE Power's CFOA forecasts and targets, GE's use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet its CFOA targets, GE Power's incorporation of deferred monetization and LT factoring into its CFOA forecasts, and the impact of deferred monetization and LT factoring on GE Power's CFOA.

**Robert Green:** Mr. Green is the former Chief Financial Officer of GE Power and the former CFO of GE Capital. Mr. Green will testify to events and discussions he can remember and documents he sent and received concerning his communications with Bornstein and other senior GE executives, GE's intercompany factoring practices, trends in GE Power's CFOA, GE Power's deferred balance, and GE's use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet its CFOA targets, the impact of deferred monetization and LT factoring on Industrial CFOA, and GE Power's CFOA performance in 2017.

**Jeffrey Immelt:** Mr. Immelt is the former Chief Executive Officer of GE. Mr. Immelt will testify to events and discussions he can remember and documents he sent and received concerning GE's public disclosures to investors, the allegedly false or misleading statements and omissions, GE Power's financial performance during the Class Period, GE's Industrial CFOA targets and disclosures to investors, GE's Blueprint process, GE's cash conversion and intercompany factoring practices, and GE's use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet CFOA targets during the Class Period.

**S.P. Kothari:** Professor Kothari is expected to testify about: (1) GE's Power segment and relevant trends affecting its cash flows during the relevant time period; (2) how GE used the factoring of receivables to GE Capital to generate cash flows; (3) the concepts of Industrial CFOA and the significance of GE reporting a non-GAAP financial measure; (4) GE's LT factoring and deferred monetization program, and how each masked underlying weaknesses in GE Power's ability to generate cash from operations; and (5) that LT factoring was not a sustainable source of CFOA at GE (i.e., that GE could not maintain the pace at which it factored in 2016). Professor Kothari will also testify on points related to the foregoing topics and/or in response to testimony from Defendants' expert witnesses, as necessary.

**Puneet Mahajan:** Mr. Mahajan is GE's former Vice President of Corporate FP&A. Mr. Mahajan will testify to events and discussions he can remember and documents he sent and received concerning the allegedly false or misleading statements and omissions, GE's Industrial CFOA targets, GE's intercompany factoring practices, trends in GE's Industrial CFOA, GE Power's deferred balance, and GE's use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet its CFOA targets, discussions with GE's Disclosure Committee concerning deferred monetization and LT factoring, and the impact of deferred

monetization and LT factoring on Industrial CFOA.

**David I. Tabak:** Dr. Tabak is expected to testify, *inter alia*, that: (1) the market for GE common stock was efficient during the Class Period; (2) the alleged corrective disclosures were related to and/or revealed the allegedly misrepresented truth and were a substantial cause of the decline in the market price of GE common stock following GE's April 21, 2017, July 21, 2017, and October 20, 2017 corrective disclosures; and (3) the amount of artificial inflation that existed in GE's common stock related to the alleged fraud during the Class Period and a reasonable estimate of the amount of per-share damages suffered by injured Class Members. Dr. Tabak will also testify on points related to the foregoing topics and/or in response to testimony from Defendants' expert witnesses, as necessary and as provided for in the Court's March 21, 2024 Memorandum Opinion and Order, ECF No. 454.

**Michael Vitanza:** Mr. Vitanza is a Global Controller at General Electric. Mr. Vitanza will testify about the allegedly false or misleading statements and omissions, GE's disclosure practices with respect to CFOA and intercompany factoring transactions during the Class Period, GE's use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet its CFOA targets, and the impact of deferred monetization and LT factoring on Industrial CFOA.

**Brian Weverman:** Mr. Weverman is a former staff executive within GE's Corporate FP&A division. Mr. Weverman will testify about his communications with senior GE executives, the allegedly false or misleading statements and omissions, trends in GE's cash conversion, GE Power's deferred balance, GE's deferred monetization and LT factoring programs, its use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet its CFOA targets, and the impact of deferred monetization and LT factoring on Industrial CFOA during the Class Period.

**Andrea Williamson:** Ms. Williamson is a former relationship manager for GE Capital's Working Capital Solutions ("WCS") business responsible for overseeing WCS's factoring transactions with GE Power. Ms. Williamson will testify about GE Power's intercompany factoring transactions with WCS, including GE Power's deferred monetization program and its LT factoring transactions, internal targets and forecasts for GE Power deferred monetization transactions, and her communications with senior GE executives concerning GE Power's deferred monetization and LT factoring transactions.

### b.  Witnesses Who Will Testify By Deposition

**Steve Bolze:** Mr. Bolze is the former Chief Executive Officer of GE Power. Under Fed. R. Civ. P. 32(a)(4), Plaintiffs expect to present excerpts from Mr. Bolze's deposition concerning his communications with Bornstein and other senior GE executives, GE Power's financial performance during the Class Period, GE Power's CFOA targets and Blueprint process, trends in GE Power's cash conversion, CFOA, and deferred balance, GE Power's intercompany factoring practices, GE Power's AEIP metrics, and GE Power's use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet CFOA targets during the Class Period.

**Estella Delgadillo:** Ms. Delgadillo is the former Financial Planning and Analysis ("FP&A") Cash Leader at GE Power Services. Under Fed. R. Civ. P. 32(a)(4), Plaintiffs expect to present excerpts from Ms. Delgadillo's deposition concerning GE Power Services' CFOA, CFOA targets, and GE Power Services' intercompany factoring program, including its deferred monetization program and its factoring of LT receivables during the Class Period.

**Timothy Donovan:** Mr. Donovan is the former Chief Financial Officer of GE Power Services. Under Fed. R. Civ. P. 32(a)(4), Plaintiffs expect to present excerpts from Mr. Donovan's deposition concerning GE Power Services' factoring practices, trends in GE Power Services' cash

collections, deferred balance, and CFOA, GE Power Services' use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet its CFOA targets, and the impact of deferred monetization and LT factoring on GE Power Services' CFOA.

**Michael Eshoo:** Mr. Eshoo is the former Global FP&A Leader for GE Power. Under Fed. R. Civ. P. 32(a)(4), Plaintiffs expect to present excerpts from Mr. Eshoo's deposition concerning his communications with Bornstein and other senior GE executives, GE's Power's CFOA forecasts and targets, GE Power's intercompany factoring practices, trends in GE Power's cash collections, deferred balance, and CFOA, GE Power's use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet its CFOA targets, and the impact of deferred monetization and LT factoring on GE Power's CFOA.

**John Flannery:** Mr. Flannery is the former Chief Executive Officer of GE. Under Fed. R. Civ. P. 32(a)(4), Plaintiffs expect to present excerpts from Mr. Flannery's deposition concerning GE's disclosures to investors in 2017, GE's Power's CFOA forecasts and targets, his deep dive into GE Power's business after becoming CEO, GE Power's deferred monetization program, its use of intercompany deferred monetization and LT factoring transactions to generate CFOA during the Class Period, and trends with respect to GE's use of deferred monetization and commercial paper to fund its operations.

**Kevin Weber:** Mr. Weber is a former Commercial Finance Manager at GE Power Services. Under Fed. R. Civ. P. 32(a)(4), Plaintiffs expect to present Mr. Weber's deposition concerning GE Power Services' factoring practices, trends in GE Power Services' cash collections, deferred balance, and CFOA, GE Power Services' use of intercompany deferred monetization and LT factoring transactions to generate CFOA and meet its CFOA targets, and the impact of deferred monetization and LT factoring on GE Power Services' CFOA.

### 2. __Defendants' Witnesses__[10]

Defendants intend to call the following witnesses to testify during their case in chief in Phase One of the trial. Defendants designated the below witnesses as either "Live" or "By Deposition" based on Defendants' current understanding as to whether a particular witness is within the subpoena power of the Court or is otherwise available for trial. The below is intended to be a brief, high-level summary of the topics and issues that Defendants currently anticipate the witnesses' testimony to address. Defendants reserve the right to modify and amend this witness list and the description of each witness's expected testimony as necessary based on any amendments Plaintiffs make to their witness list, exhibit list, deposition designations, and other pre-trial filings, as well as any rulings that the Court may make, including with respect to witnesses, evidence or *in limine* motions.[11] Defendants reserve the right to call, and refrain from calling any witnesses, in any order, subject to Court rulings on evidentiary motions and as otherwise appropriate.

Defendants also reserve the right to call any witness necessary to authenticate documents to which an authentication objection is made, and to testify about such documents. Defendants reserve the right to offer summary witnesses to summarize voluminous records, and to object to witnesses, evidence, and argument offered by Plaintiffs, notwithstanding whether the same, or similar, evidence and argument is offered by Defendants by and through these and other witnesses.

---

[10] None of the witnesses listed here require an interpreter.

[11] Although Defendants removed Sjunde AP-Fonden, Richard Grottheim, Cleveland Bakers & Teamsters Pension Fund, and Carl Pecoraro from their witness list, Defendants reserve the right to call those witnesses in Phase Two of the trial consistent with this Court's Reconsideration & Bifurcation Order, or in Phase One if such evidence is admissible on another theory or necessary to rebut evidence Plaintiffs introduce in their case-in-chief at trial. *See* Reconsideration & Bifurcation Order at 7 n.3.

### a. **Witnesses Who Will Testify Live**

**Jeffrey S. Bornstein:**  Mr. Bornstein is a Defendant and the former Vice Chairman and Chief Financial Officer of General Electric Company ("GE").  Mr. Bornstein will testify regarding GE's eight business segments, GE's financial performance, including the impact of the power market downturn on GE Power's performance in 2017, Plaintiffs' alleged misstatements and/or omissions, the thoroughness and robustness of the controls framework and processes for preparing GE's disclosures, GE's disclosures, GE's processes for forecasting financial results and setting, tracking, and updating targets, Mr. Bornstein's and GE's stock ownership and purchases, and Mr. Bornstein's understanding of GE Power's deferred balance, deferred monetization, and long-term ("LT") factoring.

**Lynn Calpeter:**  Ms. Calpeter is the former Chief Financial Officer of GE Power.  Ms. Calpeter will testify regarding GE Power's businesses and sub-segments, GE Power's financial performance, GE Power's processes for forecasting financial results and setting, tracking, and updating targets, GE Power's long-term service agreements ("LTSAs") portfolio and transactional portfolio, Ms. Calpeter's understanding of GE Power's deferred balance, deferred monetization, and LT factoring, GE Power's controllership and risk management, and GE Power's role in the disclosure process.

**Daniel R. Fischel:**  Mr. Fischel will testify in rebuttal to Dr. David I. Tabak's opinions at trial.  Mr. Fischel is expected to offer the expert opinions as set forth in his expert report and his deposition, including that:  (i) Dr. Tabak's loss causation methodology and analysis of alleged artificial inflation in GE's stock price are fundamentally flawed and unreliable; (ii) Dr. Tabak fails to demonstrate any connection between the purported corrective disclosures and the remaining claims, and ignores that factual evidence he cites to support his analysis is inconsistent with

Plaintiffs' claims and his conclusion that GE's stock price was artificially inflated; (iii) Dr. Tabak's principal disaggregation method is unreliable, rendering his entire disaggregation analysis unreliable, and he does not establish that his subsidiary disaggregation methods are reliable; and (iv) economic incentives as they pertain to the sale of a company's stock, such as whether a company's employees have an economic incentive to sell the company's stock if the price of that stock is inflated. Mr. Fischel will also testify on points related to the foregoing topics and/or in response to testimony from Plaintiffs' fact and expert witnesses, as necessary.

**Robert Green:** Mr. Green is the former Chief Financial Officer of GE Power and the former Chief Financial Officer of GE Capital. Mr. Green will testify regarding GE Power's businesses and sub-segments, GE Power's LTSAs portfolio and transactional portfolio, GE Power's financial performance during 2017, including the impact of the power market downturn on GE Power's performance, GE Power's processes for forecasting financial results and setting, tracking, and updating targets, and Mr. Green's understanding of GE Power's deferred balance, deferred monetization, and LT factoring.

**Jeffrey Immelt:** Mr. Immelt is the former Chief Executive Officer of GE. Mr. Immelt will testify regarding GE's eight business segments, GE's financial performance, including the impact of the power market downturn on GE Power's performance in 2017, the thoroughness and robustness of the controls framework and processes for preparing GE's disclosures, GE's disclosures, GE's processes for forecasting financial results and setting and tracking targets, and Mr. Immelt's understanding of GE Power's deferred balance, deferred monetization, and LT factoring.

**Puneet Mahajan:** Mr. Mahajan is the former Vice President of GE's Corporate Financial Planning and Analysis ("FP&A"). Mr. Mahajan will testify regarding GE's eight business

segments, GE's financial performance, including the impact of the power market downturn on GE Power's performance in 2017, Plaintiffs' alleged misstatements and/or omissions, the thoroughness and robustness of the controls framework and processes for preparing GE's disclosures, GE's disclosures, GE's processes for forecasting financial results and setting and tracking targets, and Mr. Mahajan's understanding of GE Power's deferred balance, deferred monetization, and LT factoring.

**Marc Mascola:** Mr. Mascola is a former Deputy Controller at GE. Mr. Mascola will testify regarding GE's financial performance, including the impact of the power market downturn on GE Power's performance in 2017, Plaintiffs' alleged misstatements and/or omissions, the thoroughness and robustness of the controls framework and processes for preparing GE's disclosures, GE's disclosures, and Mr. Mascola's understanding of GE Power's deferred balance, deferred monetization, and LT factoring.

**Brad Mroski, CPA, CFE:** Mr. Mroski will testify in rebuttal to Professor S.P. Kothari's opinions at trial. Mr. Mroski is expected to offer the expert opinions as set forth in his expert report and his deposition, including that: (i) Prof. Kothari's opinion that GE Power's LT factoring activities were financial, not operational, activities is incorrect; and (ii) GE Power's factoring activities must be accounted for as cash flow from operating activity under the applicable U.S. GAAP standards. Mr. Mroski will also testify on points related to the foregoing topics and/or in response to testimony from Plaintiffs' fact and expert witnesses, as necessary.

**Christopher J. Russo:** Mr. Russo will testify in rebuttal to Prof. Kothari's and Dr. Tabak's opinions. Mr. Russo is expected to offer the expert opinions as set forth in his expert report and his deposition, including that Prof. Kothari's and Dr. Tabak's opinions are unreliable because they fail to account for the nature of GE Power's business and the market in which GE Power operates.

Mr. Russo is expected to testify that factoring is a common business practice in the power industry, was part of GE Power's strategy for increasing its sales of upgrades, was congruent with GE Power's business goals, and enabled it to manage its working capital, grow its business, and serve its customers.  Mr. Russo is also expected to testify that GE Power's underperformance in 2017 was caused by a sudden, unforeseen, and exogenous downturn in the global gas power market, which affected its ability to sell equipment, upgrades, and services compared to prior years, and, in turn, reduced its ability to engage in LT factoring.  Mr. Russo is also expected to testify that LT factoring was tied to GE Power's performance in the gas power market: because significant amount of LT factoring was associated with new transactions, particularly the sale of upgrades, as GE Power sold more products, it had more receivables to factor, so when the power market downturn limited GE Power's ability to execute on new sales, particularly upgrades, the availability of new LT receivables that could be factored declined.  Mr. Russo will also testify on points related to the foregoing topics and/or in response to testimony from Plaintiffs' fact and expert witnesses, as necessary.

**Mark A. Sunshine:** Mr. Sunshine will testify in rebuttal to Prof. Kothari's and Dr. Tabak's opinions.  Mr. Sunshine is expected to offer the expert opinions as set forth in his expert report and his deposition, including that Prof. Kothari and Dr. Tabak are incorrect in opining that GE Power's deferred monetization and LT factoring were unsustainable, and that Dr. Kothari is incorrect in opining that deferred monetization and LT factoring signaled latent credit risk, risk to future cash flows, and important changes in business conditions.  Mr. Sunshine is expected to testify that factoring is a common and standard practice widely used throughout a variety of industries (including by GE's competitors), and that industrial businesses commonly use factoring to better align the timing of outlay of costs for manufacturing, delivery, and installation with the

receipt of cash in customer transactions, as well as to mitigate credit exposure. Mr. Sunshine is also expected to testify regarding the costs and benefits of GE Power's LT factoring. Mr. Sunshine is expected to testify that the majority of GE Power's LT factoring transactions in 2015 and 2016 (and those planned for 2017) related to the sales of upgrades/equipment, where GE Capital in essence provided financing to the customer to (i) allow the customer to pay for the purchase over time, while (ii) paying cash to GE Power for the upgrade it built, sold, and installed. Mr. Sunshine is also expected to testify that these transactions could not contribute to any drag because they were new transactions that created the receivable that was ultimately factored. Mr. Sunshine is expected to testify that GE Power's ability to engage in deferred monetization, and particularly LT factoring, was directly tied to its ability to enter into new transactions with customers—if GE Power sold new products or provided new services to its customers, it would continue to create new receivables it could factor. Mr. Sunshine will also testify on points related to the foregoing topics and/or in response to testimony from Plaintiffs' fact and expert witnesses, as necessary.

**Michael Vitanza:** Mr. Vitanza is a Global Controller of Financial Reporting at GE. Mr. Vitanza will testify regarding Plaintiffs' alleged misstatements and/or omissions, the thoroughness and robustness of the controls framework and processes for preparing GE's disclosures, GE's disclosures, GE's processes for forecasting financial results and setting, tracking, and updating targets, and Mr. Vitanza's understanding of GE Power's deferred balance, deferred monetization, and LT factoring.

**Brian Weverman:** Mr. Weverman is a former staff executive within GE's Corporate FP&A. Mr. Weverman will testify regarding Plaintiffs' alleged misstatements and/or omissions, the thoroughness and robustness of the controls framework and processes for preparing GE's disclosures, GE's disclosures, GE's processes for forecasting financial results and setting, tracking,

and updating targets, and Mr. Weverman's understanding of GE Power's deferred balance, deferred monetization, and LT factoring.

**Andrea Williamson:**  Ms. Williamson is a former Senior Vice President – Global Relationships Manager at GE Capital's Working Capital Solutions ("WCS") business.  Ms. Williamson will testify regarding WCS's processes for forecasting financial results and setting, tracking, and updating targets, and Ms. Williamson's understanding of WCS's deferred monetization and LT factoring transactions.

### b. <u>Witnesses Who Will Testify By Deposition</u>

**Steve Bolze:**  Mr. Bolze is the former Chief Executive Officer of GE Power.  Defendants expect to present deposition excerpts from Mr. Bolze's deposition regarding GE Power's businesses and sub-segments, GE Power's financial performance, GE Power's processes for forecasting financial results and setting, tracking, and updating targets, GE Power's LTSAs portfolio and transactional portfolio, GE Power's controllership, GE Power's role in the disclosure processes, and Mr. Bolze's understanding of GE Power's deferred balance, deferred monetization, and LT factoring.

**Estella Delgadillo:**  Ms. Delgadillo is the former Cash Leader at GE Power Services' FP&A.  Defendants expect to present deposition excerpts from Ms. Delgadillo's deposition regarding GE Power Services' processes for forecasting financial results and setting, tracking, and updating targets, GE Power Services' LTSAs portfolio, and Ms. Delgadillo's understanding of GE Power Services' deferred balance, deferred monetization, and LT factoring.

**Timothy Donovan:**  Mr. Donovan is the former Chief Financial Officer of GE Power Services.  Defendants expect to present deposition excerpts from Mr. Donovan's deposition regarding GE Power Services' business, including its LTSAs portfolio and transactional portfolio

and its sale of upgrades, GE Power Services' financial performance, including the impact of the power market downturn on GE Power Services' performance in 2017, GE Power Services' processes for forecasting financial results and setting, tracking, and updating targets, GE Power Services' controllership and risk management, GE Power Services' role in the disclosure process, and Mr. Donovan's understanding of GE Power Services' deferred balance, deferred monetization, and LT factoring.

**Michael Eshoo:** Mr. Eshoo is the former Global FP&A Leader for GE Power. Defendants expect to present deposition excerpts from Mr. Eshoo's deposition regarding GE Power's businesses and sub-segments, GE Power's LTSAs portfolio and transactional portfolio, GE Power's financial performance, including the impact of the power market downturn on GE Power's performance in 2017, GE Power's processes for forecasting financial results and setting, tracking, and updating targets, GE Power's controllership and risk management, and Mr. Eshoo's understanding of GE Power's deferred balance, deferred monetization, and LT factoring.

**John Flannery:** Mr. Flannery is the former Chief Executive Officer of GE. Defendants expect to present deposition excerpts from Mr. Flannery's deposition regarding GE's eight business segments, GE's financial performance during 2017, including the impact of the power market downturn on GE Power's performance, the thoroughness and robustness of the controls framework and processes for preparing GE's disclosures, GE's disclosures, GE's processes for forecasting financial results and setting and tracking targets, and Mr. Flannery's understanding of GE Power's deferred balance, deferred monetization, and LT factoring.

**Kevin Weber:** Mr. Weber is a former Commercial Finance Manager at GE Power Services. Defendants expect to present deposition excerpts from Mr. Weber's deposition regarding GE Power Services' processes for forecasting financial results and setting, tracking, and

updating targets, GE Power Services' LTSAs portfolio, and Mr. Weber's understanding of GE Power Services' deferred balance, deferred monetization, and LT factoring.

## XI.    DEPOSITION DESIGNATIONS

The parties have designated testimony for witnesses they will or may call at trial based on their current understanding as to whether a witness is within the subpoena power of the Court or is otherwise available for trial. Both parties reserve to the right to later designate testimony prior to trial if it is determined that a witness currently expected to testify live is unavailable, or to call live a witness that is currently identified to testify by deposition.

### 1.    <u>Plaintiffs' Deposition Designations</u>

Please refer to **Appendix 2** for Plaintiffs' Deposition Designations.

### 2.    <u>Defendant's Deposition Designations</u>

Please refer to **Appendix 3** for Defendants' Deposition Designations. Defendants reserve the right to supplement and modify these deposition designations as necessary based on any amendments Plaintiffs make to their witness list, exhibit list, deposition designations, and other pre-trial filings, as well as any rulings that the Court may make, including with respect to witnesses, evidence, or *in limine* motions. The inclusion of a designation on this list of deposition designations shall not be deemed to be an admission by Defendants that such designation is relevant or admissible for any particular purpose. Defendants reserve the right the object to Plaintiffs' designation of testimony from these or other witnesses, including the presentation of deposition testimony for any witness offering live testimony at trial (other than for impeachment). Defendants reserve the right to use additional designations for purposes of impeachment, rebuttal, or sur-rebuttal, in accordance with the Court's rules.

## XII.   EXHIBITS

### 1.   <u>Plaintiffs' Exhibit List</u>

Please refer to **Appendix 4** for Plaintiffs' Exhibit List.

### 2.   <u>Defendants' Exhibit List</u>

Please refer to **Appendix 5** for Defendants' Exhibit List.  Defendants reserve the right to amend this exhibit list as necessary based on any amendments Plaintiffs make to their witness list, exhibit list, deposition designations, and other pre-trial filings, as well as any rulings that the Court may make, including with respect to witnesses, evidence, or *in limine* motions.  The inclusion of a document on this exhibit list shall not be deemed to be an admission by Defendants that such document or portion thereof is relevant or admissible for any particular purpose.  To the extent that the authenticity or admissibility of any exhibit on this list is challenged, Defendants reserve the right to introduce additional evidence (in the form of, *e.g.*, records certifications, testimony of records custodians, or other knowledgeable witnesses) to establish the authentication and/or admissibility of such challenged exhibits.  Defendants also reserve the right to offer any exhibits, or portions thereof, listed on the Plaintiffs' exhibit list.  Defendants reserve the right to use additional exhibits for purposes of impeachment, rebuttal, or sur-rebuttal, in accordance with the Court's rules.

## XIII.   REQUESTS TO CHARGE

Please refer to **Appendix 6**, submitted herewith, for the parties' proposed jury charges.

## XIV.   VERDICT FORMS

Please refer to **Appendix 7** and **Appendix 8**, submitted herewith, for Plaintiffs' and Defendants' respective proposed verdict forms and supporting statements.

## XV.    VOIR DIRE QUESTIONS AND JURY QUESTIONNAIRE

Please refer to **Appendix 9**, submitted herewith, for the parties' proposed additional jury questionnaire and *voir dire* questions.

## XVI.    DAMAGES

### 1.    <u>Plaintiffs' Position</u>

Plaintiffs seek to recover out-of-pocket damages based on the amount of artificial inflation attributable to Defendants' misstatements and omissions that existed in GE's common stock price during the Class Period. Through their expert, David I. Tabak, Ph.D., Plaintiffs have calculated per share damages using a standard event study methodology that: (i) quantifies the GE-specific stock price decline following each of the three corrective disclosure dates (April 21, 2017; July 21, 2017; and October 20, 2017); and (ii) disaggregates the stock price impact of GE's non-CFOA-related public disclosures on those dates. Based on Dr. Tabak's analysis, Plaintiffs seek to recover per share out-of-pocket damages of up to $1.68 for each share of GE common stock that was purchased during the Class Period and held through at least one of the three corrective disclosures.

In addition to out-of-pocket damages, Plaintiffs seek to recover interest on all damages awarded, as well as costs and expenses.

### 2.    <u>Defendants' Position</u>

Defendants object to Plaintiffs' asserted damages, including Plaintiffs' failure to put forth any reliable methodology for calculating damages.  The evidence will show that Plaintiffs' proposed calculation for per-share damages, supposedly supported by Plaintiffs' loss causation expert, is flawed for a number of reasons.  Further, Plaintiffs' damages are subject to offset in an amount including, but not limited to, any tax or other benefits actually received by Plaintiffs through their investments, including, among others, any amounts Plaintiffs received in connection with their sale of their GE securities.

In addition, if the jury finds against Defendants in Phase One, the amount of damages each individual class member may claim will be evaluated in a second phase of these proceedings (which, as noted above and pursuant to this Court's Reconsideration & Bifurcation Order, should also include adjudication of individualized reliance issues for absent class members and the Plaintiffs). *See supra* note 5. During this second phase, Defendants are entitled to assess each claim to determine whether offset or other reduction of damages is appropriate because class members can only recover actual, out-of-pocket losses. Defendants are also entitled to discovery from any class member that seeks to participate in the post-trial claims process. Further, damages are subject to offset in an amount including, but not limited to, any tax or other benefits actually received by class members through their investments, including, among others, any amounts class members received in connection with their sale of their GE securities.

## XVII.  UNANIMOUS VERDICT

Plaintiffs consent to a less-than-unanimous verdict.

Defendants do not consent to a less-than-unanimous verdict.

Dated: May 24, 2024

Respectfully submitted,

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**

*S/ Sharan Nirmul*
Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Jamie M. McCall (*pro hac vice* forthcoming)
Joshua A. Materese
Austin W. Manning
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
gcastaldo@ktmc.com
snirmul@ktmc.com
rrusso@ktmc.com
jmccall@ktmc.com
jmaterese@ktmc.com
amanning@ktmc.com

*Counsel for Class Representative
Sjunde AP-Fonden and Lead Counsel
for the Class*

**GRANT & EISENHOFER P.A.**
Daniel L. Berger
Karin E. Fisch
Vincent J. Pontrello
Cecilia E. Stein
Alexandra E. Forgione
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
dberger@gelaw.com
kfisch@gelaw.com
vpontrello@gelaw.com
cstein@gelaw.com
aforgione@gelaw.com

*Counsel for Class Representative The
Cleveland Bakers and Teamsters Pension
Fund and Liaison Counsel for the Class*

**LATHAM & WATKINS LLP**

*S/ William J. Trach*
William J. Trach (admitted *pro hac vice*)
200 Clarendon Street
Boston, MA 02116
(617) 948-6000
william.trach@lw.com

Sean M. Berkowitz (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
(312) 876-7700
sean.berkowitz@lw.com

Blake T. Denton
Jooyoung Yeu
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
blake.denton@lw.com
jooyoung.yeu@lw.com

Sarah A. Tomkowiak (admitted *pro hac vice*)
555 Eleventh Street NW
Washington, D.C. 20004
(202) 637-2200
sarah.tomkowiak@lw.com

Colleen C. Smith (admitted *pro hac vice*)
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5450
colleen.smith@lw.com

*Attorneys for Defendants General Electric
Company and Jeffrey S. Bornstein*