**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SJUNDE AP-FONDEN and THE CLEVELAND BAKERS AND TEAMSTERS PENSION FUND, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>GENERAL ELECTRIC COMPANY, et al.,<br><br>                Defendants. | Case No. 1:17-cv-8457-JMF<br><br>Hon. Jesse M. Furman |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES'
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
SETTLEMENT AND AUTHORIZATION TO DISSEMINATE
<u>NOTICE OF SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      PRELIMINARY STATEMENT ......................................................................................1

II.     FACTUAL BACKGROUND.......................................................................................3

        A.      Overview of the Action..........................................................................3

        B.      Settlement Negotiations and Terms of the Proposed Settlement...........................10

III.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL.......................................11

        A.      Standards Governing Approval of Class Action Settlements................................11

        B.      The Court "Will Likely Be Able" To Approve the Proposed Settlement
                under Rule 23(e)(2)..................................................................................13

                1.      Procedural Aspects of the Settlement Satisfy Rule 23(e)(2) ...................13

                2.      The Settlement's Terms Are Adequate......................................................15

                        a.      The Settlement Provides Substantial Relief, Especially in
                                Light of the Costs, Risks, and Delay of Further Litigation............16

                        b.      The Settlement Treats All Class Members Fairly..........................18

                        c.      The Settlement Does Not Excessively Compensate Counsel ........20

                        d.      Class Representatives Have Identified All Agreements
                                Made in Connection with the Settlement......................................21

IV.     NOTICE TO THE CLASS SHOULD BE APPROVED..................................................21

V.      THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD.................23

VI.     PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ...........................25

VII.    CONCLUSION..........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re AppHarvest Sec. Litig.*,
   2024 WL 967258 (S.D.N.Y. Mar. 6, 2024) ................................................................23

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ...............................................................................22

*Balestra v. ATBCOIN LLC*,
   2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) ...........................................................13

*Christine Asia Co., Ltd. v. Jack Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..........................................................20

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)......................................................................................12

*Denney v. Deutsch Bank AG*,
   443 F.3d 253 (2d Cir. 2006)......................................................................................24

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018).......................................................................11

*In re Graña y Montero S.A.A. Sec. Litig.*,
   2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021)............................................ 11-12, 14

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..........................................................15

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ..............................................................................19

*In re Kleen Prods. LLC v. Int'l Paper Co.*,
   2017 WL 5247928 (N.D. Ill. Oct. 17, 2017).............................................................14

*In re Loop Industries, Inc. Sec. Litig.*,
   2023 WL 127294 (S.D.N.Y. Jan. 5, 2023) ...............................................................23

*Low v. Trump Univ., LLC*,
   881 F.3d 1111 (9th Cir. 2018) ..................................................................................24

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
   2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)................................................................18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .........................................................................14

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
    2016 WL 3369534 (S.D.N.Y. May 2, 2016) ........................................................20

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ................................................................................16

*In re Northern Dynasty Minerals Ltd. Sec. Litig.*,
    2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023) ......................................................23

*Oka. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
    2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ............................................................18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................16

*Pearlstein v. Blackberry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ................................................18, 20

*In re Pfizer Inc. Sec. Litig.*,
    2016 WL 11801285 (S.D.N.Y. Dec. 21, 2016) ....................................................20

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................15

*Sanders v. CJS Sols. Grp., LLC*,
    2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) .......................................................15

*Scheufele v. Tableau Software, Inc.*,
    2021 WL 9681019 (S.D.N.Y. Sept. 17, 2021) ......................................................20

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...................................................15, 20

*In re Synchrony Fin. Sec. Litig.*,
    2023 WL 4992933 (D. Conn. Aug. 4, 2023) ........................................................14

*In re Tenaris S.A. Sec. Litig.*,
    2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ......................................................13

*Velez v. Novartis Pharm. Corp.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ......................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................11, 24

*In re Warner Chilcott Ltd. Sec. Litig.*,
    2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) .........................................................................23

**Statutes**

15 U.S.C. § 78u-4(a)(4) ........................................................................................................19

15 U.S.C. § 78u-4(a)(7) ........................................................................................................23

**Other Authorities**

4 WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS §
    13:13 (6th ed. 2022) ........................................................................................................13

Fed. R. Civ. P. 23(e) ................................................................................ *passim*

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments ...................................12

Court-appointed Class Representatives Sjunde AP-Fonden ("AP7") and The Cleveland Bakers and Teamsters Pension Fund ("Cleveland Bakers" and together with AP7, "Class Representatives" or "Plaintiffs"), on behalf of themselves and the Court-certified Class, respectfully submit this Memorandum of Law in support of their unopposed Motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice of Settlement ("Preliminary Approval Order").[1]

## I.    PRELIMINARY STATEMENT

Seven years after the inception of this Action, and following highly contested and vigorous litigation, Class Representatives have agreed to settle all claims against General Electric Company ("GE") and Jeffrey S. Bornstein ("Bornstein" and together with GE, "Defendants") for $362,500,000 in cash pursuant to the terms of the Stipulation. At this time, Class Representatives seek the Court's preliminary approval of the proposed Settlement under Rule 23 so that notice of the Settlement may be disseminated to the Class and the Settlement Hearing may be scheduled.

Class Representatives and their counsel believe that the proposed Settlement—reached *less than a month* before a trial of this Action was set to commence, is an outstanding result for the Class. In agreeing to resolve the Action, Class Representatives and Plaintiffs' Counsel were wholly aware of the strengths and weaknesses of the Class's claims and made a fully informed evaluation of the risks of taking this Action to trial and the fairness of a resolution at this time. While Class Representatives and Plaintiffs' Counsel believe the Class's claims against Defendants are meritorious and supported by substantial evidence developed during discovery and preparing for

---

[1]    All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated November 22, 2024 ("Stipulation" or "Stip."), filed concurrently herewith. Internal citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

trial, they also recognize that they faced the significant risk that a trial and any appeals could have precluded *any* recovery for the Class, let alone a recovery greater than the Settlement Amount. Notably, the Settlement Amount represents a substantial percentage of the Class's potential recoverable damages (as estimated by Class Representatives' damages expert) had this Action resulted in a jury verdict for Class Representatives on every aspect of liability and damages following trial.

When the Settlement was reached, the Parties were on the cusp of trial and all pre-trial proceedings were complete. In addition to the Court's rulings on two rounds of motions to dismiss, a motion for class certification, Defendants' motion for summary judgment, and pre-trial *in limine* motions, Class Representatives and their counsel had developed a robust factual record through their extensive investigation into the claims at issue, including a detailed review of publicly available information, interviews with former GE employees, and consultation with experts. Class Representatives and Plaintiffs' Counsel also, *inter alia*: (i) prepared four detailed complaints; (ii) briefed (and defeated in part) two motions to dismiss; (iii) engaged in comprehensive fact and expert discovery, including taking or defending 24 depositions, analyzing over 1.1 million pages of documents produced by Defendants and third parties, and exchanging opening and rebuttal expert reports; (iv) successfully moved for class certification; (v) briefed Defendants' motion for summary judgment, as well as two previously-filed motions for leave to file early summary judgment motions; (vi) briefed motions *in limine* and motions to exclude experts; (vii) defeated Defendants' attempt to circumscribe the claims to be tried based on the Supreme Court's *Macquarie* decision; and (viii) participated in extensive pre-trial preparations, including exchanging witness lists, exhibit lists, deposition designations, and draft verdict forms. Moreover, the Settlement is the product of protracted, arm's-length negotiations, including three formal

mediations and briefing, facilitated by the Honorable Layn R. Phillips (Fmr.), a retired federal judge and experienced mediator.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement and will be asked to make a determination as to whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. At this time, Class Representatives request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement's terms and conditions may be provided to Class Members. Entry of the proposed Preliminary Approval Order (Ex. A to Stip.) will begin the process for considering final approval of the Settlement by: (i) preliminarily approving the Settlement on the terms set forth in the Stipulation; (ii) approving the form and content of the notices and Claim Form; (iii) approving the plan for disseminating notice of the Settlement to the Class; (iv) approving JND Legal Administration ("JND") as the Claims Administrator for the Settlement; and (v) setting a date and time for the Settlement Hearing.[2]

For the reasons set forth herein, Class Representatives respectfully request that the Court preliminarily approve the Settlement and enter the Preliminary Approval Order.

## II.    FACTUAL BACKGROUND

### A.    Overview of the Action[3]

This securities class action commenced with the filing of the initial complaint captioned *Hachem v. General Electric, Inc. et al.*, Case No. 1:17-cv-08457-JMF, on November 1, 2017. ECF

---

[2]    As set forth in Section VI below, Class Representatives request that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter, to allow time for disseminating notice to Class Members and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 *et seq*.

[3]    This section provides only a summary of litigation events. A more detailed account of Plaintiffs' Counsel's litigation efforts will be provided in submissions in support of final approval.

No. 1.[4] Following notice to the public stating the deadline for putative class members to move for lead plaintiff appointment (ECF No. 6), several parties filed motions. Following briefing on these motions, a motion to intervene, a motion to vacate the originally appointed lead plaintiff, and a re-opened lead plaintiff appointment process, the Court, on May 30, 2018, appointed AP7 as Lead Plaintiff in the Action and approved its selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class. ECF No. 139.

Following an extensive investigation, AP7, along with additional plaintiff Cleveland Bakers, filed the Third Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws on behalf of all persons and entities that purchased or otherwise acquired the common stock of GE from February 27, 2013 through January 23, 2018, inclusive. ECF No. 153 (refiled at ECF No. 157).[5] The Third Amended Complaint named GE, Bornstein, Jeffrey R. Immelt, Jamie S. Miller, Keith S. Sherin, Jan R. Hauser, and Richard A. Laxer as defendants and asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. *Id.* Plaintiffs alleged that Defendants' public disclosures during the relevant time period concealed material facts concerning, among other things, GE's reliance on intercompany factoring transactions to offset weaknesses in GE Power's cash flows from operations. *Id.* Plaintiffs further alleged that the price of GE common stock was artificially inflated as a result of Defendants' alleged conduct, and declined when the truth was revealed over a series of alleged partial corrective disclosures, causing damage to GE shareholders.

---

[4]    Similar complaints were subsequently filed (*i.e.*, Case Nos. 17-cv-8473, 17-cv-9888, 18-cv-1404) and consolidated under Case No. 17-cv-08457. ECF Nos. 11, 15-16, 61.

[5]    The originally appointed and vacated lead plaintiff filed the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws and the Second Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws on March 20, 2018 and April 10, 2018, respectively. ECF Nos. 73, 83.

On September 12, 2018, defendants moved to dismissed the Third Amended Complaint. ECF Nos. 172-74. Defendants' motion was fully briefed. ECF Nos. 178, 180.

Pursuant to Joint Stipulation (ECF No. 177), Plaintiffs filed the Fourth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws on October 17, 2018. ECF No. 179. The Court, by Opinion and Order dated August 29, 2019, granted in part and denied in part defendants' motion to dismiss the Fourth Amended Complaint[6] and granted Plaintiffs leave to amend. ECF No. 185.

In accordance with the Court's August 29, 2019 Opinion and Order, Plaintiffs filed the Fifth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws on October 25, 2019. ECF No. 191. Defendants moved to dismiss the Fifth Amended Complaint on December 18, 2019. ECF Nos. 194-96. Following full briefing on the motion, the Court, by Opinion and Order dated January 29, 2021, granted in part and denied in part defendants' motion. ECF No. 206. Specifically, the Court: (i) denied the motion as to (1) Plaintiffs' Section 10(b) and Rule 10b-5 claims concerning (a) disclosures regarding factoring in GE's 2016 Form 10-K and (b) GE's failure to disclose factoring in its class period financial statements from 2015 on, against GE and Bornstein; and (2) Plaintiffs' corresponding Section 20(a) control person claims against Bornstein; and (ii) dismissed the remainder of the Fifth Amended Complaint, including Jeffrey R. Immelt, Jamie S. Miller, Keith S. Sherin, Jan R. Hauser, and Richard A. Laxer as defendants. *Id.*[7]

On February 12, 2021, Defendants answered the Fifth Amended Complaint. ECF No. 208. Thereafter, discovery in the Action commenced.

---

[6]     Pursuant to the Joint Stipulation, the Parties agreed that Defendants' motion to dismiss the Third Amended Complaint would apply to the newly-filed Fourth Amended Complaint.

[7]     The Court also dismissed John L. Flannery ("Flannery") as a defendant in the Action. Flannery was not named as a defendant in the Third Amended Complaint and Plaintiffs' subsequent pleadings.

From March 2021 to July 2022 the Parties engaged in extensive fact and expert discovery. Among other things, Plaintiffs: (i) served document requests, interrogatories, and requests for admission on Defendants; (ii) served subpoenas on three third parties—The Boston Consulting Group, Inc., McKinsey & Company, Inc., and KPMG LLP; (iii) exchanged considerable correspondence and participated in numerous meet-and-confers with Defendants and the subpoenaed third parties regarding Plaintiffs' discovery requests; (iv) obtained and reviewed over 1.1 million pages of documents produced by Defendants and third parties; (v) reviewed and analyzed thousands of privilege log entries; (vi) reviewed and produced documents in response to Defendants' discovery requests, as well as provided written discovery responses to document requests and interrogatories served by Defendants; (vii) took or defended a total of 22 fact and expert witness depositions and defended the depositions of both Class Representatives; and (viii) exchanged opening and rebuttal expert reports with Defendants.

On May 21, 2021, Plaintiffs moved for certification of a class consisting of all persons and entities that purchased or acquired GE common stock between March 2, 2015 and January 23, 2018, inclusive and were damaged thereby ("Class Certification Motion"). ECF Nos. 218-20. The Class Certification Motion was accompanied by a report from Plaintiffs' expert, David I. Tabak, Ph.D., on market efficiency and common damages methodologies. Plaintiffs' motion was fully briefed. ECF Nos. 244-45, 273.

While Plaintiffs' Class Certification Motion was pending, Defendants, on August 9, 2021 and again on September 2, 2012, moved the Court for leave to file an early summary judgment motion. ECF Nos. 235, 254. Plaintiffs opposed both motions (ECF Nos. 237, 257), and both motions were denied by the Court (ECF Nos. 240, 260). On September 24, 2021, the Court also

denied as premature Plaintiffs' letter motion for additional discovery (ECF No. 262), wherein Plaintiffs requested permission to take more than 15 fact witness depositions. ECF No. 259.

On January 19, 2022, based on new facts obtained through their discovery efforts, Plaintiffs moved for leave to file a sixth amended complaint. ECF No. 278. Defendants opposed Plaintiffs' motion on February 3, 2022. ECF Nos. 295-98.

By Opinion and Order dated April 11, 2022 ("Class Certification Order"), the Court granted Plaintiffs' Class Certification Motion. ECF No. 314. Specifically, the Court (i) certified a modified class of all persons and entities that purchased or acquired GE common stock between February 29, 2016 and January 23, 2018, inclusive and were damaged thereby;[8] (ii) appointed AP7 and Cleveland Bakers as Class Representatives; and (iii) appointed Kessler Topaz and Grant & Eisenhofer P.A. ("G&E") as Class Counsel and Liaison Counsel, respectively. *Id.* The Court also granted Plaintiffs' motion for leave to file a sixth amended complaint. *Id.*

On May 13, 2022, Class Representatives filed the operative Sixth Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws, asserting claims for violations of Sections 10(b) and 20(a) of the Exchange Act. ECF No. 327. Defendants answered the Sixth Amended Complaint on June 10, 2022. ECF No. 339.

On May 26, 2022, Class Representatives filed a motion to approve the form and manner of notice to the Class. ECF Nos. 331-33. The Court granted Class Representatives' motion on May 27, 2022 ("Class Notice Order"), finding that the proposed Class Notice met the requirements of Rule 23 and due process, and constituted the best notice practicable under the circumstances. ECF

---

[8]    Excluded from the Class are: (a) Defendants; (b) GE's subsidiaries and affiliates; (c) any officer, director, or controlling person of GE, and members of the Immediate Families of such persons; (d) any entity in which any Defendant has a controlling interest; (e) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (f) the legal representatives, heirs, successors, and assigns of any such excluded party.

No. 336. In accordance with the Class Notice Order, Class Notice was mailed to potential Class Members beginning on June 16, 2022 and a summary Class Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire* on June 24, 2022. ECF No. 342. The Class Notice provided Class Members with the opportunity to request exclusion from the Class, explained that right, and set forth the procedures for doing so.[9] The Class Notice also advised that it would be for the Court to decide whether to permit a second opportunity to request exclusion in the event of a settlement.

Thereafter, on September 6, 2022, Defendants moved for summary judgment pursuant to Rule 56. ECF No. 345. On the same day, Defendants filed motions to exclude the testimony of Class Representatives' experts, Dr. Tabak and S.P. Kothari. ECF Nos. 346-47. Alongside these motions, Defendants filed a Statement of Material Facts. ECF No. 357. Class Representatives opposed these motions on November 4, 2022 and filed their Response to Defendants' Statement of Material Facts and Plaintiffs' Statement of Additional Material Facts Introduced by Plaintiffs in Opposition to Defendants' Motion for Summary Judgment. ECF Nos. 362, 365-68, 383. Also on November 4, 2022, Class Representatives filed motions to exclude certain testimony of Defendants' expert, Christopher J. Russo, to exclude the testimony of Defendants' loss causation and damages expert, Daniel R. Fischel, and to strike a supplemental declaration of Mr. Fischel submitted in connection with Defendants' motion for summary judgment. ECF Nos. 369, 373, 377. These motions were fully briefed. ECF Nos. 381-85, 395-406, 409-11.

On September 28, 2023, the Court denied Defendants' motion for summary judgment, except as to claims arising from disclosures between November 2017 and January 2018. ECF No.

---

[9]    The 318 requests for exclusion received in connection with Class Notice are set forth in Appendix 1 to the Stipulation.

413. By its September 28, 2023 Opinion and Order, the Court granted in part and denied in part the Parties' respective *Daubert* motions and granted Class Representatives' motion to strike the supplemental declaration of Mr. Fischel. *Id.* On October 12, 2023, Defendants moved for reconsideration of the Court's September 23, 2023 Opinion and Order. ECF No. 414. Defendants' motion was fully briefed. ECF Nos. 419-420.

Throughout the fall of 2023, the Parties prepared for trial and negotiated over the contents of pretrial submissions, holding numerous meet-and-confers. On December 20, 2023, the Parties filed a Joint Pretrial Statement, which included the Parties' witness lists, affirmative and counter deposition designations, proposed and competing jury charges and position statements, proposed and competing verdict forms and competing position statements, proposed *voir dire* and jury questionnaire, and exhibit lists (along with corresponding objections). ECF No. 429. Also on December 20, 2023, the Parties filed their respective *in limine* motions and competing motions to bifurcate the trial. ECF Nos. 424-26, 428. Thereafter, the Parties continued to prepare for trial, including briefing their respective motions to bifurcate and *in limine* motions and responding and objecting to designated deposition testimony and exhibits. On January 11, 2024, the Parties filed their respective oppositions to the motions to bifurcate and motions *in limine*. ECF Nos. 440-51.

By Memorandum Opinion and Order dated March 21, 2024, the Court denied Defendants' motion for reconsideration of its September 23, 2023 Opinion and Order, except as to the Court's prior decision to strike Mr. Fischel's declaration. ECF No. 454. The Court also granted Plaintiffs' motion to bifurcate trial. *Id.*

As the Parties proceeded towards trial, Defendants filed a letter brief on April 22, 2024, concerning the Supreme Court's decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024) and seeking leave to file a formal motion for dismissal based on that

decision. ECF No. 458. On May 1, 2024, Plaintiffs opposed Defendants' request. ECF No. 461. On May 10, 2024, the Court denied Defendants' request for briefing and gave Defendants permission to re-raise their arguments pursuant to Rule 50 at or following trial. ECF No. 464.

On May 24, 2024, following several weeks of meet-and-confers and negotiations, the Parties filed amended pretrial submissions. ECF No. 466. Thereafter, the Parties continued to prepare for trial, which was scheduled to commence on November 11, 2024. ECF No. 467.

### B.     Settlement Negotiations and Terms of the Proposed Settlement

The Parties initially began discussing a possible resolution of the Action following the Court's certification of the Class. On August 11, 2022, the Parties engaged in their first mediation before Judge Phillips. Prior to this mediation, the Parties exchanged and also submitted to Judge Phillips detailed mediation statements with exhibits. Although the Parties were too far apart in their respective positions to resolve the Action at the mediation, they continued their settlement discussions with Judge Phillips. Then, following the Court's ruling on Defendants' summary judgment motion, the Parties agreed to participate in a second mediation with Judge Phillips. In advance of the November 2, 2023 mediation, the Parties submitted supplemental submissions to Judge Phillips. The Parties were still unable to resolve the Action at the mediation.

Nearly a year later and while preparing for trial, the Parties agreed to participate in a third mediation with Judge Phillips on August 23, 2024. In advance of the mediation, the Parties submitted supplemental statements to Judge Phillips. Once again, the Parties were unable to reach an agreement to resolve the Action at the mediation; however, following continued discussions with Judge Phillips' assistance, the Parties reached an agreement to resolve the Action on October 10, 2024. The Parties memorialized their agreement in a Term Sheet executed on October 16, 2024.

Thereafter, the Parties engaged in further negotiations over the specific terms of their agreement and ultimately executed the Stipulation on November 22, 2024.[10] The Stipulation provides that GE will pay or cause to be paid the Settlement Amount into the Escrow Account maintained on behalf of the Class. The Settlement is not claims-made. Accordingly, if it is approved, the Class will receive the full benefit of the Settlement Amount, plus interest, after deducting Court-approved attorneys' fees, expenses and costs ("Net Settlement Fund"), without regard to the number of Claims submitted. After the Settlement becomes Final and the Effective Date occurs, the Net Settlement Fund will be distributed among eligible Class Members who submit valid Claims in accordance with a Court-approved plan of allocation. *See* Stip. ¶¶ 21, 27. Class Members will release the "Released Plaintiffs' Claims" (*see* Stip. ¶ 1.pp) in exchange for the Settlement Amount and the right to receive a payment from the Net Settlement Fund.

## III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   Standards Governing Approval of Class Action Settlements

Settlement is a strongly favored method for resolving class action litigation. *See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018) ("Courts in this Circuit recognize a strong judicial policy in favor of settlements, particularly in the class action context."), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (similar). Further, "class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Graña y Montero S.A.A. Sec. Litig.*, 2021

---

[10]   On the same day, Class Representative and Defendants also entered into a confidential Supplemental Agreement which applies *only if* the Court requires a second opt-out period. If there is a second opt-out period, the Supplemental Agreement gives Defendants the right to terminate the Settlement if valid opt-out requests exceed an agreed-upon amount. *See* § III(B)(1)(d) herein. If, as the Parties request, there is no second opt-out period, the Supplemental Agreement is moot.

WL 4173684, at *7 (E.D.N.Y. Aug. 13, 2021), R&R adopted, 2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021 (alteration in original)).

Judicial approval of a class action settlement is a two-step process—*first*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); and *second*, after notice has been provided and a hearing has been held, the court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2). With respect to the first step of the approval process, a court should grant preliminary approval upon a finding that the court "*will likely be able*" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement.[11] *See* Fed. R. Civ. P. 23(e)(1)(B). In considering whether final approval is likely, Rule 23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.[12]

---

[11]    Here, the Court already certified the Class in the course of litigation. ECF No. 314. There is no difference between the Class previously certified and the Class the Settlement will bind.

[12]    Final approval will involve an analysis of the Rule 23(e)(2) factors and, to the extent they do not overlap, the Second Circuit's approval factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments (noting that Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Court of Appeals).

This standard for preliminary approval under Rule 23(e) was revised through amendments that effectively codified existing case law and retains the well-settled principle that preliminary approval should be granted where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval." 4 WILLIAM B. RUBENSTEIN, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:13 (6th ed. 2022) (alteration in original); *see also Balestra v. ATBCOIN LLC*, 2022 WL 950953, at *2 (S.D.N.Y. Mar. 29, 2022) (same).

Because each of the Rule 23(e)(2) factors are satisfied here, final approval of the Settlement is "*likely*", and preliminary approval is merited.

**B.    The Court "Will Likely Be Able" To Approve the Proposed Settlement under Rule 23(e)(2)**

**1.    Procedural Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2), advisory committee's note to 2018 amendment. In evaluating these factors, courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.*; *see also In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *4 (E.D.N.Y. Apr. 22, 2024) (procedural fairness focuses on "whether the settlement resulted from arm's-length negotiations, and whether class counsel possessed the experience and ability, and [ ] engaged in the discovery, necessary to effective representation of the class's interests"). Courts have found "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations

between experienced, capable counsel after meaningful discovery." *In re Synchrony Fin. Sec. Litig.*, 2023 WL 4992933, at *5 (D. Conn. Aug. 4, 2023).

Here, the Settlement embodies all of the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, as detailed above, the Parties have been vigorously litigating this Action for years. Indeed, at the time of settlement, the Parties had completed comprehensive fact and expert discovery and were less than a month from trial.[13] Further, though the summary judgment process and the Parties' protracted mediation process, Plaintiffs' Counsel (at different stages of the Action) vetted the factual record, analyzed Defendants' arguments and contrary facts, and thoroughly considered their loss causation and damages arguments (and their potential impact on recoverable damages) as well as the costs and risks of continued litigation. Plaintiffs' Counsel—firms with extensive experience litigating securities class actions—were well informed of the strengths and weaknesses of the claims and defenses in this Action and conducted the settlement negotiations seeking to achieve the best possible result for the Class.[14]

Additionally, by appointing Class Representatives in connection with class certification, the Court already found them to have claims typical of those of other Class Members. Moreover,

---

[13]    *See, e.g.*, *Kleen Prods. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *3 (N.D. Ill. Oct. 17, 2017) (noting "case was in an advanced stage with trial near, and the record exceptionally well-developed" where litigation had been pending seven years, discovery was extensive, the class had been certified, and summary judgment motions were fully briefed).

[14]    Courts give considerable weight to the opinion of experienced and informed counsel. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "great weight. . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). Moreover, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Graña y Montero*, 2021 WL 4173684, at *11 (alterations in original).

like the rest of the Class, Class Representatives have an interest in obtaining the largest possible recovery from Defendants.[15]

*Second*, the Parties' settlement negotiations were at arm's length and facilitated by a well-respected and experienced mediator. These negotiations included three formal mediation sessions before Judge Phillips and, at Judge Phillips' discretion, the preparation and exchange of comprehensive mediation briefing. Judge Phillips' close involvement in the settlement process further supports that the Settlement is fair and that the Parties achieved it free of collusion. *See Sanders v. CJS Sols. Grp., LLC*, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement."); *see also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *3 (S.D.N.Y. July 21, 2020) (granting final approval of a settlement following mediation before Judge Phillips); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *2 (S.D.N.Y. Dec. 18, 2019) (granting final approval of a settlement after all-day mediation with Judge Phillips).

## 2. The Settlement's Terms Are Adequate

Rules 23(e)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement represents a very favorable result for the Class in light of the risks of trial. Furthermore, Class Counsel, with the assistance of Class Representatives' damages expert, has proposed a plan for allocating the Settlement proceeds that ensures all Class Members will be treated equitably relative to their respective losses. *See infra* Section III(B)(2)(b).

---

[15]    *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

### a. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor to be considered in assessing the approval of a class action settlement is the plaintiff's likelihood of success on the merits, balanced against the relief offered in the settlement. Here the Settlement provides for a near-term cash recovery of $362,500,000 to be allocated among Class Members following the deduction of Court-approved fees and expenses. In comparison, had the Action continued, Class Representatives would face numerous risks that could have precluded them from securing any recovery on behalf of the Class. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 33 (E.D.N.Y. 2019) (in considering reasonableness, "a court must compare the terms of the compromise with the likely rewards of litigation").

While Class Representatives remain confident in their ability to prove their claims, taking any case to trial is always a risky proposition, and that was particularly so here. Notably, the theory of this case was extremely complicated, required Class Representatives to present evidence through testimony of largely adverse witnesses, and required extensive expert testimony. The evidence would have created challenges for a jury and did not lend itself to a simple, easily understood narrative. Further, the case involved GE's factoring of long-term receivables. Factoring generally is a legitimate business practice used by many companies and there was a real risk that jurors would focus on the common use of factoring instead of the specific ways in which GE allegedly used factoring to conceal cash flow problems and which allegedly rendered GE's disclosures inaccurate and misleading.

16

Class Representatives also recognized that Defendants had significant defenses to their claims and would continue to aggressively assert them at trial. Had the Settlement not been reached, Defendants, as they did at the motion to dismiss and summary judgment stages, undoubtedly would have argued at trial that the statements at issue were not false at the time they were made and that Class Representatives would be unable to establish that Defendants did not legitimately believe the truth of such statements. Relatedly, Defendants would continue to assert that they did not act with the required intent, or "scienter."

In addition, establishing loss causation presented difficult challenges and was the subject of numerous attacks by Defendants throughout the litigation. These attacks stemmed from the fact that the alleged corrective information causing Class Representatives' losses was disclosed with other confounding information and Class Representatives' loss causation theory depended on a jury accepting their expert's testimony on disaggregating this confounding information. Defendants presented competing expert testimony on the disaggregation methodology and reasons for the stock price declines that allegedly caused Class Representatives' losses. An adverse finding by a jury on any one of the corrective disclosure dates would have significantly reduced the recoverable damages for Class Members. In sum, this anticipated "battle of the experts" created significant uncertainty and risks to recovery. Additionally, even if Class Representatives prevailed at trial, appeals were an absolute and would have included issues of first impression in the Second Circuit relating to Item 303 liability, and potentially loss causation. The appellate process could have extended for years and might have led to a smaller recovery, or no recovery at all.

Here, the Settlement represents a substantial percentage of the Class's potential recoverable damages (as estimated by Class Representatives' damages expert) had this Action proceeded to trial. Class Representatives' damages expert estimated class-wide damages in this Action, based

on the theory of loss causation permitted at trial, to range from approximately $1 billion to approximately $4.5 billion depending on the statements found to be actionable and the loss causation theories accepted by the jury. Using this estimated range, the Settlement represents approximately 8%-36% of the Class's potential recoverable damages—a recovery that reflects the informed assessment of Class Representatives and their counsel of the strength of the Class's claims and the risks of litigating this complex Action through trial and appeals.[16] Thus, the Settlement provides a significant recovery for Class Members.

### b.    The Settlement Treats All Class Members Fairly

The Court must also ultimately assess whether the Settlement equitably distributes relief to the Class. Rule 23(e)(2)(C)(ii) & (e)(2)(D). The proposed Plan of Allocation ("Plan"), set forth in the long-form Notice and developed in consultation with Class Representatives' damages expert, provides a fair and effective means of distributing the Net Settlement Fund and treats Class Members equitably relative to each other.

Specifically, the Plan provides for distribution of the Net Settlement Fund to Class Members who submit timely and valid Claims demonstrating a loss on their transactions in GE

---

[16]    While each securities class action reflects its own unique risks, the recovery obtained here compares favorable to recoveries achieved in other securities cases and approved by courts. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *6 (S.D.N.Y. Sept. 29, 2022) (approving recovery of 13.75% of the estimated maximum damages of $1.2 billion which was "well within the range of reasonableness and, in fact, considerably above the high end of historical averages" and "substantially exceed[ed] the median recovery of 2.3% of . . . damages for securities class actions with damages over $1 billion between 2012-2020" and the "median recovery of 4.2% of damages in 2021"); *Oka. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *3 (S.D.N.Y. Jan. 7, 2021) (approving settlement that was 10% of estimated damages, noting that the settlement was "within the range previously approved by judges in this District," referencing recoveries ranging from 3% to 11% of estimated damages); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving recovery of approximately 6.25%, which was "at the higher end of the range of reasonableness").

common stock during the Class Period.[17] The Plan is based on the estimated amount of artificial inflation in the price of GE common stock during the Class Period that was allegedly caused by Defendants' misconduct. In order to have a loss under the Plan, a Class Member must have held GE common stock purchased or acquired during the Class Period through at least one of the dates when the disclosure of alleged corrective information partially removed the alleged artificial inflation from the price of the stock.[18] The Plan treats all Class Members equitably and eligible Class Members will receive a *pro rata* distribution from the Net Settlement Fund based on the amount of their recognized losses.[19] Here, too, the Court can readily find the Settlement will likely earn approval.

---

[17]    The Settlement will be effectuated with the assistance of an experienced claims administrator. If approved by the Court to serve as Claims Administrator, JND will employ a standard and well-tested protocol for processing claims in securities class actions. Namely, potential Class Members will submit Claims, either by mail or online and, based on the information submitted, JND will determine each Claimant's eligibility to participate in the Settlement by calculating his, her, or its "Recognized Claim" under the Plan. *See* Stip., ¶ 21. Claimants will be notified of (and given the chance to remedy) any defects in their Claims, and will also have the opportunity to contest any rejection of their Claims. *Id.*, ¶ 25(d). Any Claim disputes that cannot be resolved will be presented to the Court. *Id.*, ¶ 25(e).

[18]    In its Opinion and Order dated September 28, 2023, the Court dismissed claims arising from disclosures between November 2017 and January 2018. Accordingly, in the Plan, the estimated alleged artificial inflation for this period – *i.e.*, November 13, 2017 through January 23, 2018, inclusive, has been reduced by 90% to account for the unlikelihood of prevailing on appeal for that period. *See generally In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable).

[19]    As set forth in the Notice, Class Counsel's request for Litigation Expenses may also include a request for reimbursement of Class Representatives' reasonable costs and expenses incurred in representing the Class, as permitted by the PSLRA. 15 U.S.C. § 78u-4(a)(4) (allowing the "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

### c.    The Settlement Does Not Excessively Compensate Counsel

The notices provide that Plaintiffs' Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund.[20] A fee of up to 25% is reasonable in this seven-year-old case and it falls within the range of attorneys' fees typically awarded in this District. *See Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit."). Moreover, there is ample precedent for granting fees of 25% (or greater) in securities class actions. *See, e.g.*, *Speakes, et al. v. Taro Pharmaceutical Industries, Ltd., et al.*, No. 16-cv-08318-ALC-OTW, ECF No. 116 (S.D.N.Y. Aug. 23, 2024) (awarding 30%); *In re Grupo Televisa Sec. Litig.*, No. 18-cv-1979-LLS, ECF No. 369 (S.D.N.Y. Aug. 8, 2023) (awarding 30%); *Pearlstein*, 2022 WL 4554858, at *6 (awarding 33.33%); *Scheufele v. Tableau Software, Inc.*, 2021 WL 9681019, at *1 (S.D.N.Y. Sept. 17, 2021) (awarding 28%); *In re Signet*, 2020 WL 4196468, at *15-16 (awarding 25%); *Christine Asia Co., Ltd. v. Jack Yun Ma*, 2019 WL 5257534, at *17 (S.D.N.Y. Oct. 16, 2019) (awarding 25%); *In Pfizer Inc. Sec. Litig.*, 2016 WL 11801285, at *1 (S.D.N.Y. Dec. 21, 2016) (awarding 28%).[21] Plaintiffs' Counsel will also seek payment of

---

[20]    As also provided in the Notice, any Court-awarded fee will be allocated between Class Counsel, Liaison Counsel, and Labaton Keller Sucharow LLP ("Labaton"). Prior to the Court's April 12, 2018 order re-opening the lead plaintiff appointment process, Labaton had been appointed as counsel for the putative class. Class Counsel will reimburse Labaton for its time spent from any fee awarded by the Court. Class Counsel will also seek on Labaton's behalf reimbursement of its reasonable expenses.

[21]    Additionally, the timing of payment of the fee award—within five (5) business days of the award—is appropriate, and consistent with common practice in cases of this nature. The Stipulation provides that if the Settlement is ultimately terminated or the fee award is later reduced or reversed, Plaintiffs' Counsel will refund or repay the subject amount to the Settlement Fund. *See* Stip., ¶ 16; *see also, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) ("the fees and expenses awarded herein shall be paid from the Settlement Fund to Lead Counsel immediately upon entry of this Order,

Litigation Expenses incurred in connection with the prosecution and resolution of the Action, in an amount not to exceed $10 million, which may include requests for reimbursement of Class Representatives' costs. Class Members will have an opportunity to weigh in on Plaintiffs' Counsel's fee and expense requests before the Settlement Hearing, and after counsel have made submissions in support of their request.[22]

### d. Class Representatives Have Identified All Agreements Made in Connection with the Settlement

In addition to the Term Sheet and Stipulation, the Parties have entered into a confidential Supplemental Agreement which applies *only if* the Court provides a second opportunity for Class Members to request exclusion from the Class in connection with the Settlement ("Supplemental Agreement"). *See* Stip., ¶ 36. As set forth in the Supplemental Agreement, if there is a second opportunity to request exclusion, Defendants will have the option to terminate the Settlement in the event that requests for exclusion in connection with the Settlement exceed certain agreed-upon conditions. As is standard practice in securities class actions, the Supplemental Agreement is not being made public and, pursuant to its terms, the Supplemental Agreement may only be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

## IV.    NOTICE TO THE CLASS SHOULD BE APPROVED

"There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to

---

notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest").

[22]    In these submissions counsel will, among other things, present their lodestar (time expended multiplied by hourly rates) as well as the case law addressing fee awards in this Circuit.

them in connection with the proceedings." *Arbuthnot v. Pierson*, 607 F. App'x 73, 73-74 (2d Cir. 2015). Moreover, "[t]he adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Id.* at 73.

As outlined in the Preliminary Approval Order, if the Settlement is preliminarily approved, the Claims Administrator will mail and/or email the Postcard Notice (Ex. A-1 to Stip.) to all potential Class Members who were previously mailed/emailed Class Notice and any other potential Class Members who can be identified through reasonable efforts. The Postcard Notice provides important information regarding the Settlement, along with the rights of Class Members in connection therewith, and directs recipients to www.GeneralElectricSecuritiesLitigation.com and the Notice for more information regarding the Settlement. In addition, the Claims Administrator will post downloadable copies of the Notice and Claim Form (Exs. A-2 & A-4 to Stip.), as well as other important documents, on the website and will cause the Summary Notice (Ex. A-3 to Stip.) to be published in *The Wall Street Journal* and transmitted over *PR Newswire*.[23]

The proposed notices will collectively apprise recipients of (among other disclosures): (i) the essential terms of the Settlement; (ii) the considerations that caused Class Representatives and Class Counsel to conclude that the Settlement is fair, reasonable, and adequate; (iii) the proposed Plan of Allocation; (iv) the binding effect of a class judgment under Rule 23(c)(3)(B); (v) the date, time and place of the Settlement Hearing; and (vi) the procedures and deadlines for submitting a

---

[23]    Class Representatives also seek the Court's authorization to retain JND (the administrator previously approved in connection with Class Notice) as the Claims Administrator to supervise and administer the notice procedure in connection with the Settlement as well as to process Claims. JND has successfully administered numerous complex securities class action settlements in this District and elsewhere. *See, e.g., In re Vale S.A. Sec. Litig.*, No. 15 Civ. 09539 (S.D.N.Y. 2020); *In re Signet Jewelers Limited Sec. Litig.*, No. 1:16-cv-06728-CM-SDA (S.D.N.Y. 2020); *Fresno County Employees' Retirement Association, et al. v comScore, Inc., et al.*, No. 1:16-cv-01820-JGK (S.D.N.Y. 2018). *See also* www.jndla.com.

Claim, objecting to the Settlement, and opting back into the Class. The Notice also satisfies the PSLRA's additional requirements by stating: (i) the Settlement amount in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages per share that would be recoverable at trial; (iii) that Class Counsel intend to apply for attorneys' fees and expenses (including maximum amount of attorneys' fees and expenses to be sought and the amount of such fees and expenses on an average per share basis); (iv) Class Counsel's contact information; and (v) the reasons for the Settlement. 15 U.S.C. § 78u-4(a)(7).

The proposed plan for providing notice of the Settlement here is the same method used in numerous other securities class actions. Courts in this Circuit routinely find that comparable notice procedures represent the best notice practicable under the circumstances and satisfy the requirements of Rule 23 and due process. *See, e.g.*, *In re AppHarvest Sec. Litig.*, 2024 WL 967258, at *3-4 (S.D.N.Y. Mar. 6, 2024); *In re Northern Dynasty Minerals Ltd. Sec. Litig.*, 2023 WL 5511513, at *14-15 (E.D.N.Y. Aug. 24, 2023); *In re Loop Industries, Inc. Sec. Litig.*, 2023 WL 127294, at *2 (S.D.N.Y. Jan. 5, 2023). Accordingly, Class Representatives respectfully submit that the proposed notice procedures are appropriate and should be approved.

## V.    THE COURT SHOULD NOT REQUIRE A SECOND OPT-OUT PERIOD

In June 2022, JND began an extensive notice campaign to potential Class Members to inform them of the pendency of the Action as a class action as well as their right to request exclusion (or opt out) from the Class and the procedures for doing so. *See* ECF No. 342. JND reported mailing over 3,789,000 notices to potential Class Members and nominees during this campaign. *See id.*, ¶ 10, Exs. A & B. A related summary notice was also published in *The Wall Street Journal* and transmitted over *PR Newswire*. *See id.*, ¶ 11, Ex. B.

The notices disseminated during the Class Notice campaign advised recipients that, pursuant to Rule 23(e)(4), it would be within the Court's discretion whether to allow a second opportunity to request exclusion from the Class if there was a settlement or judgment in the Action after a trial and appeal. *See id.* at Ex. A & B. Moreover, the notices made clear that Class Members would "be bound by all past, present, and future orders and judgments in the Action, whether favorable or unfavorable"—if they failed to exclude themselves from the Class. *Id.* at Ex. A. In response to this notice campaign, 318 potential Class Members (as listed on Appendix 1 to the Stip.) requested exclusion from the Class, demonstrating that Class Members who wished to request exclusion from the Class had a fair opportunity to do so.

The Second Circuit repeatedly has rejected the argument that due process requires that members of a Rule 23(b)(3) class be given a second opportunity to opt out of a class when such class members already received extensive notice and ample opportunity to do so—as they did here. *See Wal-Mart*, 396 F.3d at 114-15 (holding requirements of due process and Rule 23 were satisfied because the class "had been given notice of the action, the opportunity to opt out [following class certification], notice of the proposed settlement, and the opportunity to object" and objector "was required to opt out at the class notice stage if it did not wish to be bound by the Settlement"); *Denney v. Deutsch Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006).[24]

---

[24]    *See also Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. We think it does not. Byrd's rights are protected by the mechanism provided in the rule: approval by the district court after notice to the class and a fairness hearing at which dissenters can voice their objections, and the availability of review on appeal. Moreover, to hold that due process requires a second opportunity to opt out after the terms of the settlement have been disclosed to the class would impede the settlement process so favored in the law.").

In this case, there is no reason to depart from standard practice and require a second opportunity to opt out of the Class. The response to the widespread Class Notice campaign demonstrates it was effective and the new developments that have occurred since Class Members made their decision of whether to opt out—namely, vigorous litigation to the eve of trial that culminated in a substantial recovery—provide a clear benefit to the Class and negate any potential prejudice from disallowing a second opt out. Accordingly, the Court should exercise its discretion to preclude a second opportunity to request exclusion.[25]

## VI.     <u>PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS</u>

In connection with preliminary approval, the Court must also set dates for certain future Settlement-related events. Class Representatives respectfully propose the schedule set forth in Appendix A, as agreed to by the Parties and set forth in the Preliminary Approval Order. If the Court agrees with the proposed schedule, Class Representatives request that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## VII.     <u>CONCLUSION</u>

For the forgoing reasons, Class Representatives respectfully request that the Court enter the proposed Preliminary Approval Order which will, *inter alia*: (i) preliminarily approve the Settlement pursuant to the terms set forth in the Stipulation; (ii) approve the proposed form and manner of providing notice of the Settlement to Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

---

[25]     Class Members who previously requested exclusion from the Class pursuant to Class Notice will be permitted to opt back into the Class in connection with the Settlement in order to be potentially eligible to receive a payment from the Settlement.

Dated:  November 25, 2024               Respectfully submitted,

**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**

*S/ Sharan Nirmul*
Sharan Nirmul
Gregory M. Castaldo
Richard A. Russo, Jr.
Jamie M. McCall
Joshua A. Materese
Austin W. Manning
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
snirmul@ktmc.com
gcastaldo@ktmc.com
rrusso@ktmc.com
jmccall@ktmc.com
jmaterese@ktmc.com
amanning@ktmc.com

*Counsel for Class Representative Sjunde AP-Fonden and Class Counsel for the Class*

**GRANT & EISENHOFER P.A.**
Daniel L. Berger
Karin E. Fisch
Vincent J. Pontrello
Cecilia E. Stein
Alexandra E. Forgione
485 Lexington Avenue
New York, NY 10017
Tel: (646) 722-8500
Fax: (646) 722-8501
dberger@gelaw.com
kfisch@gelaw.com
vpontrello@gelaw.com
cstein@gelaw.com
aforgione@gelaw.com

*Counsel for Class Representative The Cleveland Bakers and Teamsters Pension Fund and Liaison Counsel for the Class*

## APPENDIX A

### Proposed Schedule of Settlement-Related Events

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Deadline for mailing/emailing Postcard Notice to Class Members (which date shall be the "Notice Date") and posting Notice and Claim Form on the Website | No later than 25 business days after the date of entry of the Preliminary Approval Order (Preliminary Approval Order ¶ 4(a)) |
| Deadline for publishing the Summary Notice | No later than 10 business days after Notice Date (Preliminary Approval Order ¶ 4(c)) |
| Deadline for filing papers supporting final approval of the Settlement, Plan of Allocation, and Class Counsel's motion for attorneys' fees and Litigation Expenses | 35 calendar days prior to Settlement Hearing (Preliminary Approval Order ¶ 25) |
| Deadline for submitting request to opt back into the Class | No later than 21 calendar days prior to Settlement Hearing (Preliminary Approval Order ¶ 12) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order ¶ 25) |
| Settlement Hearing | 100 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order ¶ 2) |
| Deadline for submitting Claim Forms | 120 calendar days after Notice Date (Preliminary Approval Order ¶ 8) |